# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD GOETTLE, INC., | ) |
| | ) |
|             Plaintiff, | ) |
| | )     Civil Action No. 06-1433 EGS |
| v. | ) |
| | ) |
| JEFFERSON AT PENN QUARTER, L.P., | ) |
| | ) |
| | ) |
|             Defendant. | ) |

## THE JEFFERSON AT PENN QUARTER, L.P.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Pursuant to Rules 12(b)(6) and 12(b)(3) of the Federal Rules of Civil Procedure, Defendant Jefferson at Penn Quarter, L.P. ("JPQ"), by counsel, hereby moves to dismiss the Complaint filed by Plaintiff Richard Goettle, Inc. ("Goettle") for failure to state a claim upon which relief can be granted and for improper venue. In the alternative, JPQ asks that the court grant summary judgment in its favor pursuant to Fed. R. Civ. P. 56(c), or to transfer the case to the United States District Court for the Eastern District of Virginia. In support of its motion, JPQ states as follows:

### Introduction and Summary of Argument

In 2001, JPQ, as owner, entered into a contract (the "Prime Contract") with J.A. Jones/Tompkins Builders ("Tompkins"), as general contractor, to provide certain construction labor, work, materials and services for the construction of the Jefferson at Penn Quarter Project located in Washington, D.C. (the "Project"). (Compl. ¶ 9.) In turn, Tompkins subcontracted with Goettle to perform earth retention work on the Project. (Compl. ¶ 10.)[1] Tompkins subsequently defaulted on its

---

[1] Although the Complaint incorporates by reference the Tompkins/Goettle Subcontract (the "Subcontract") (Compl. ¶ 10), Goettle did not attach a copy of the Subcontract to the Complaint. Accordingly, a true and accurate copy of the Subcontract is attached hereto as Exhibit 1. The Subcontract, in turn, expressly incorporates the terms and conditions of the Prime

contract with JPQ and was terminated for default.  On July 6, 2006, Goettle brought suit against JPQ in

the Superior Court of the District of Columbia, alleging causes of action for breach of contract,

negligence, and unjust enrichment.  JPQ subsequently removed the action to this Court pursuant to 28

U.S.C. § 1441(a).

Goettle's Complaint should be dismissed in its entirety, or summary judgment granted to JPQ.

All three causes of action were filed outside the applicable three-year limitations period.  In addition,

venue in the District of Columbia is improper, as Goettle is contractually obligated to resolve all

disputes relating to the Project in Fairfax County, Virginia.  The three Counts also fail on individual

bases.  Two counts fail because Goettle is contractually prohibited from recovering damages for delay.

Count I, a cause of action for breach of contract, is barred because Goettle has not alleged a written

contract, as required by statute.  Count II, a negligence claim, fails to allege that JPQ had any duty to

Goettle independent than that created by contract.  Finally, Count III, which states a cause of action for

unjust enrichment, fails to allege an essential element—namely, that JPQ "inequitably" retained a

benefit conferred by Goettle.

### Standard of Review

The Court may dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) if it is clear that no

relief could be granted under any set of facts that could be proved consistent with the allegations.  See

Cooper v. First Gov't Mortgage & Investors Corp., 206 F. Supp. 2d 33, 35 (D.D.C. 2002).  In deciding

such a motion, the Court must accept all the complaint's well-pled factual allegations as true and draw

all reasonable inferences in the nonmovant's favor.  Id.  On a motion to dismiss, the Court may

properly consider a contract referred to in a complaint and central to a plaintiff's claim, even though

---

Contract.  (Subcontract ¶ 1.)  However, Goettle did not attach a copy of the Prime Contract to the Complaint.  Accordingly,
a true and accurate copy of the Prime Contract is attached hereto as Exhibit 2.

the Plaintiff fails to attach a copy of the contract. <u>Jacobsen v. Oliver</u>, 201 F. Supp. 2d 93, 110 (D.D.C. 2002); <u>Vanover v. Hantman</u>, 77 F. Supp. 2d 91, 98 (D.D.C. 1999).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). There is no genuine issue of fact unless "a fair-minded jury could return a verdict for the [non-movant] on the evidence presented." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986). Therefore, a plaintiff's unsupported allegation of a fact in its Complaint is insufficient to avoid summary judgment:

> To render an issue in dispute, a party opposing summary judgment must do more than rest upon her pleading: she must show that there is sufficient evidence supporting the existence of a dispute to require a factfinder to adjudicate the truth of the parties' differing claims.

