## J.A. Jones/Tompkins Builders, Inc.

| Date | | Subcontract No. |
|---|---|---|
| 10/12/2001 | | 21066-004 |

## SUBCONTRACT

Address: 1333 H Street N.W., Suite 200  Washington, DC 20005

| SUBCONTRACTOR: | Richard Goettle, Inc<br>12071 Hamilton Ave.<br><br>Cincinnati, OH 45231 | CONTACT:<br>PHONE:<br>FAX: | Douglas Keller<br>(513) 825-8100<br>(513) 825-8107 |
|---|---|---|---|
| Vendor No: | 08318 | VC No: | 10b |

SUBCONTRACT FOR: Sheeting, Shoring, Underpinning          (general caption only)

ACCOUNT CODE: 02-4000-000-40

PROJECT:     Jefferson at Penn Quarter

LOCATION:  616 E St., NW
                    Washington, DC

OWNER: Jefferson at Penn Quarter, L.P. c/o JPI

ARCHITECT/ENGINEER: Esocoff & Associates

GENERAL CONTRACT: 8/29/2001

SUBCONTRACT PRICE:     **One million nine hundred sixty-nine thousand five hundred dollars**          ( $1,969,500.00)

PROGRESS ESTIMATE DATE:  On or before the 20th of each month

RETAINAGE PERCENTAGE:     10%

Payment and Performance Bond Required
Bond Premium:                                                                 [x] Included in Price     [ ] Not included in Price

---

(The foregoing terms are incorporated into and more fully explained in the provisions that follow.)

---

J.A. Jones/Tompkins Builders, Inc., a District of Columbia Corporation, with its principal offices in Washington, DC, "Contractor", and Richard Goettle, Inc, a(n) , with offices at the above address, and with its principal offices in , "Subcontractor", agree as follows:

-1-

1. <u>Work</u>. Subcontractor shall furnish all the labor, material, tools, equipment, supervision, and services necessary to prosecute and complete the work identified and described in Schedule A attached hereto ("the Work"), being a portion of the work required of Contractor under the General Contract (the "Contract") between the Owner and Contractor. The Work shall be performed by Subcontractor in a good and workmanlike manner strictly in accordance with the Contract Documents, listed in Schedule B and incorporated herein by reference.

Subcontractor shall be bound by all the terms of the Contract and assumes all the obligations of Contractor as stated therein which are applicable to this Subcontract including any provisions of the Contract required to be inserted or incorporated into this and other subcontracts, and all such terms, obligations and provisions of the Contract are hereby inserted and incorporated into this subcontract as fully as though copied herein. Subcontractor hereby affirms that it has examined all Contract Documents, and agrees that it will not plead unfamiliarity with any of said Documents in connection with any dispute which may arise hereunder or in connection with any claim for extra compensation.

2. <u>Price</u>. Subject to all of the other provisions of this Subcontract, Contractor shall pay to Subcontractor for the due and full performance of the Work the Subcontract Price set forth above (the "Price"); except that if all or a portion of the Work is to be performed on a unit price basis, then the Price set forth shall be deemed an estimated total price for the Work and the actual Price shall be computed in accordance with the lump sum price(s), if any, and the unit prices set forth in Schedule C, based on actual quantities determined in accordance with the Contract Documents. Unit prices shall not be subject to adjustment because of any variation in actual quantities from those "estimated" or "approximated" in this Subcontract or the Contract Documents regardless of the amount of variation except insofar as such unit prices may be adjustable according to any specific provisions of this Subcontract or the Contract Documents. The Price shall not be increased or decreased on account of any changes in costs of any materials or labor or on account of changes in any governmental statutes or regulations, including, but not limited to, those relating to the payment of taxes.

3. <u>Progress Payments</u>. As soon as practicable after the execution of this Subcontract, Subcontractor shall submit to Contractor a schedule of values of the various portions of the Work, including quantities if required by the Contractor, to enable Contractor to prepare a schedule of values for the entire Contract. Subcontractor's schedule shall be prepared in such form and supported by such data as the Architect/Engineer (identified above and hereinafter called "Architect") or Contractor may direct, and shall be subject to Contractor's approval. The total of scheduled values shall equal the Price and shall be divided in such manner as will facilitate progress payments to Contractor and Subcontractor. Each scheduled item shall include its proportionate share of Subcontractor's overhead and profit.

On or before the progress estimate date identified on Page 1 hereof, Subcontractor shall submit to Contractor an itemized progress estimate, on such forms or in such format and supported by such data as Contractor may require, showing the estimated value of work completed, based on Subcontractor's approved schedule of values and on the conditions for payment under the Contract, including without limitation conditions relating to material and equipment delivered to and suitably stored on the site and title to the materials and equipment. Each such progress estimate shall also show the amount of all previous payments to Subcontractor and the amount of current retainage, and shall include evidence satisfactory to Contractor and submitted on such forms or in such formats as Contractor may require demonstrating that Subcontractor has paid all persons supplying labor, materials or services in connection with the Work.