<u>Worthey v. Snow</u>, 2006 U.S. Dist. LEXIS 40773, *3-4 (D.D.C. 2006), <u>citing</u> <u>Anderson</u>, 477 U.S. at 255.

## ARGUMENT

### I.    The Complaint is Barred by the Statute of Limitations

The Complaint should be dismissed in its entirety, or summary judgment granted to JPQ, because Goettle filed outside the applicable limitations period. The District of Columbia strictly enforces its limitations periods, and actions filed after the applicable period has expired should be dismissed. <u>See, e.g.</u>, <u>Carter v. Washington Metro. Area Transit Auth.</u>, 246 U.S. App. D.C. 221 (D.C. Cir. 1985) ("[c]ourts have interpreted the law of the District of Columbia to force plaintiffs to adhere strictly to the requirements of the statute of limitations.")

In the District of Columbia, all three causes of action alleged in the Complaint carry three-year limitations periods. D.C. Code § 12-301; <u>see also</u> <u>Material Supply Int'l, Inc. v. Sunmatch Indus. Co.</u>,

146 F.3d 983. (D.C. Cir. 1998) (three-year limitations period for breach of contract); <u>Razmgar v.</u>

<u>George Washington Univ.</u>, 1986 U.S. App. LEXIS 29407, *2 (D.C. Cir. 1986) (negligence) <u>and</u>

<u>Constr. Interior Sys., Inc. v. Donohoe Cos.</u>, 813 F. Supp. 29, 33 (D.D.C. 1992) (unjust enrichment). A

cause of action for breach of contract accrues "when the contract is first breached." Similarly, a cause

of action for negligence accrues on the date the plaintiff suffered an injury. <u>Razmgar</u>, 1986 U.S. App.

at *2. A claim for unjust enrichment accrues when the defendant is unjustly enriched—in other words,

at the time the defendant receives goods or services but does not pay for them. <u>See</u> <u>Union Labor Life</u>

<u>Ins. Co. v. Sheet Metal Workers Nat'l Health Plan</u>, 1991 U.S. Dist. LEXIS 13613 (D.D.C. 1991).

 The injuries alleged in the Complaint all occurred outside the limitations period. The

Complaint alleges that JPQ delayed the Project prior to the commencement of Goettle's work (Compl.

¶ 11), failed to make the worksite properly available to Goettle in October 2001 (Compl. ¶ 16), caused

other unspecified delays by redesigning and resequencing the Project work (Compl. ¶¶ 17-18) and

failed to pay the fair value of Goettle's work (Compl. ¶ 33.) Goettle filed its Complaint on July 6,

2006. Therefore, Goettle only filed within the limitations period if its claims accrued on or after July

6, 2003. However, the plain language of the Complaint itself, the Project record, and Goettle's own

correspondence demonstrate that Goettle's claims accrued, at the latest, in 2002. Accordingly, Goettle

failed to file within the three-year limitations period.

 The plain language of the Complaint demonstrates the inadequacy of Goettle's first two

damages allegations. Goettle complains that the job site was not fully prepared for Goettle's work "in

October, 2001." (Compl. ¶ 16.) Any claim based on JPQ's failure to properly prepare the jobsite for

Goettle, therefore, accrued in October 2001 and was time-barred unless filed on or before October

2004. Similarly, the Complaint alleges that JPQ caused delays "[p]rior" to Goettle's entry into a

Subcontract with Tompkins on October 12, 2001. (Compl. ¶ 11.) A cause of action for these delays,

-4-

therefore, accrued—at the latest—on October 11, 2001, and was time-barred unless filed on or before Ocotber 11, 2004.

Goettle's remaining claims—for alleged redesigns, resequencings, and unjust enrichment—are also time-barred. Although the Complaint does not offer specific dates as to when these alleged injuries occurred, the Project record and Goettle's own correspondence plainly demonstrate that any such actions occurred well before July 6, 2003.

On July 31, 2002, Goettle submitted a Contractor's Application for Payment to Tompkins (the "Payment Application," a true and accurate copy of which is attached hereto as Exhibit 3.) In the Payment Application, Goettle represented that it had fully completed all of its Subcontract Work as of July 2002, and demanded full payment on the price of its Subcontract. See Payment Application at 3 (stating that the work was "100%" complete). See also attached Affidavit of John F. Fahey ("Fahey Aff.," attached hereto as Exhibit 4) ¶ 7 (Goettle performed no Subcontract work on or after July 6, 2003).