Subcontractor's progress estimate shall be used in the preparation of Contractor's application for payment to Owner under the Contract. Contractor shall pay to Subcontractor, upon receipt of payment from the Owner, an amount equal to the value of Subcontractor's completed Work, but only to the extent allowed and paid by Owner on account of Subcontractor's Work, less all previous payments and less the amount of current retainage. "Previous payments" shall include all amounts theretofore paid on account of the Work, all charges for materials or services furnished by Contractor and properly chargeable to Subcontractor and all costs incurred by Contractor properly chargeable to Subcontractor as obligations of Subcontractor. "Current retainage" shall be calculated by multiplying the value of the Work completed and qualified for payment by the retainage percentage set forth on Page 1.

Contractor shall have the right at any time to withhold all or part of any progress or final payment to Subcontractor for any amounts due Contractor including but not limited to defective work not remedied or for any other breach of this Subcontract by Subcontractor, or if it becomes apparent that the cost to complete the uncompleted Work would exceed the unpaid balance of the Price. No payment, either progress or final, to Subcontractor by Contractor shall be construed to be an acceptance of any defective work.

4. **Final Payment.** A final payment, consisting of the unpaid balance of the Price, shall be made within forty-five (45) days after the last of the following to occur: (a) full completion of the Work by Subcontractor, (b) final acceptance of the work by the Architect and Owner, (c) final payment by Owner to Contractor under the Contract, (d) the furnishing of satisfactory evidence by Subcontractor to Contractor on such forms or in such format as Contractor may require that the Subcontractor has paid in full all persons furnishing labor, materials or service in connection with the Work, and that neither Subcontractor nor any person claiming under or through Subcontractor has filed or has the right to maintain a lien or other claim against the Owner, the Contractor, Contractor's surety, if any, or the Project premises, (e) the return of all drawings, plans and specifications to the Contractor or Architect when required by the Contract Documents, and (f) the delivery of all guaranties, warranties, bonds, instruction manuals, performance charts, diagrams, as-built drawings and similar items with respect to the Work.

5. **Payment of Labor, Supplies and Material.** Subcontractor will receive the payments made by Contractor and will hold such payments in trust to be applied first to the payment of any persons furnishing labor, materials, or services for the Work; and Subcontractor will so apply the payments from Contractor before using any part thereof for any other purpose. Subcontractor shall, as often as requested by Contractor, furnish an affidavit on such forms or in such format as Contractor may require showing the names and addresses of all persons who shall have furnished labor, materials or services for the Work and the amount due or to become due to each such person. Progress payments may, in the discretion of Contractor, be made in the form of checks payable jointly to Subcontractor and such person. If Subcontractor shall fail to pay promptly when due, for all labor, services, and materials furnished in connection with the performance of the Work, Contractor may, after five (5) days written notice to Subcontractor, pay the amount of such liabilities and recover the amount thereof from Subcontractor, directly, or by the application of any portion of the Price then, or thereafter becoming, due hereunder. Subcontractor will, at the request of Contractor, provide affidavits on such forms or in such format as Contractor may require from all persons furnishing labor, materials or services to the effect that they have been paid in full.

6. **Time of Completion.** Completion of the Work and its several parts within the time allotted or reasonably contemplated under the Contract is of the essence of this Subcontract. Therefore, Subcontractor agrees: (a) to provide at the Project site the materials, equipment, labor and supervision necessary to begin the Work upon Contractor's order to do so, (b) to perform the Work and all parts thereof promptly, diligently and in such order and sequence as Contractor may direct to assure the efficient, expeditious and timely prosecution of the entire work under the Contract; and (c) to furnish sufficient forces, supervision, equipment and materials, at such times and for such periods, as will result in progress according to the approved progress schedule of Contractor or any modification thereof. Contractor reserves the right to modify any such progress schedule with respect to the required sequence or duration of the Work or any portion thereof, and Contractor makes no representation that Subcontractor will be able to commence, prosecute or complete the Work in accordance with any progress schedule. Subcontractor shall furnish any information requested by Contractor required for scheduling, monitoring or expediting the Work. Subcontractor shall keep itself fully apprised of the status of the work under the Contract at all times and any failure to do so shall not form the basis for a claim by Subcontractor against Contractor. Subcontractor shall promptly let all subordinate contracts and purchase orders; shall immediately notify Contractor of any inability of the subordinate contractors and material suppliers to meet the requirements of the progress schedule; and, when required by Contractor, shall submit the names of subordinate contractors and material suppliers for approval or comment. Subcontractor shall furnish to Contractor all necessary information required for expediting and monitoring such activity, and shall provide Contractor access to its subordinate contractors and material suppliers for the purpose of verifying or expediting their performance, and if the Work is, or will likely be, delayed by their nonperformance or delay, Subcontractor shall reimburse Contractor for any expenses required to secure or remedy their performance.

7. <u>Extensions of Time</u>. If for reasons beyond its control Subcontractor shall be materially delayed at any time in the progress of the Work under such circumstances as would entitle Contractor to an extension of time or other relief under the Contract, Subcontractor shall be entitled to seek a corresponding extension of time for completion of the Work hereunder or other relief; provided that Subcontractor shall have filed with Contractor written claim for such extension or relief that complies with the requisites for making a claim under the Contract and in sufficient time to permit Contractor to file such a claim against Owner for an extension or other relief under the Contract. In the event the Subcontractor's performance of this Subcontract is delayed or interfered with by acts or omissions of the Owner, Contractor or other subcontractors, Subcontractor may request an extension of time for the performance of this Subcontract as hereinabove provided, but shall not be entitled to any increase in the Subcontract Price or to damages or additional compensation as a consequence of such delays or interference except to the extent that the Contract entitles Contractor to compensation therefor and then only to the extent of any amounts that Contractor, on behalf of Subcontractor, recovers from Owner for such delays or interference.