The Payment Application is not the only instance in which Goettle has stated that it completed its Subcontract work in 2002. Two letters written by Goettle expressly state that Goettle completed its Subcontract work at this time. The first letter, written to Tompkins in October 2002, was signed by Goettle's President, Terry Tucker. A complete and accurate copy of this letter (the "Tucker Letter" is attached hereto as Exhibit 6.) In the letter, Mr. Tucker requests an equitable adjustment of its Subcontract price and explicitly states:

> In mid-April, we targeted a completion date of July 2, 2002. **We were substantially completed by July 19th and completely off site by July 24th**, approximately 3 weeks after a target date which was generated 2 ½ to 3 months earlier.

Tucker Letter at 2 (emphasis added).

Again, on January 6, 2004, William G. Geisen, an attorney representing Goettle, wrote a letter admitting that Goettle had finished all its Subcontract work in 2002. In that letter (the "Geisen Letter"), Mr. Geisen demanded payment of the full amount sought in this lawsuit, $948,270.93 (Geisen Letter at 2), plus an additional $200,000 retainage (Geisen Letter at 3). In the letter, Mr. Geisen plainly stated: "I trust that you are aware of Goettle's longstanding claims **since Goettle has attempted to get paid on its claims since at least April, 2002.**" (emphasis added). A true and accurate copy of the Geisen Letter is attached hereto as Exhibit 5; see also Fahey Aff. ¶ 4.

In short, Goettle has alleged no facts from which it could be reasonably inferred that any of the claims it has presented accrued within three years of the filing of this lawsuit. On its face, Goettle's Complaint, the Project record, and the words of Goettle's own President and attorney demonstrate that Goettle seeks recovery for alleged injuries that occurred, at the latest, in July 2002. Accordingly, the Complaint should be dismissed, or, in the alternative, summary judgment granted in favor of JPQ. See Havens v. Patton Boggs LLP, 2006 U.S. Dist. LEXIS 42910 (D.D.C. 2006) (dismissing cause of action for breach of contract when complaint demonstrated that first breach had occurred more than three years before filing).

## II.    Venue is Improper

Even if Goettle had filed within the applicable limitations period, the Complaint should be dismissed for lack of venue. This Court has held that when parties have agreed to a forum selection clause, "...the forum clause should control absent a strong showing that it should be set aside." 2215 Fifth Street Assocs., L.P. v. U-Haul Int'l, Inc., 148 F. Supp. 2d 50, 58 (D.D.C. 2001). Furthermore, it is "incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." Id.

-6-

The Complaint does not contain any allegation that JPQ and Goettle executed a valid, written assignment of Goettle's Subcontract with Tompkins. Under the clear terms of the Subcontrct, incorporated by reference into the Complaint, (Compl. ¶ 10), Goettle is bound by the applicable terms of the prime contract between JPQ and Tompkins. (Subcontract ¶ 1.) Under the terms of both the Prime Contract and the Subcontract, any valid assignment must be in writing. (Prime Contract § G(3); Subcontract ¶ 11). The Prime Contract states:

> Contractor hereby assigns to Owner (and its assigns) all its interest in any subcontracts and purchase orders now existing or hereinafter effective upon acceptance by Owner **in writing** and Owner's termination of this Contract and only as to those subcontracts and purchase orders which Owner designates in said writing.

Prime Contract § G(3)(emphasis added).

Under the terms of the prime contract, to which Goettle is bound, venue for any action relating to the Project shall be in Fairfax County, Virginia. (Prime Contract § P). Venue is therefore improper in the District of Columbia and this suit should be dismissed or transferred to the Eastern District of Virginia. In fact, in a recent case involving this same Project, this Court ruled that venue was improper in the District of Columbia and transferred the case to the Eastern District of Virginia. That case, Manganaro Corp. v. Jefferson at Penn Quarter, L.P., case number L:04CV02133 GK, was a lawsuit by another of Tompkins' subcontractors, Manganaro Corp., against JPQ. Examining the same Prime Contract at issue here and a similar Subcontract, Judge Kessler ordered the case transferred to the United States District Court for the Eastern District of Virginia.[2] A true and accurate copy of Judge Kessler's Order and opinion in that case is attached hereto as Exhibit 7.

---

[2] Manganaro Corp., unlike Goettle, filed within the statutory period. Therefore, in that case, JPQ did not argue that the case should be dismissed for failure to file within the applicable limitations period.