8. <u>Changes</u>. Contractor may, without invalidating the Subcontract or any bond(s) given hereunder, order extra and/or additional work, deletions, or other modifications to the Work, such changes to be effective only upon written order of Contractor. If such change is made by or in any manner results from a change, revision or requirement of the Architect or Owner, then any adjustment to the Price or to the time for completion of the Work shall be made or claimed solely in accordance with the applicable provisions of the Contract; otherwise, on an agreed or equitable basis. If the provisions of the Contract require the submission of a priced proposal in response to any such change, revision or requirement and Subcontractor fails to submit such proposal in the form and within the time specified, Subcontractor shall be conclusively bound by such adjustment as the Owner may thereafter determine is appropriate. Notwithstanding any inability to agree upon any adjustment or the basis for an adjustment, Subcontractor shall, if directed by Contractor, nonetheless proceed in accordance with the order, and the Price and time of completion shall be adjusted in accordance with the foregoing. If requested by Contractor, Subcontractor shall submit forthwith its detailed estimate of the value of and time involved in any such change or proposed change, including unit costs if requested, and shall furnish detailed records of costs or savings actually realized as a result of any such change, along with any other documentation required by the Contract. If any such changes diminish the Work to be done, they shall not form the basis for a claim by Subcontractor for loss of anticipated profits.

9. <u>Termination.</u> If the Contract is terminated, this Subcontract may be thereupon likewise terminated, and compensation to Subcontractor shall be made or claimed on the same basis as that provided for in the Contract or Contract Documents.
In addition to the provisions for termination specified above and under Article 23, Default, Contractor may terminate all or any portion of the Work of this Subcontract, without cause, by issuing written notice of such intention to Subcontractor. In such event, Subcontractor shall be paid, subject to the appropriate provisions of this Subcontract relating to progress and final payments, the value of the Work performed up to the date of termination less previous payments plus an equitable disposition of materials in progress and the reasonable cost of demobilization. Under no circumstances, however, shall Contractor be liable for anticipated profits on work not performed or materials and equipment not delivered and incorporated in the Work.

10. <u>Relationships</u>. Subcontractor shall be bound by the decisions of the Architect with respect to the quality and quantity of the Work, meaning of the Contract Documents, acceptability of persons or organizations performing the Work and other matters set forth in the Contract Documents, to the same extent that Contractor may be bound thereby. Subcontractor's Work shall conform to any additional specifications, drawings, or explanations furnished by the Architect for the purpose of detailing and illustrating the Work. As used in this Subcontract, the word "Architect" shall designate the architect, engineer or other comparable person designated as the Owner's representative in the relevant context of the Contract Documents, which representative shall generally be the Architect/Engineer identified on Page 1 hereof.

Contractor shall have the right to direct the prosecution of the Work and to coordinate such Work with the work of others; and Contractor shall have with respect to Subcontractor the same rights and powers as the Owner has reserved to itself with respect to Contractor for the performance of the applicable portions of the Contract.

Subcontractor shall cooperate with, and shall not delay, impede, or otherwise impair the work of others participating in the construction of the Project.

If Subcontractor is damaged by the act of the Owner or other occurrence, for which act or occurrence the Contract affords benefits and remedies solely to Contractor, then Subcontractor shall be derivatively entitled to the benefits to be achieved by the pursuit of such remedies, as Subcontractor's interest may appear; provided, however, Contractor shall not be required to file any claim or take any action against Owner on behalf of Subcontractor unless Subcontractor shall provide adequately for the payment of, and shall pay for, all costs and expenses, including attorney's fees, that may be incurred by Contractor in proportion to the amount of Subcontractor claim, in the pursuit of such remedies. Contractor shall not be required on behalf of Subcontractor to file any claim or take any action against any person other than Owner; nor to file any claim or take any action against any party whatsoever (including the Owner) that is not asserted in good faith or that would unreasonably extend the date for a substantial final payment under the Contract. It is agreed that the claim of Subcontractor against Contractor for the acts of the Owner is limited to the rights of Contractor against Owner and when such rights have been exhausted, Subcontractor's claim is settled.

11. <u>Assignment</u>. Subcontractor shall not assign, transfer, or otherwise dispose of this Subcontract or any part thereof including all or any portion of the Work, nor assign any monies due or to become due hereunder, except with the prior written consent of Contractor. Any assignment of this Subcontract consented to by Contractor shall not operate to relieve Subcontractor of its primary responsibility to Contractor for the due and full performance hereof, and Subcontractor shall be liable to Contractor for all acts and omissions of Subcontractor's subcontractors and assignees.

Any assignment of this Subcontract or monies under it without the prior written consent of Contractor will be void and of no effect.