**III.    Counts I & II - Goettle is Contractually Prohibited from Recovering Damages for Delay**

Count I (breach of contract) and Count II (negligence) of the Complaint are also barred by the

express limitations of the Subcontract.  The Tompkins/Goettle Subcontract specifically prohibits

Goettle from recovering any damages for delays caused by JPQ, except in narrow circumstances not

alleged in the Complaint:[3]

> In the event the Subcontractor's performance of the Subcontract is
> delayed or interfered with by acts or omissions of the Owner, Contractor
> or other subcontractors, Subcontractor may request an extension of time
> for the performance of this Subcontract as hereinabove provided, but
> shall not be entitled to any increase in the Subcontract Price or to
> damages or additional compensation as a consequence of such delays or
> interference except to the extent that the Contract entitled Contractor to
> compensation therefore and then only to the extent of any amounts that
> Contractor, on behalf of Subcontractor, recovers from Owner for such
> delays or interference.

Subcontract ¶ 7 (emphasis added).

The Prime Contract, in turn, only allows the Contractor to recover compensation for delays if

Goettle received a written order for accelerated work, such as a written order for overtime or additional

crews.  Prime Contract ¶ III.D(1)(d).  The Prime Contract provides that all other claims for

compensation resulting from delays are expressly waived unless agreed to in writing in advance of

performing accelerated work.  Id.  The Subcontract specifically incorporates all applicable provisions

of the Prime Contract, including the provisions governing damages for delay.  Subcontract ¶ 1.

The only injuries Goettle claims to have suffered as a result of JPQ's alleged breach of contract

and/or negligence all stem from delays allegedly caused by JPQ.  Goettle alleges that JPQ failed to

make the worksite timely available (Compl. ¶¶16 & 22), caused delays by redesigning the work

---

[3] JPQ, as an intended third-party beneficiary of the Subcontract generally and of Paragraph 7 in particular, is entitled to
enforce this provision.

(Compl. ¶ 17), and further caused delay by resequencing certain Project work.  (Compl. ¶¶ 18-19 & 22.)

Although Goettle bases its claims of breach of contract and negligence exclusively on variations of injuries caused by delay, it alleges no facts to suggest that it is entitled to such recovery under the Subcontract and incorporated Prime Contract.  Goettle does not allege that it was given written orders to perform accelerated work, nor does it allege that Tompkins recovered any delay damages from JPQ.  By signing the Subcontract, Goettle waived its right to pursue the delay damages it claims in the Complaint.  Clauses limiting a subcontractor's right to recover delay damages apply not only to breaches of contract, but to claims of ordinary negligence, such as those alleged by Goettle.  See, e.g., United States ex rel. Petrocelli Elec. Co. v. Crow Constr. Co., 1999 U.S. Dist. LEXIS 15547, *21 (S.D.N.Y. 1999) (dismissing delay claims because "[a]t most, it appears that Crow was negligent in its supervisory position, and ordinary negligence falls within the scope of the exculpatory language of the 'no damages for delay' provisions.")  Accordingly, Counts I and II of the Complaint should be dismissed, or summary judgment granted in favor of JPQ.

**III.    Count I - Goettle Fails to Allege a Written Contract**

Count I (breach of contract) also fails because Goettle has not alleged that its contract with JPQ was in writing.  In the District of Columbia, a longstanding corollary to the Statute of Frauds prevents a subcontractor such as Goettle from recovering contract funds from an owner in the absence of a written agreement:

> No subcontractor, materialman, or workman employed under the original contractor shall be entitled to a personal judgment or decree against the owner of the premises for the amount due to him from said original contractor, except upon a special promise of such owner, in writing, for a sufficient consideration, to be answerable for the same.

D.C. Code § 40-303.19.

This statute was designed to address precisely the situation at issue here—a subcontractor, unable to recover from its general contractor, alleges that it entered into a separate contract with the owner, and the owner denies such an arrangement. See Union Wesley A.M.E. Zion Church v. Rider Enters., Inc., 369 A.2d 608, 611 (D.C. 1977) ("we view both the Statute of Frauds and Section [40-303.19] as having the same purpose: to prevent perjury and fraud and to reduce litigation by requiring that agreements, except in certain cases, be put in writing.")