12. <u>Bonds</u>. Unless otherwise indicated on Page 1 hereof, Subcontractor, at its own expense, shal lobtain from a commercial surety acceptable to Contractor separate bonds: a) for the due and complete performance of Subcontractor's obligations hereunder (performance bond), and b) for the timely payment of all charges for labor, services, and materials furnished for the prosecution of the Work (payment bond). Each such bond shall be for a penal sum equal to one hundred percent (100%) of the Subcontract Price; shall be provided by a surety licensed in the appropriate jurisdiction where the Work is to be performed and listed in the current US Department of Treasury Circular 570 with an underwriting limitation specified therein consistent with the face amount of the bonds; shall be executed on forms provided by and in a manner satisfactory to Contractor; and shall be delivered to Contractor within seven (7) days after the execution hereof. If, in accordance with the indication on Page 1 hereof, the premium expense for such bonds is not included in the Subcontract Price, then Subcontractor shall submit to Contractor the actual surety's invoice for such bonds. Upon presentation of satisfactory bonds, Contractor shall pay the lesser of either the invoice amount or other such bond premium amount as may be stated elsewhere in this Subcontract. At Contractor's option, such payment may be made to Subcontractor or directly to the surety.

If, according to the foregoing provisions, Subcontractor is not required to furnish such bonds, Subcontractor shall submit to Contractor a current financial statement; and Contractor reserves the right at any time to require Subcontractor to furnish such bonds, but at Contractor's expense. If Subcontractor fails at any time to obtain and furnish a bond, such failure will constitute a material breach by Subcontractor, entitling Contractor to proceed under the provisions of Article 23, Default, hereof.

13. <u>Indemnity</u>. Subcontractor agrees to defend, indemnify and hold harmless Contractor and Owner and their agents and employees, from and against any claim, cost, expense or liability (including attorneys' fees) attributable to bodily injury, sickness, disease or death, or damage, loss or destruction of property (including loss of use thereof), caused by, arising out of, resulting from or occurring in connection with the performance of the Work by Subcontractor, its subcontractors, or their agents or employees, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, Subcontractor's duty hereunder shall not arise if such injury, sickness, disease, death, damage or destruction is caused by the sole negligence of a party indemnified hereunder. Subcontractor's obligation hereunder shall not be limited by the provisions of any workmen's compensation or similar act, or by the provisions, scope or limitations of any insurance requirements or coverage.

Should Owner or any other person assert a claim or institute a suit, action, or proceeding against Contractor involving the manner or sufficiency of the performance of the Work, Subcontractor shall, upon request of Contractor, promptly assume the defense of such claim, suit, action or proceeding, at Subcontractor's expense, and Subcontractor shall indemnify and hold harmless Contractor and its agents and employees, from and against any liability, loss, damage, or expense arising out of or related to such claim, suit, action or proceeding.

Subcontractor agrees to reimburse Contractor for all costs (including attorney's fees) incurred by Contractor in enforcing or securing Subcontractor's performance of any of the provisions of this Subcontract including this Article 13.

14. **Insurance.** Subcontractor shall maintain and pay for insurance coverage of the types and with the minimum limits set forth in Schedule D attached hereto. Such coverage shall be maintained in form and with companies acceptable to Contractor, Architect, and Owner, and shall, notwithstanding Schedule D, meet the applicable requirements imposed under the Contract or by any governmental authority having jurisdiction over the Work. If Subcontractor fails at any time to secure and maintain any insurance coverage required hereunder, such failure will constitute a material breach by Subcontractor, entitling Contractor to proceed under the provisions of Article 23, Default, hereof. Subcontractor shall furnish Contractor certificates of the insurance required hereunder and each policy of insurance shall provide for thirty (30) days notice to Contractor prior to cancellation. Contractor may at any time require Subcontractor to reaffirm the maintenance of such coverage.

Subcontractor shall determine the adequacy, scope, limits, terms and applicability to Subcontractor's Work of any builder's risk or fire insurance, if any, which may be provided or maintained by Contractor or Owner. Subcontractor shall be responsible for providing any such insurance or supplemental insurance it may desire. In the event of a loss for which an Owner's or Contractor's builder's risk or fire insurance policy, if any, provides coverage for Subcontractor's Work, and a recovery from such insurance is subsequently secured, Contractor or Owner shall have sole responsibility and discretion for the allocation of such recovery. The initiation or pendency of a claim or recovery under such insurance, if any, shall not be cause for Subcontractor to delay or suspend the performance of any obligation under this Subcontract. Except when and to the extent specifically covered by such insurance, if any, which the Owner or Contractor may maintain, Subcontractor shall be responsible for any desired coverage against damage or loss to its own material, facilities, tools, equipment, plant, scaffolds, bracing, and similar items.

Subcontractor shall furnish Contractor a copy of each lost time accident report made to Subcontractor's insurance carriers and shall cooperate with insurers to facilitate the adjustment of any claim or demand arising out of operations within the scope of the Work. To the extent that Subcontractor maintains insurance coverage, Subcontractor hereby waives subrogation of claims against Contractor, Owner, and their agents or employees. Nothing contained in this Article 14 shall relieve the Subcontractor of any indemnity obligations required elsewhere in the Subcontract.

15. **Safety and Security.** Subcontractor shall execute the Work under this Subcontract in a prudent, cautious and safe manner; continuously maintain a safe and secure workplace; employ at all times whatever means may be reasonably required to insure the safety and avoid the endangerment of all persons and property of itself and others; and comply with any specific safety and security-related requirements of the Owner, the Contract or the Contract Documents.