In this case, Goettle's failure to allege a written contract between it and JPQ is fatal to its claim. Goettle plainly seeks payment it believes is due under its Subcontract with Tompkins. See Compl. ¶ 13 (alleging that Goetttle has not been paid by Tompkins due to Tompkins' petition in bankruptcy). Nevertheless, Goettle has failed to allege that JPQ made a "special promise . . . in writing" to answer for Tompkins' debt to Goettle. In fact, no such written contract exists. (Fahey Aff. ¶ 8.) Count I fails to meet the express requirements of D.C. Code § 40-303.19.

## IV.    Count II - Goettle Masquerades a Contract Claim as a Negligence Action

Count II (negligence) fails because Goettle's negligence claim is based solely on alleged injuries to Goettle's contractual rights.[4] In the District of Columbia, the failure to properly perform a contractual obligation does not give rise to a cause of action in tort:

> . . . the omission to perform a contractual obligation does not ordinarily create a cause of action in tort as between the contracting parties. Rather, the appropriate avenue for relief is an action for breach of contract. Accordingly, the mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.

RLI Ins. Co. v. Pohl, Inc., 2006 U.S. Dist. LEXIS 45958, *11 (D.D.C. 2006) (internal

---

[4] JPQ denies that it entered into any contractual arrangement with Goettle. However, Goettle expressly alleges that JPQ and Goettle entered into a contract (Compl. ¶ 10) and this allegation is incorporated by reference into Goettle's cause of action for negligence. (Compl. ¶ 21.)

citations omitted).

Pohl is just one of several District of Columbia decisions holding that a plaintiff cannot recover for negligence when the defendant's only duty was created by the parties' contract. See also Prouty v. Nat'l R. Passenger Corp., 572 F. Supp. 200 (D.D.C. 1983) (negligence claim dismissed because employer had no independent duty to preserve employment records). Maryland law, considered the most persuasive foreign authority in the District of Columbia, similarly provides that a plaintiff cannot recover in negligence unless the defendant breached a duty independent than that created by the contract. See, e.g., Heckrotte v. Riddle, 168 A.2d 879 (Md. 1961).

In this case, Goettle's only allegations of negligence have no independent basis, but rather stem directly and solely from its Subcontract with Tompkins and the contract it claims to have entered into with JPQ. Goettle alleges that JPQ failed to make the worksite properly available to Goettle and failed to properly schedule and sequence Goettle's sucbcontract work. (Compl. ¶ 22.) These allegations amount to nothing more than complaints about JPQ's performance of its alleged contract with Goettle. Goettle does not allege that any statutory or common law imposed a duty upon JPQ with regards to the availability of the worksite or the scheduling of Goettle's subcontract work. Moreover, Goettle's cause of action for negligence alleges the same injuries as Goettle's cause of action for breach of contract, namely, the alleged failure of JPQ to make the worksite properly available (Compl. ¶ 17), delays allegedly caused by JPQ (Compl. ¶ 18), and the resequencing of certain work on the Project (Compl. ¶¶ 18-19.)

In short, Count II is nothing more than a dressed-up claim for breach of contract. Goettle has not alleged that, in the absence of a contract, statutory or common law would have imposed any duty upon JPQ regarding the availability of the worksite or sequencing of the Project work. In fact, the opposite is true: in the absence of a contract, JPQ had no duty whatsoever to make the worksite timely

-11-

available to Goettle or to sequence the Project work to meet Goettle's needs. Goettle's attempt to "masquerade a contract claim as a negligence action," Tolson v. Primerica Corp., 1991 U.S. Dist. LEXIS 6474, *14 (D. Md. 1991), should be dismissed, or summary judgment granted to JPQ.

**V.    Count III - Goettle Fails to Allege that Any Enrichment Was Unjust**

Count III[5] (unjust enrichment), filed beyond the three year period of limitations for such claims, also fails to allege that JPQ's retention of any benefits conferred by Goettle was unjust. When a subcontractor makes a claim of unjust enrichment against an owner, it is insufficient for the subcontractor merely to allege that it has not been paid for the value of its work. Rather, the subcontractor must allege that the owner also failed to pay the *general contractor* for the value of the subcontractor's work. See, e.g., Joest Vibratech, Inc. v. North Star Steel Co., 109 F. Supp. 2d 746, 751 (N.D. Ohio 2000) ("no unjust enrichment exists when the landowner pays the primary contractor and the subcontractor fails to obtain a lien on the property"); United States ex rel. Irving Equip., Inc. v. James N. Gray Co., 2005 U.S. Dist. LEXIS 32768 (D. Me. 2005) (supplier could not recover in unjust enrichment from general contractor when general contractor had paid subcontractor for value of supplier's work). These cases are in harmony with the general law of unjust enrichment, in which the court's focus "is not the plaintiff's expectancy of payment, but the unjust enrichment of the defendant." News World Communs., Inc. v. Thompsen, 878 A.2d 1218, 1223 (D.C. 2005).