Subcontractor represents that, for the purposes of the Occupational Safety and Health Act (OSHA) of 1970 (including any state counterparts in those states authorized to enforce OSHA laws) and including all standards and regulations which have been or shall be promulgated by the governmental authorities which administer such Act, it is an 'employer' under the definition contained in such Act and, as an employer, is obligated to observe the requirements of that Act independent of any contractual relationship; and that, with respect to the Work and all activities associated in any manner with the Work or the Project, it will so comply with the requirements of that Act and all other requirements, standards, orders, regulations, or ordinances issued by any authority having jurisdiction over the Work.

Subcontractor shall observe and comply with all laws and regulations relating to the shipment, possession, handling, labeling, packaging, storage, use, exposure, discharge, and disposal of any hazardous substance including any laws and regulations relating to record-keeping and publication, posting or communication of hazard information.

Subcontractor shall observe and comply with all environmental protection laws and regulations applicable

to the Project site or the Work, including those relating to the use of water, the discharge or disposal of wastes, the control of drainage, and the protection of vegetation, wildlife, habitats, or surroundings. Subcontractor shall also observe and comply with any environmental commitments made by Owner or Contractor in securing any permit or authorization for the Project.

16. **Liens**. As an integral part of the process by which Subcontractor shall request and receive progress and final payments under this Subcontract, Subcontractor shall submit with each such payment request a waiver and release of liens, on such forms and in such manner as Contractor may require, corresponding to the work performed and labor, materials, equipment, and services furnished for which Subcontractor requests payment. Subcontractor shall defend, indemnify and hold harmless Contractor and Owner from the operation and effect of any lien or encumbrance. If any such lien or encumbrance is claimed, Subcontractor shall forthwith discharge same; provided, however, if such lien or encumbrance be contested in good faith by Subcontractor, Subcontractor shall so notify Contractor, and Contractor shall have the right upon forty-eight (48) hours notice to require that Subcontractor furnish a suitable bond, escrow or other reasonable assurance of payment satisfactory to Contractor.

If and only to the extent permitted by law and required by the Contract, Subcontractor, for itself and for all persons furnishing labor, materials, equipment, or services in connection with the Work, waives and releases all mechanic's liens or right of liens or claims, now existing or hereafter arising for labor, materials, equipment or services furnished under this Subcontract or upon any monies due or to become due the Contractor.

17. **Labor.** To the fullest extent permitted by applicable law, Subcontractor agrees to comply with and to be bound by any labor agreements executed by Contractor and applicable to the Work under this Subcontract. Should Subcontractor's Work hereunder or the work under the Contract be stopped or interfered with by reason of strikes, picketing or other disputes, Subcontractor shall immediately resolve such dispute and terminate all such work stoppage and interference. Any failure by Subcontractor to comply with such labor agreements or to terminate such stoppage or interference shall entitle Contractor to proceed under the provisions of Article 23, Default, hereof.

Subcontractor shall remove or cause to be removed from the Project any employee, including supervision, whose presence is determined by Contractor or Owner to be detrimental to the orderly prosecution of the Work.

Subcontractor shall comply with all wage rates, reporting requirements and all other employer obligations established under the Contract and by applicable laws and regulations.

18. **Taxes**. Subcontractor shall pay, or cause to be paid, when due, all taxes of every kind now or hereafter imposed, levied, or assessed by any governmental authority with respect to the Work, including taxes for labor, materials, and equipment utilized in connection therewith and expressly including all sales, use, personal property, excise, and payroll taxes. Subcontractor, upon request of Contractor, shall furnish satisfactory evidence of such payments.

19. **Defective or Damaged Work**. Subcontractor shall provide safe, sufficient, and proper facilities at all times for the inspection of the Work by the Contractor, Owner, and Architect, or their representatives. Subcontractor shall, commencing within twenty-four (24) hours after receiving written notice from Contractor, promptly take down and remove all portions of the Work which Contractor or Architect shall condemn as unsound, improper, or in any way failing to conform to the Contract or the Contract Documents and shall make good all Work and the work of others damaged or destroyed thereby, all at Subcontractor's expense. If Subcontractor shall not remove and replace such work within a reasonable time, Contractor may remove and replace the same at the expense of the Subcontractor.

Subcontractor specifically agrees that it is fully responsible for the protection of all Work hereunder until full completion and final acceptance by the Owner and that it will make good or replace at no expense to Contractor or Owner any damage to or loss of its Work from any cause whatsoever which occurs prior to said final acceptance.