Cases such as Joest Vibratech and James N. Gray Co. rest on principles of equity and fairness. Subcontractors are to look first and foremost to their general contractors for payment, and owners are entitled to assume that payments made to general contractors will be distributed in turn to the appropriate subcontractors. See Interstate Constr. Corp. v. City of Dallas, 320 F.3d 539, 543 (5th Cir. 2003) ("[i]n construction contracts, in the absence of an express agreement to the contrary, a

---

[5] Goettle labels both its breach of contract and unjust enrichment counts as Count I. For convenience, this motion refers to the unjust enrichment count as Count III.

subcontractor is not in privity with the owner and thus looks to the general contractor alone for payment"). When subcontractors are not timely paid by their general contractors, they may rely on their lien rights. However, if an owner such as JPQ were to fully pay a general contractor for the value of a subcontractor's work but subsequently be forced to pay the subcontractor under a claim of unjust enrichment, the owner would pay *twice* for the same work—an inequitable, unfair and unjust result.

In this case, JPQ was entitled to assume that payments made to Tompkins were appropriately distributed to Tompkins' subcontractors, including Goettle:

> All funds paid by the Owner to the Contractor which are applicable to Subcontractors, Sub-subcontractors or materialmen shall be paid to and held by the Contractor in trust for such parties and shall not be used by or constitute funds of the Contractor. Contractor shall, within seven (7) days following receipt of payment from the Owner, pay all bills for labor and material performed and furnished by others in connection with the construction, furnishing and equipping of the Project and the performance of the Work.

Prime Contract ¶ V.F. If Goettle did not receive timely payment from Tompkins, as required by the Subcontract and Prime Contract, Goettle was entitled to file a mechanics' lien.

JPQ has no obligation to pay twice for the value of Goettle's work. In order to properly state a claim for unjust enrichment, Goettle was required to allege that JPQ did not pay Tompkins for the value of Goettle's work. In the absence of such an allegation, Goettle fails to allege that JPQ's retention of any benefit it received from Goettle was "unjust," and therefore fails to state a cause of action for unjust enrichment. See United States ex rel. Modern Elec. v. Ideal Elec. Sec. Co., 81 F.3d 240, 247 (D.C. Cir. 1996) (plaintiff alleging unjust enrichment must allege that "it would be unjust for the recipient of a benefit to retain that benefit."

-13-

## CONCLUSION

For the foregoing reasons, Defendant Jefferson at Penn Quarter, L.P. respectfully requests that this court: (1) dismiss Goettle's Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a cause of action upon which relief may be granted or 12(b)(3) for improper venue, or, in the alternative, award summary judgment to JPQ pursuant to Fed. R. Civ. P. 56(c). In the alternative, JPQ asks that the Court enter an order transferring the case to the United States District Court for the Eastern District of Virginia.

**DATED:**    August 21, 2006

Respectfully submitted,

Jeffrey G. Gilmore, D.C. Bar No.  388362
AKERMAN SENTERFITT
WICKWIRE GAVIN
8100 Boone Blvd, Suite 700
Vienna, Virginia 22182
Phone 703-790-8750
Fax 703-448-1801
jeff.gilmore@akerman.com

Joseph M. Sullivan, D.C. Bar No. 442865
THE LAW OFFICES OF JOSEPH M. SULLIVAN, P.C.
4010 UNIVERSITY DRIVE, SUITE 102
FAIRFAX, VA 22030
703.277.3390 - TEL.
703.277.3392 - FAX
jmspc@aol.com

*Counsel for Jefferson at Penn Quarter, L.P.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**
**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2006, I electronically filed Defendant Jefferson at Penn Quarter L.P.'s Memorandum of Points and Authorities in Support of Motion to Dismiss or in the Alternative for Summary Judgment and any attachments, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to:

> Steven A. Horvath, Esq.
> TRICHILO, BANCROFT, McGAVIN,
> HORVATH & JUDKINS, P.C.
> 3920 University Drive
> Fairfax, Virginia 22030-0022
>
> *Counsel for Plaintiff Richard Goettle, Inc.*

_____
Jeffrey G. Gilmore

-15-