20.  **Miscellaneous.** Subcontractor shall, at its own expense:

a) obtain all necessary permits and licenses and comply with all statutes, ordinances, rules, regulations, and orders of any governmental or quasi-governmental authority, applicable to the performance of the Work; and be responsible for and correct any violations thereof;

b) prepare and submit to Contractor all necessary shop and erection drawings, plans, and diagrams; furnish all necessary samples, catalogue cuts, laboratory and inspection reports and engineering calculations; and perform specified tests and erect required mock-ups, all in sufficient time to permit the orderly and timely prosecution of the Work; and prepare and submit any as-built drawings, operation and maintenance manuals, warranties, and all other documentation required under the Contract Documents;

c) verify all control lines and benchmarks and notify Contractor of any discrepancy before proceeding with the Work; be responsible for all required layout, positioning and placement of all elements of the Work; familiarize itself with all Contract Documents and shop, fabrication and installation details of other trades and divisions of work, particularly those affecting or affected by the Work under this Subcontract; and verify all dimensions and take all measurements for any portion of the Work which is dependent for proper size or installation upon coordination or fit with other work or conditions without reliance on representations or indications of Contractor, the Contract Documents or other subcontractors.

d) remove, at least weekly or more often as directed by Contractor, all rubbish and surplus and waste material resulting from the prosecution of the Work and all tools, scaffolding and equipment not currently required in the prosecution of the Work;

e) comply with the reasonable recommendations of Owner's, Contractor's and Subcontractor's insurance carriers or their associations;

f) repair all damage to the work or property of others caused by Subcontractor, its subcontractors, or their agents or employees;

g) furnish its own temporary facilities, including the cost of all utilities used or consumed by Subcontractor and proportionate cost of operating hoisting equipment furnished by Contractor, if used by Subcontractor; and

h) furnish adequate and competent supervision and direction and be fully liable and responsible for the safe and proper care, use and custody of any crane, hoisting equipment or other machinery, tools or equipment, with or without an operator, which Contractor may from time to time furnish, loan or make available to Subcontractor for Subcontractor's use or benefit; and defend and indemnify Contractor in accordance with the provisions of Article 14 for any injury, death or property damage which may occur during or as a result of such use or custody, including (but not limited to) any negligent act or omission of any operator.

21.  **Warranty.** Subcontractor warrants that the Work shall be free from defects and shall conform to and meet the requirements of the Contract and the Contract Documents; and shall furnish any separate warranty or guarantee for the Work, or portions thereof, required under the Contract or Contract Documents. Subcontractor agrees to make good, to the satisfaction of the Owner, any portion or portions of the Work which prove defective within one year (or such longer period as may be specified in the Contract or Contract Documents) from the date of acceptance of the Project by Owner; provided, however, that this obligation to make good shall in no respect diminish the duration of aforesaid warranty which shall exist for the longest period provided by law, or exclude other warranties provided by law or the Contract Documents.

22.  **Patents.** Subcontractor agrees to defend, indemnify and save harmless Contractor and Owner from and against loss, liability, damage, cost or expense on account of infringement or alleged infringement of any patent rights by reason of the Work or any materials, equipment, processes or techniques used therein by Subcontractor. Subcontractor shall pay all license fees and royalties pertaining to the Work.

23.  **Default.** Should Subcontractor at any time: (a) fail to supply the labor, materials, equipment, supervision and other things required of it in sufficient quantities and of sufficient quality to perform the Work with skill, conformity, promptness and diligence required hereunder, (b) cause stoppage or delay of or interference with the Project work, (c) become insolvent, or (d) fail in the performance or observance of any of the covenants, conditions, or other terms of this Subcontract, then in any such event, each of which shall constitute a default hereunder by Subcontractor. Contractor shall, after giving Subcontractor notice of default and forty-eight (48) hours within which to cure, have the right to exercise any one or more of the following remedies:

(i) require that Subcontractor utilize, at its own expense, overtime labor (including Saturday and Sunday work) and additional shifts as necessary to overcome the consequence of any delay attributable to Subcontractor's default;

(ii) remedy the default by whatever means Contractor may deem necessary or appropriate, including, but not limited to, correcting, furnishing, performing or otherwise completing the Work, or any part thereof, by itself or through others (utilizing where appropriate any materials and equipment previously purchased for that purpose by Subcontractor) and deducting the cost thereof (plus an allowance for administrative burden equal to fifteen percent (15%) of such costs) from any monies due or to become due to Subcontractor hereunder;

(iii) terminate Subcontractor's performance under this Subcontract, without thereby waiving or releasing any rights or remedies against Subcontractor or its sureties, and by itself or through others take possession of the Work, and all materials, equipment, facilities, plant, tools, scaffolds and appliances of Subcontractor relating to the Work, for the purposes of completing the Work and
securing to Contractor the payment of its costs (plus an allowance for administrative burden equal to fifteen percent (15%) of such costs) and other damages under the Subcontract and for the breach thereof, it being intended that Contractor shall, for the stated purposes, be the assignee of and have a security interest in the property described above to the extent located on the Project site (and Contractor may at any time file this Subcontract as a financing statement under applicable law); and

(iv) recover from Subcontractor all losses, damages, penalties and fines, whether actual or liquidated, direct or consequential, and all reasonable attorneys' fees suffered or incurred by Contractor by reason of or as a result of Subcontractor's default.

The foregoing remedies shall be considered separate and cumulative and shall be in addition to every other remedy given hereunder or under the Contract Documents, or now or hereafter existing at law or in equity.

After completion of the Work by the exercise of any one or more of the above remedies and acceptance of the Work by Architect and payment therefor by Owner, Contractor shall promptly pay Subcontractor any balance of the Price. In the event a termination of Subcontractor's performance under this Subcontract for default is subsequently determined by a court of competent jurisdiction to be unjustified, then such termination shall be deemed to have been a termination by Contractor without cause under the provisions of Article 9, Termination, and the compensation due Subcontractor, if any, shall be determined accordingly.

Except as limited by this Subcontract, Subcontractor shall have the rights and remedies available at law or in equity for a breach of this Subcontract by Contractor. Any default by Contractor shall be deemed waived unless Subcontractor shall have given Contractor written notice thereof within seven (7) days after the occurrence of such default. Subcontractor shall not be entitled to stop the Work or terminate this Subcontract on account of Contractor's failure to pay an amount claimed due hereunder (including changed or extra work) so long as Subcontractor shall not have adequately substantiated the amount due or so long as a good faith dispute exists as to the amount due. Subcontractor shall not be entitled to stop the Work on account of a default by Contractor unless such default shall have continued for more than seven (7) days after Contractor's receipt of written notice of such default from Subcontractor.

24. <u>Disputes.</u> In the event of any dispute or claim by Subcontractor hereunder, notice in writing of such claim shall be given to Contractor no later than seven (7) days following the event, decision or other action out of which the claim arises, or such lesser period as may be required under the Contract. Such notice shall describe such dispute or claim in detail. If Subcontractor fails to provide such notice, the claim or dispute and all monetary and other relief associated therewith shall be deemed as waived and abandoned by Subcontractor.

If any such claim or dispute as to which notice is given by the Subcontractor as above provided involves any aspect of the Contract or the correlative rights and duties of the Owner as defined therein then Subcontractor's rights as to such dispute or claim shall be determined solely by applicable provisions of such Contract, including any dispute determination provisions thereof. In the event that it is necessary to commence any action or proceeding against the Owner to implement Subcontractor's rights as above described, then Contractor agrees to initiate such proceeding on Subcontractor's behalf upon Subcontractor's written request; provided, however, Subcontractor, and its sureties, shall be bound to Contractor to the same extent that Contractor is bound to Owner by the Contract and by any decisions or determinations made under the Contract by any board, court or arbitration panel. Subcontractor shall be responsible for the prosecution of any such proceeding at its own cost and expense and Contractor will support and cooperate with Subcontractor in such prosecution.

If any such claim or dispute as to which notice is given by the Subcontractor as above provided does not involve the Contract then it shall be determined as follows: Contractor shall render a written decision thereon within thirty (30) days from receipt of the written notice of such claim or dispute. If Subcontractor does not accept

or agree with such decision (or any part thereof) it shall so notify Contractor within seven (7) d⸱⸱⸱ and the parties shall exert reasonable and good faith efforts to reach a satisfactory resolution. If such efforts are unsuccessful, then either party may elect to commence a legal action against the other in an appropriate court of law consistent with the provisions of Article 27(g) herein. Alternatively, either party, but only with the explicit written consent of the other, may elect to initiate formal arbitration of such claim or dispute in accordance with the Construction Industry Rules of the American Arbitration Association and the parties agree to be bound by and to comply fully with the decision rendered in such arbitration which shall be final and may be entered in any court of competent jurisdiction. During such arbitration proceedings, the full range of discovery procedures provided by the Federal Rules of Civil Procedure shall be available to each party.

The pendency of any such claim or dispute shall not suspend or stay in any manner the obligations under this Subcontract and Subcontractor shall continue the Work hereunder without interruption.

25.   Notices. All written notices provided for in this Subcontract shall be deemed given only when personally delivered, given by telegram or electronic facsimile transmission with written confirmation copy following, mailed postage prepaid, or dispatched prepaid by courier or delivery service to the parties at the addresses set forth on Page 1 of this Subcontract. Either party may, from time to time, by notice as herein provided, designate a different address to which notices to it shall be sent.

26.   Inspection of Site. Subcontractor acknowledges that its authorized representatives have personally inspected the Project site and satisfied itself as to the physical condition thereof and the locally prevailing labor, transportation, utilities, weather and storage conditions.

27.   General.
a) As regards the subject matter hereof, this writing including documents incorporated herein by reference, constitutes the entire agreement between the parties.
b) This Subcontract shall not be modified or amended in any way except (i) by writing executed by both parties, or (ii) as otherwise expressly provided herein.
c) This Subcontract and the Contract Documents are intended to supplement and complement each other and shall where possible be thus interpreted. If, however, any provision of this Subcontract irreconcilably conflicts with a provision of the Contract Documents, the provision imposing the greater duty on the Subcontractor shall govern.
d) The failure of the Contractor to insist in any one or more instances upon a strict compliance with any provision of this Subcontract, or to exercise any option herein conferred, including but not limited to provisions relating to insurance, bonds and default, shall not be construed as a waiver or relinquishment of the right of Contractor thereafter to require compliance with such provision or to exercise such option, but such provision or option will remain in full force and effect.
e) All matters relating to the validity, performance, or interpretation of this Subcontract shall be governed by the law of the State in which the Project is located.
f) If any of the provisions of this Subcontract shall contravene or be invalid under the laws of the jurisdiction where it is to be performed, such contravention or invalidity shall not invalidate the whole Subcontract or any other provision thereof, but the contravening or invalid provision or portion of such provision shall be deemed amended to conform with the governing law but in such a manner as to most nearly reflect the intent of the parties.
g) Any suit, action or proceeding permitted under this Subcontract and initiated by one of the parties hereto against the other on any matters whatsoever arising out of or in connection with this Subcontract shall be filed and maintained in state or federal court nearest the Project site or, at the initiating party's option, in state or federal court nearest the responding party's principal offices as indicated on Page 1 hereof. All other options with respect to the selection of a place of filing are hereby waived, provided however, this shall not constitute a waiver by a party against whom any such suit, action or proceeding to the federal (or state) court in that district. It is further agreed that each party shall, and hereby does waive trial by jury in any such suit, action or proceeding.
h) This Subcontract shall be binding upon and shall inure to the benefit of the parties hereto and their heirs, successors and assigns.
i) Where the context requires, the neuter shall include the masculine and feminine and the singular shall include the plural, and vice versa.

IN WITNESS WHEREOF, the parties have duly executed this Subcontract, in one or more copies or counterpart originals, as of the date set forth on Page 1 hereof.

ATTEST:                                           J.A. Jones/Tompkins Builders, Inc.
                                                  Contractor

_____                    By: _____
                                                  Title:

ATTEST:                                           Richard Goettle, Inc
                                                  Subcontractor

_____                    By: _____
                                                  Title:

## INDEX

This Subcontract consists of the following:

| | |
|---|---|
| Subcontract General Provisions | Pages 1-11 |
| Schedule A, Scope of Work | Page(s) 2 |
| Schedule B, Contract Documents | Page(s) 7 |
| Schedule C, Prices | Page(s) 1 |
| Schedule D, Insurance Requirements | Page(s) 1 |
| Schedule E, Special Provisions | Page(s) 1 |
| Schedule F, Supplementary Provisions | Page(s) 5 |
| Schedule G, EEO | Page(s) 1 |

Subcontract No <u>21066 - 004</u>

# JEFFERSON AT PENN QUARTERS
## SCOPE OF WORK – SHEETING AND SHORING

The Work includes, but is not limited to the following, which is provided as a general guide and is not intended to represent each and every item necessary to perform the work. It is the Subcontractor's responsibility to provide a complete Scope of Work.

The Subcontractor will furnish labor, material, equipment, plant, and services necessary to furnish and install all <u>Sheeting, Shoring</u> and related work in accordance with the agreement between the Owner and Contractor, Project Drawings and Specifications as listed in Schedule B as prepared by Esocoff & Associates / Architects., with specific reference to following:

        Division 0 – Bidding & Contracting Requirements
        Division 1– General Requirements-
        Specification Sections:
           02250 – Shoring and Bracing
           02255 – Underpinning
           02290 - Site Monitoring

1. It is understood that this Subcontractor has prepared the sheeting & shoring shop drawings under the authority of a Letter of Intent dated January 11, 2001 issued by the Owner. The Building Permit for the sheeting & shoring work from the District of Columbia has been issued based on the most recent shop drawings, which include Revision No. 4 dated August 15, 2001, and a copy of the permit has been provided to the Subcontractor. The Subcontractor maintains that certain conditions relative to the sheeting & shoring work exist at this time, which were not apparent to the Subcontractor during the shop drawing preparation and schedule planning phases. These conditions include requirements for underpinning and for construction work during winter months. The Subcontractor believes that these conditions may entitle them to additional compensation over and above the Subcontract amount stipulated in the Owners Letter of Intent. This Subcontract agreement recognizes the rights of the Subcontractor to pursue a claim for such costs with the Owner, however, it is specifically understood that the Contractor will have no responsibility whatsoever to the Subcontractor for any part of such claims that may be rejected by the Owner.

2. Pumping and de-watering of rainwater required to keep the work areas clear of water during the work of this agreement.

3. Subcontractor may use the earth ramps provided by the Excavator, as they are available, for site access for material, equipment, and personnel. Access other than the earth ramps will be by this Subcontractor.

4. Provide underpinning work for the Clara Barton Building and the grade beams for the Gallery Row buildings as required.

Subcontract No. <u>21066-004</u>

        <u>SCHEDULE A</u>
        Page 1 of 2

INITIAL

5. Install angle iron and safety cables at the perimeter of the site, at street grade level, to act as a safety fence at all perimeter locations that do not abut to existing buildings that are to remain. Angle iron and safety cables to be removed at completion by Contractor.

6. This Subcontractor acknowledges that the performance of the work requires cooperation as well as close coordination of sheeting and shoring activities, in a mutually agreeable program as established by the Contractor, with other foundation related work so that the individual trades are not disrupted or delayed by each other. This includes, but is not limited to, Excavation, Demolition, Dewatering, Cast-In-Place Concrete, and Façade Bracing work.

7. At the conclusion of work of this agreement, Subcontractor shall leave the Site Monitoring System in place for use by others.

8. Schedule:
    a. Mobilize within four (4) weeks after Notice to Proceed.
    b. Complete all work............................. 16 weeks

9. The following clarifications are a part of this Subcontract:
    a. Temporary utilities and related consumption fees will be by others.
    b. This Subcontract excludes the underground obstructions as referenced in the Subcontractors letter to the Owner dated December 19, 2000.
    c. Spoils handling and removal is by others.
    d. Surveying and layout of Subcontractors work is included herein, from initial survey control points on the site, to be established by other.
    e. Removal of angle iron and safety rail/cables at completion of Work by Contractor.

Subcontract No. 21066-004

SCHEDULE A
Page 2 of 2

INITIAL