# OWNER/CONTRACTOR AGREEMENT

## Washington, D.C.

## TABLE OF CONTENTS

Article/Paragraph

Page

ARTICLE I. RELATIONSHIP OF THE PARTIES . . . . . . . . . . . . . . . . . . . . . . 1
A.   Project Organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
B.   Owner Is Agent of the Other Property Owners . . . . . . . . . . . . . . . . . . . 1
C.   Other Property Owners Not in Privity with Contractor . . . . . . . . . . . . . 1
D.   Construction Manager Is Owner's Agent . . . . . . . . . . . . . . . . . . . . . . . 2
E.   Construction Manager Not in Privity with Contractor . . . . . . . . . . . . . . 2

ARTICLE II. INTERPRETATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
A.   Inconsistencies and Omissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARTICLE III. THE WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
A.   Description of the Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
B.   Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
C.   Commencement of the Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
D.   Completion of the Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
E.   Deferred Authorization of Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
F.   Time is of the Essence and Liquidated Damages for Delay . . . . . . . . . . 7
G.   Subcontracts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
H.   Hazardous Materials and Environmental Matters . . . . . . . . . . . . . . . . . 8
I.   Submittals and Correction of Work . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE IV. CONTRACT SUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
A.   Amounts Payable to the Contractor . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
B.   Cost of the Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
C.   Credits to the Owner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
D.   Fixed Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
E.   Guaranteed Cost . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ARTICLE V. PAYMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
A.   Applications for Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
B.   Architect's Certificates for Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
C.   Progress Payments and Retainage . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
D.   Final Retainage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
E.   Final Completion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
F.   Payment of Subcontractors and Materialmen . . . . . . . . . . . . . . . . . . . . 22
G.   Payments Not to Exceed Guaranteed Cost . . . . . . . . . . . . . . . . . . . . . . 24
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Article/Paragraph

Page

H.  Payments if Contractor is in Default ............................ 25
I.  Lender's Approval .............................................. 25

ARTICLE VI.  CHANGES IN THE WORK ...................................... 26
    A.  Change Orders ............................................. 26
    B.  Change Orders Affecting the Work .......................... 26
    C.  Change Orders Resulting from Contractor's Failure to Perform ........... 27
    D.  Approval of Change Orders Initiated by Contractor ......... 28
    E.  Incidental Changes in the Work ............................ 28
    F.  Bonus for Early Completion ................................ 29

ARTICLE VII.  DEFAULT ................................................. 29
    A.  Default by Owner .......................................... 30
    B.  Default by the Contractor ................................. 30
    C.  Force Majeure ............................................. 31
    D.  No Waiver of Rights ....................................... 33

ARTICLE VIII.  TERMINATION FOR CONVENIENCE OF THE OWNER ............... 33
    A.  Right to Terminate ........................................ 33
    B.  Contractor's Rights upon Termination for Convenience ...... 33
    C.  Conversion of Default to Convenience Termination ......... 34

ARTICLE IX.  MISCELLANEOUS ........................................... 34
    A.  Books and Records ......................................... 34
    B.  Rights of Third Parties ................................... 34
    C.  Interpretation of Agreement ............................... 35
    D.  Owner's Representative .................................... 35
    E.  Compliance with the Development Documents ................. 36
    F.  Additional Documentation .................................. 36
    G.  Independent Contractor .................................... 37
    H.  Lender's Inspection of the Work ........................... 37
    I.  Notices ................................................... 37
    J.  Compliance with Applicable Laws ........................... 37
    K.  Contractor's Personnel .................................... 38
    L.  Contractor's Representations and Warranties ............... 39
    M.  Payment and Performance Bonds ............................. 39
    N.  Lender Approvals .......................................... 43
    O.  Notice of Default ......................................... 43
    P.  Applicable Law and Venue .................................. 43
    Q.  Unenforceable Provisions .................................. 43
    R.  Counterparts .............................................. 44
    S.  Successors and Assigns .................................... 44
    T.  Ownership of Plans and Specifications ..................... 44

Article/Paragraph                                                                                     Page

U.    Assignment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
V.    Remedies Cumulative  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
W.    Subordination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
X.    Waiver of Consequential Damages  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

EXHIBITS:

Exhibit A:      Schedule of the Plans and Specifications
Exhibit A-1:   Stipulations and Qualifications
Exhibit B:      Guaranteed Cost
Exhibit C:      Schedule of Values for Work
Exhibit D:      General Conditions of the Contract for Construction, and Modifications to the General Conditions of the Contract for Construction, and Supplementary Conditions
Exhibit E:      Subcontractor Contract Form
Exhibit F:      Subcontractor's Letter
Exhibit G:      Applicable Provisions of Development Documents
Exhibit H:      Construction Milestones
Schedule I:     Phase Delivery Schedule

# OWNER/CONTRACTOR AGREEMENT

THIS OWNER/CONTRACTOR AGREEMENT ("Agreement"), together with the documents identified in paragraph IX-C of this Agreement and paragraph 1.1.1 of the General Conditions (as defined in paragraph IX-C below), form the Construction Contract (the "Contract") made this 29th day of August, 2001 by and between J.A. JONES/TOMPKINS BUILDERS, INC., a District of Columbia corporation ("Contractor"), and JEFFERSON AT PENN QUARTER, L.P., a Delaware limited partnership (the "Owner").

WHEREAS, Owner desires to have the Contractor construct the project known as the Jefferson at Penn Quarter Project, containing approximately 428 residential units, 39,000 square feet of gross retail space and 28,000 square feet of gross arts space (the "Improvements"), on certain real property situated in Washington, D.C. and identified by the Office of the Surveyor as Lot 42 in Square 457 [formerly referred to as a portion of Lots 34, 40, 808, 810-814, 822-827, 829, 830, 849-851, 864, 865 and 872 in Square 457] (the "Property"), and the Contractor desires to undertake the performance of such work under the terms and conditions hereinafter provided; and

WHEREAS, Owner owns a portion of the Property and has entered into a written agreement with the owners of the remaining portion of the Property, Penn Quarter Retail, L.L.C., Penn Quarter Garage, L.L.C. and Penn Quarter Theater, L.L.C. (collectively, the "Other Property Owners"), authorizing Owner to develop their portions of the Property and to act as "owner" on their behalf in the construction of the Improvements; and

WHEREAS, Owner has employed JPI Apartment Construction, L.P. as its Construction Manager ("Construction Manager") for the advice, assistance, and coordination of the work; and

WHEREAS, the parties hereto desire to set forth their understandings and agreements herein.

NOW, THEREFORE, the Contractor and the Owner, intending legally to be bound, hereby agree as follows:

## ARTICLE I.  RELATIONSHIP OF THE PARTIES

### A.  Project Organization

This Agreement is for the performance of the work described herein in connection with the construction of the Project. The Owner has entered or will enter into a Construction Management Agreement with the Construction Manager, and a design agreement with the Architect/Engineer.

### B.  Owner Is Agent of the Other Property Owners

The Owner will represent itself and the Other Property Owners as their agent in the administration and management of this Agreement and the construction of the Project. Any

instructions, reviews, approvals, orders or directions given to the Contractor by the Owner will be given on behalf of and as agent for Owner and the Other Property Owners. The Contractor shall be obligated to respond and/or perform as if the same were given directly by the Other Property Owners.

C.    **Other Property Owners Not in Privity with Contractor**

This Agreement shall not give the Contractor any claim or right of action against the Other Property Owners. The Contractor and its subcontractors shall not be beneficiaries of any obligations of the Owner to the Other Property Owners. This Agreement shall not create a contractual relationship between any parties except the Owner and the Contractor.

D.    **Construction Manager Is Owner's Agent**

The Construction Manager will represent the Owner as its agent in the administration and management of this Agreement. Any instructions, reviews, approvals, orders or directions given to the Contractor by the Construction Manager will be given on behalf of and as agent for Owner. The Contractor shall be obligated to respond and/or perform as if the same were given directly by the Owner.

E.    **Construction Manager Not in Privity with Contractor**

This Agreement shall not give the Contractor any claim or right of action against the Construction Manager. The Contractor and its subcontractors shall not be beneficiaries of any obligations of the Construction Manager. This Agreement shall not create a contractual relationship between any parties except the Owner and the Contractor.

## ARTICLE II. INTERPRETATION

A.    **Inconsistencies and Omissions**

Should inconsistencies or omissions appear in the Contract Documents, it shall be the duty of the Contractor to so notify the Owner and the Construction Manager in writing within three (3) working days of the Contractor's discovery thereof. Upon receipt of said notice, the Owner or the Construction Manager shall instruct the Contractor as to the measures to be taken and the Contractor shall comply with the instructions. If the Contractor performs Work knowing of such inconsistencies or omissions or knowing it to be contrary to any applicable laws, statutes, ordinances, building codes, rules or regulations without notice to the Owner and the Construction Manager and advance approval by appropriate authorities, including the Owner, then the Contractor shall perform the necessary remedial Work and shall bear all associated costs which would have been avoided if the Contractor had properly given notice.

## ARTICLE III.  THE WORK

### A.     Description of the Work

The Contractor agrees to furnish all of the materials for, and to diligently undertake, manage, and complete the work described hereunder; including without limitation the construction of the Improvements (the "Work"), in strict accordance with the drawings, plans, and specifications therefor, a schedule of which is attached hereto as Exhibit A (the "Plans and Specifications"), which have been prepared by Esocoff & Associates (the "Architect") and with the other Contract Documents (as defined in the General Conditions attached hereto as Exhibit D).  To the extent that this Contract and any attachments hereto are inconsistent with any materials contained in any previously issued "Project Manual," "bidding book," or other predecessor materials, the terms of this Contract shall govern.  Two (2) complete sets of the Plans and Specifications have been initialed by the parties for purposes of identification.  The Work shall include (without limitation thereof):

(1)     General supervision of the Work, including any work subcontracted by the Contractor or any subcontractor.

(2)     Furnishing, directly or through subcontractors, of all labor, materials, equipment, and tools, and procurement and expediting services in connection with the Work.

(3)     Checking of plans, details, specifications, estimates, bills, and shop drawings, and coordinating and using best efforts to obtain all necessary approvals of the same.

(4)     Making of subcontracts and the scheduling and coordination of the Work thereunder.

(5)     Preparation of monthly schedules, cost budgets, requisitions, reports and other necessary documents.

(6)     Cooperation with the Architect and the Construction Manager in obtaining and/or maintaining the main building permit and all required building permits.

(7)     Obtaining a Certificate of Completion for Core of Building from the District of Columbia.

(8)     Obtaining all other necessary licenses and permits, including but not limited to all certificates of occupancy.

(9)     Keeping and maintaining complete and accurate books, accounts, and records relating to the Work, including but not limited to payroll, accounts payable, disbursements, and costs.

(10)     Providing the Owner and/or the Construction Manager with any and all other information requested.

**B.    Work**

The term "Work" shall mean all of the obligations imposed upon Contractor by this Agreement and all other provisions of the Contract Documents in order to obtain Final Completion of the construction of the Improvements as shown on or described in the Plans and Specifications and the other Contract Documents. Contractor shall provide and furnish all materials, supplies, apparatus, appliances, tools, equipment, fixtures, implements and other facilities; and all labor, supervision, transportation, storage, and all other services, professional and non-professional; and shall perform all other acts and supply all other things (including, but not limited to, all light, power, water, utilities, and sanitary facilities for Subcontractors and workmen during the progress of the Work) necessary to produce the construction and completion of the Improvements and other improvements and related facilities described in the Contract Documents, including all work expressly specified therein and such additional work as may reasonably be inferred therefrom, saving and excepting only such items of work as are specifically stated in the Contract Documents not to be the obligation of the Contractor. The Work may be amended to include any changes in the Work necessary to complete the Work as may be required (a) to satisfy all applicable requirements of governmental authorities having or claiming jurisdiction over the Work which are consistent with the Contract Documents; and (b) to the extent necessary to satisfy the construction requirements of the Lender which are not inconsistent with the Contract Documents. No adjustment shall be made to the Guaranteed Cost (hereinafter defined) for changes in the Work required pursuant to clause (a) or to clause (b) above except as otherwise expressly set forth in this Agreement. The Work shall be completed in certain phases (the "Phases") described in Schedule I attached hereto, on or before the deadlines set forth in Schedule I.

**C.    Commencement of the Work**

(1)    The Work shall be commenced on the "Construction Commencement Date," which date shall be designated in a written Notice to Proceed given by the Owner to the Contractor. The Contractor shall be obligated to commence the Work on the Construction Commencement Date even if the Owner does not have a full building permit for all of the Work, so long as a partial permit has been issued for those portions of the Work to commence on the Construction Commencement Date, It shall be the responsibility of the Owner to furnish the Contractor with the main building permit for the Work. All other permits shall be the responsibility of the Contractor pursuant to paragraph III-A(8) above.

(2)    If the Construction Commencement Date is later than November 2, 2001, the Guaranteed Cost (as defined in paragraph IV-E below), shall be subject to adjustment (increase or decrease, as applicable), but only if and to the extent that the Cost of the Work (see paragraph IV-B below) has increased or deceased as a result of such delay. The extent of the adjustment shall be approved as a Change Order pursuant to paragraph VI-D(2) below.

(3)    Following commencement of the Work, Contractor shall diligently pursue completion of such Work, and shall give Owner ninety (90) days' prior written notice of its estimate of the actual date of Substantial Completion of the Work (as defined in paragraph III-D below) for each Phase.

**D.    Completion of the Work**

(1)    The date of "Substantial Completion of the Work" (as that term is defined herein) for each Phase shall occur on or before the substantial completion deadline for such Phase as set forth in Schedule I attached hereto.

(a)    "Substantial Completion of the Work" shall mean that all of the following have occurred: (i) the Improvements (or the improvements for a particular Phase, as applicable) have reached that state of completion necessary for the Owner to fully occupy or utilize the Improvements for the uses for which they were intended, as certified to by the Architect to the best of its knowledge, information and belief, and on the basis of its observations and inspections, in accordance with the Contract Documents, (ii) all normal means of ingress and egress are clear of obstruction, (iii) all mechanical and electrical systems for the Work (or the particular Phase of the Work, as applicable) are, with the exception of minor punch-list items, completed and properly operating, (iv) any and all inspections, approvals and/or the like relating to the Work (or the particular Phase of the Work, as applicable) and required by any governmental or quasi-governmental authority for the particular Phase of the Work or the Work as a whole, as applicable, have been obtained and have become final and unconditional and all certificates, licenses, etc. applicable to the particular Phase of the Work, or the Work as a whole, have been issued, including a Certificate of Completion for Core of Building, (v) releases of mechanics liens have been received by the Owner from the Contractor, as well as all subcontractors, suppliers and materialmen with respect to all Work (or the particular Phase of the Work, as applicable),  except for retainages and sums related to punchlist activities, (vi) Lender and its designated architects, if any, have given or have had a commercially reasonable opportunity to verify that the Work has been completed and to issue its written approval of substantial completion or its equivalent as that term is defined in the relevant loan documents, and (vii) the items remaining to be completed for the final completion of the Improvements have been reduced to writing and approved by Owner, Contractor, Architect and Lender.  The date of Substantial Completion of the Work as to each Phase shall be confirmed by a written affidavit executed by the Architect and the Owner.  Certification of the date of Substantial Completion of the Work as to each Phase by the Architect and the Owner shall not relieve the Contractor of its obligation to complete any Work remaining to be done, or to correct any defective Work, or to complete any "punch-list" or other corrective work.  The Owner shall fix a reasonable time within which the Contractor shall complete or correct all punch list items.  The Owner shall have the right to update and add to such punch list during the ninety (90) day period following such Substantial Completion.

(b)    The "Completion Date" shall mean the date which is nine hundred (900) days after the Construction Commencement Date.

(c)    In the event that the Owner shall fail to timely provide the final building permit or other partial building permits for the Work (as to each Phase thereof) as provided in Paragraph III-C above, the substantial completion deadline for such affected Phase, as set forth in Schedule I attached hereto, and the Completion Date will be extended by that number of days of delay which was caused by the failure of the Owner to obtain the required permits.  The extent of the delay shall be approved as a Change Order pursuant to Article VI below.

(d)    Except where otherwise noted herein, the term "days" shall mean calendar days.

(2)    In the event of a delay for which Contractor is not entitled to an extension of time pursuant to this Agreement, Owner may direct that the Work be accelerated by means of overtime, additional crews, or additional shifts or re-sequencing of the Work. The Owner shall provide written notice to the Contractor to accelerate the Work. The Contractor shall commence to cure the problem within 5 days after receipt of notification from Owner. The costs associated with this corrective action shall be reimbursable, but, shall not increase the Guaranteed Cost. If the Contractor fails to substantially correct the delay within 30 days, all corrective costs will be at no cost to the Owner. Under the terms of this paragraph the Contractor is entitled to only one notification of a continuing problem of this nature by the Owner for the Improvements. Should any additional events give the Owner cause to give Contractor notice to accelerate the Work pursuant to this paragraph III-D(2), all such acceleration shall be at no cost to the Owner. Failure by Owner to direct that the Work be accelerated shall not be cause for Contractor to exceed the construction schedule or otherwise prejudice any other remedies to which Owner may be entitled.

(3)    In the event of a delay for which Contractor is entitled to an extension of time, Owner may similarly direct acceleration and Contractor agrees to perform same on the basis of reimbursement of additional substantiated cost (i.e. premium portion of overtime pay, additional crew, shift or equipment cost, additional Project General Conditions Costs, and such other items of cost requested in advance by Contractor and approved by Owner, which approval will not be unreasonably withheld) plus a fee in the amount provided for in an approved Change Order for the Work as provided for under Article VI hereof, but Contractor expressly waives any other compensation therefor, unless otherwise agreed in writing in advance of performing the accelerated Work. In the event of any acceleration requested pursuant to this paragraph, Contractor shall provide promptly a plan including its recommendations for the most effective and economical acceleration.

(4)    Owner shall also have the right to direct that the Work be accelerated by means of overtime, additional crews or additional shifts or re-sequencing of the Work notwithstanding that the Work is progressing without delay in accordance with the established schedule for the Work agreed upon by Contractor and Owner (the "Schedule"). Contractor agrees to perform same on the basis of reimbursement of substantiated cost (i.e. premium portion of overtime pay, additional crew, shift or equipment cost, additional Project General Conditions Costs, and such other items of cost requested in advance by Contractor and approved by Owner), plus a fee in the amount provided for in an approved Change Order for the Work as provided for under Article VI hereof, but expressly waives any other compensation therefor unless otherwise agreed in writing in advance of performing the accelerated Work. Contractor shall again provide promptly a plan including his recommendations for the most effective and economical acceleration.

**E.     Deferred Authorization of Work**

Except for the correction of defective Work, the Contractor shall not be obligated to perform any Work hereunder which is not requested or authorized by Owner within three hundred sixty-five (365) days after the Substantial Completion of the Work.

**F.     Time is of the Essence and Liquidated Damages for Delay**

(1)     The Contractor acknowledges and agrees that time is particularly of the essence regarding its timely completion of the Work because achievement of Substantial Completion of the Work for each Phase and for the entire Project by the applicable date therefor as provided herein is of paramount importance to enable the Owner to occupy, and rent units of the Project as planned and scheduled. As such, the Contractor acknowledges and agrees that the Owner will incur significant damages if completion of the Work is not timely achieved.

(a)     The Owner and Contractor acknowledge and agree that if Substantial Completion of the Work for a particular Phase, or as to all of the Work for the Project, as applicable, is not timely achieved as set forth on Exhibit H and Schedule I attached hereto, the Owner's actual delay damages will be difficult, impractical or impossible to determine. Accordingly, after negotiation, the Owner and Contractor agree that if Substantial Completion of a particular Phase, or as to all of the Work is not achieved by the date of Substantial Completion therefor as set forth on Exhibit H and Schedule I attached hereto, the Contractor shall pay to the Owner as liquidated damages the total of the following sums:

(i)     For the first sixty (60) calendar days of delay (the first day through the sixtieth day): the sum of Three Thousand Dollars ($3,000.00) per day;

(ii)     Thereafter (commencing on the sixty-first day) until achievement of Substantial Completion: the sum of Forty-Four Thousand Dollars ($44,000.00) per day; and

(iii)     Any amounts Contractor must pay pursuant to Exhibit H attached hereto for failure to meet the construction milestones set forth in Exhibit H attached hereto, up to a maximum amount of Eight Hundred Fifty Thousand Dollars ($850,000.00).

(b)     The Owner and Contractor agree that the payment of liquidated damages pursuant to this paragraph shall be in lieu of actual delay damages caused by the delay in achieving Substantial Completion, that such payment is not intended as a penalty or forfeiture, and that the amounts of such liquidated damages to be so paid are reasonable in comparison to the approximate scope

of actual delay damages that the parties anticipate as of the time of execution of this Agreement.

(c)    The maximum amount of liquidated damages Contractor shall be liable to Owner for under this Contract for delay in meeting construction milestone dates, including dates of Substantial Completion, is the sum of One Million Two Hundred Thousand Dollars ($1,200,000.00), it being expressly understood and agreed, however, that the aforesaid limitation of liability shall only apply to the Contractor's delay in meeting the aforesaid obligations and shall not apply in the case that Contractor wrongfully terminates the Contract or abandons the Work.

(d)    Payment(s) under this paragraph III-F(1) shall be made to Owner within thirty (30) days following written demand therefor.

(2)    [INTENTIONALLY OMITTED]

G.    **Subcontracts**

(1)    All portions of the Work that Contractor has not been accustomed to performing shall be performed under subcontracts unless otherwise directed by Owner. Contractor shall request bids from Subcontractors. All Subcontractors shall be subject to the approval of Owner and Lender, if applicable.

(2)    All Subcontractors shall conform to all of the requirements of the General Conditions as modified by the Supplementary Conditions, specifically including Paragraphs 5.3 and 13.8. thereof, and to the Contractor's standard subcontract form (as may be reasonably modified), a copy of such standard form being attached hereto as Exhibit E. All subcontracts shall specifically provide that any and all guarantees or warranties of or from the Subcontractor for the benefit of Contractor shall also be made to, and be for the benefit of, Owner. Subcontracts awarded on the

basis of the cost of such work plus a fee shall be subject to the provisions of this Agreement insofar as applicable or possible.

(3)     Contractor shall require each Subcontractor with a subcontract for over $100,000 to furnish bonds covering the faithful performance of each subcontract and the payment of all obligations arising thereunder, unless Owner agrees otherwise in writing. Contractor shall require that any or all such Subcontractor bonds or subcontractor default insurance shall name Owner, Lender, and Owner's title insurance underwriter as additional obligees. Premium costs shall be paid by Contractor and shall be reimbursed pursuant to Article IV hereof. Each such Subcontractor bond shall be on a form acceptable to Owner.  Contractor hereby assigns to Owner (and its assigns) all its interest in any subcontracts and purchase orders now existing or hereinafter entered into by Contractor for performance of any part of the Work which assignment will be effective upon acceptance by Owner in writing and Owner's termination of this Contract and only as to those subcontracts and purchase orders which Owner designates in said writing. It is agreed and understood that Owner may accept said assignment at any time during the course of construction prior to Final Completion. It is further agreed that all subcontracts and purchase orders shall provide that they are freely assignable by Contractor to Owner and assigns. It is further agreed and understood that such assignment is part of the consideration to Owner for entering into this Agreement with Contractor and may not be withdrawn prior to Final Completion. Unless and until each such contractual assignment becomes effective, Owner, upon demand of Contractor, will execute or will cause others to execute any and all consents, reassignments, endorsements or other instruments which may be necessary to permit Contractor, acting alone and without the joinder of Owner and other additional obligees, to enforce all rights of the obligees under said Subcontractor bonds and to collect any and all amounts payable to the obligees thereunder.

(4)     Contractor shall require each Subcontractor and supplier to execute and deliver to Owner, contemporaneously with the execution of this Agreement or with the execution of such Subcontractor's or supplier's contract with Contractor, a "Subcontractor's Letter" substantially in the form of Exhibit F attached hereto and made a part hereof. Each subcontract and each agreement for the supply of material shall provide that in the event of the termination of this Agreement, as long as Owner or any Lender agrees to perform, or engages a new general contractor to act, as general contractor thereunder and agrees to pay such Subcontractor or supplier as provided in such Subcontractor's Letter, the other parties to such subcontract or agreement shall, upon request of Owner or any Lender, perform thereunder for the benefit of Owner, such Lender, or such new general contractor in accordance with the terms and conditions thereof. Contractor agrees that any request for payment hereunder made by Contractor shall constitute a representation and warranty by the officer executing this Agreement or such request that every such subcontract or agreement, except as otherwise expressly agreed by Owner, complies with the provisions of this paragraph III-G(4).

**H.    Hazardous Materials and Environmental Matters**

(1)    The obligations of Contractor under this Agreement include, without limitation, the obligation to comply with the requirements of all federal, state and local laws, rules, regulations, and orders which govern or regulate the presence, use, storage, generation, release, discharge, or transportation of Hazardous Materials ("Environmental Laws"). As used in this Agreement "Hazardous Material" means any hazardous or toxic materials, wastes, chemicals, or substances, including, but not limited to, those materials, wastes, and substances listed in the United States Department of Transportation Hazardous Materials Table (49 CFR 172.101) and those materials, wastes, and substances listed by the Environmental Protection Agency as hazardous substances (40 CFR Part 302), and such materials, wastes, chemicals, and substances which are, as of any relevant point in time, regulated under any applicable local, state, or federal law, ordinance, code, rule, decree, or other requirement of any governmental or quasi-governmental authority, including, without limitation, any material, waste, chemical and substance which is (i) petroleum, (ii) asbestos, (iii) polychlorinated biphenyls, (iv) defined as a "hazardous waste," "extremely hazardous waste" or "restricted hazardous waste" under any such local, state, or federal law, rule, ordinance, code, or decree, (v) designated as a "hazardous substance" pursuant to §311 of the Clean Water Act, 33 U.S.C. §1251, et seq. (33 U.S.C. §1321) or listed pursuant to §307 of the Clean Water Act (33 U.S.C. §1317), (vi) defined as "hazardous waste" pursuant to §1004 of the Resource Conservation and Recovery Act, 42 U.S.C. §6901, et seq. (42 U.S.C. §6903) or (vii) defined as a "hazardous substance" pursuant to §101 of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601, et seq. (42 U.S.C. §9601).

(2)    Contractor hereby acknowledges that a portion of the Work as defined by the Plans and Specifications includes some partial demolition and abatement of Hazardous Materials as referenced in Qualifications Division II, Items 6-9, attached hereto as Exhibit A-1. Owner has delivered to Contractor a copy of the Geotechnical Report (as defined in paragraph IX-L(5) below) for the Property and will deliver to Contractor a copy of all other reports it receives concerning the environmental condition of the Property that relate to or would affect the Work. Contractor shall immediately upon discovery inform Owner of the existence of any Hazardous Materials on the Property that are not disclosed in the Geotechnical Report and except to the extent set forth in Exhibits A and A-1, Contractor shall not be responsible for remediation of such Hazardous Materials. Contractor covenants and agrees that in connection with the performance of its duties hereunder, Contractor will comply with all Environmental Laws.

(3)    Contractor agrees to indemnify and hold Owner and Construction Manager, their constituent partners, partners' affiliates, directors, officers, employees and agents harmless from and against any and all liability, loss, cost, damage, claim and expense of whatever kind or nature (including, without limitation, attorney's fees) arising directly or indirectly from, in connection with or as a result of any negligence or willful acts of, or breach of the Contract by, Contractor or its employees, agents, Subcontractors or materialmen or any breach by Contractor of its representations with respect to, and/or duties and obligations with respect to, Hazardous Materials and compliance with all Environmental Laws.

I.     **Submittals and Correction of Work**

(1)     Contractor promptly shall submit to the Construction Manager for review and/or approval by the Architect, all shop drawings, samples, product data, manufacturers' literature and similar submittals required by the Contract Documents. The Contractor shall be responsible to the Owner for the accuracy and conformity of its submittals to the Contract Documents. The Contractor shall prepare and deliver its submittals to the Construction Manager in a manner consistent with the Project Schedule and in such time and sequence so as not to delay the performance of the Work or other work associated with the Project. The review and/or approval of any Contractor submittal shall not be deemed to authorize deviations, substitutions, or changes in the requirements of the Contract Documents unless express written approval is obtained from the Construction Manager, for the Owner, specifically authorizing such deviation, substitution or change. In the event that the Contract Documents do not contain complete submittal requirements pertaining to the Work, the Contractor agrees upon request to submit in a timely fashion to the Construction Manager for review and/or approval by the Architect, any shop drawings, samples, product data, manufacturers' literature or similar submittals as may reasonably be required by the Construction Manager, Owner or Architect.

(2)     The Construction Manager, Owner and Architect are entitled to rely on the accuracy and completeness of any professional certifications required by the Contract Documents concerning the performance criteria of systems, equipment or materials, including all calculations relating thereto and any governing performance requirements.

(3)     The Contractor shall:

(a)     cooperate with the Construction Manager and all others whose work or services may require coordination with the Work;

(b)     specifically note and immediately advise the Construction Manager of any interference with the Work; and

(c)     participate in the preparation of shop drawings and work schedules involving the Work.

(4)     Unless otherwise provided in the Contract Documents, the Contractor shall communicate with the Owner, Architect, separate contractors and suppliers of Owner, regardless of tier, through the Construction Manager.

(5)     If required in writing by the Construction Manager or the Owner, Contractor must uncover any portion of the Work which has been covered by Contractor in violation of the Contract Documents or contrary to a directive issued to the Contractor. Upon receipt of a written directive, the Contractor shall uncover such Work for inspection and then restore the uncovered work to its original condition at the Contractor's time and expense.

(6)     The Contractor is required to correct in a timely fashion any Work rejected by the Construction Manager or Owner which fails to comply with the Contract Documents whether observed prior to the commencement of the warranty period(s) or during the warranty period(s) established under this Agreement. The Contractor shall correct at its own cost and time and bear the expense of additional services for any nonconforming Work for which it is responsible.

## ARTICLE IV.  CONTRACT SUM

### A.     Amounts Payable to the Contractor

The Owner shall pay the Contractor, for the performance of the Work, the Contract Sum, consisting of the "Cost of the Work" as specified in paragraph IV-B (less Credits to the Owner specified in paragraph IV-C), and the "Fixed Fee" as specified in paragraph IV-D; provided, that in no event shall the Contract Sum exceed the "Guaranteed Cost" as specified in paragraph IV-E unless otherwise specifically provided herein.

### B.     Cost of the Work

The Owner shall pay to the Contractor the Cost of the Work hereunder, which shall include only the following items:

(1)     Wages and salaries (exclusive of bonuses) paid by the Contractor to the following personnel for the time they are engaged on the Work hereunder:  (i) craft personnel and other field labor of every kind; and (ii) the Contractor's employees, such as project manager, job superintendents, supervisors, job accountants, job checkers, field expediters, estimators, engineers, timekeepers, foremen, and watchmen, for the time they are engaged in the Work hereunder.  The wages and salaries to be paid, and the number and types of positions to be covered under subsection (ii) of this paragraph IV-B(1) shall be subject to the approval of the Owner. In addition, the Owner shall have the absolute right to approve all employees and personnel of the Contractor and any subcontractor performing any portion of the Work hereunder, and to require the Contractor to remove any employees and personnel of the Contractor or of any subcontractor from the Property or from performing any portion of the Work hereunder.

(2)     Disbursements necessarily made and obligations necessarily incurred for or in connection with the furnishing, delivery and/or installation of all materials, structural accessories, machinery, equipment (exclusive of hand tools), supplies, and other items required to be furnished or done under this Contract and purchased solely for the Work hereunder, to the extent that such costs do not exceed fair market rates or as otherwise agreed to in writing between Owner and Contractor.  No items of construction equipment used by the Contractor which cost more than Twenty-Five Thousand Dollars ($25,000.00), shall be purchased or leased without the prior written approval of the Owner.

(3)     All necessary loading, unloading, demurrage, express, freight and cartage charges to and from the Work, including those on construction equipment and tools.

(4)    The cost of assembling, erecting, moving and dismantling construction equipment.

(5)    The cost of fuel used during construction at the Property in direct connection with the Work.

(6)    The cost of progress photographs and negatives, and all reasonable minor field office expenses related to the Work, including blue-printing, load and material tests, telephone, telegraph, temporary toilets and sanitary control facilities, and other expenses incidental in carrying on the Work.

(7)    Disbursements necessarily made for all materials, equipment and supplies purchased solely for the Work hereunder, including without limitation, expendable supplies which do not become a part of the permanent and temporary structures constructed hereunder. Materials, equipment, and supplies furnished from the inventory of Contractor or any of its affiliates shall be charged to the Work at the lesser of (i) the Contractor's or the affiliate's actual purchase cost, or (ii) a fair market price, as determined by the Owner.

(8)    All utilities required during the course of construction, including winter and frost protection, prior to Substantial Completion of the Work. Following Substantial Completion of the Work the Owner shall assume direct responsibility for the payment of utility costs.

(9)    Rental of tools, machinery, and construction equipment owned by the Contractor to the extent such costs were included in the bids; costs of tools and construction equipment purchased with the approval of the Owner; and the cost of repairs to, and maintenance of, such tools and equipment. If tools, machinery or construction equipment are rented from the Contractor or from any affiliate of the Contractor, the amount of such rental shall be at market rates as approved by the Owner; provided, however, that the aggregate rental charged to the Project for each such item shall not exceed in any case the purchase cost of such item to the Contractor or its affiliate, as applicable.

(10)    Cost of providing, maintaining, and removing temporary structures required for the prosecution of the Work, including job offices, tool and material houses, scaffolding and temporary supports, and cost of providing and operating a first aid station to the extent such cost is not covered by the insurance required to be maintained hereunder.

(11)    Premiums on bonds and insurance required and approved by the Owner, and fees for permits and licenses (other than the main building permit for the Work, which the Owner agrees to furnish).

(12)    Federal, state, municipal and any and all further taxes now in effect or which shall become effective during the term of this Contract, if any, all with respect to services performed or materials furnished for the Work and for which Contractor is liable, excluding, however, Federal, state and local income and franchise taxes, or other taxes in substitution therefor.

(13)   Any expense incurred by the Contractor for protection of adjoining property and repairs and damages thereto, except for any expenses covered or reimbursed by insurance or any expenses resulting from the negligence or fault of the Contractor or any subcontractor, their agents or employees.

(14)   All amounts paid by the Contractor on account of this Contract for or with respect to (i) Unemployment Insurance, Social Security Taxes, Workers Compensation insurance and contributions and assessments required by law or labor union agreements, or (ii) individual insurance benefits, retirement, vacation, and other fringe benefits (in accordance with Contractor's standard policy) for salaried employees of the Contractor whose salaries are reimbursable pursuant to paragraph IV-B (1)(ii) above.

(15)   All amounts required to be paid to subcontractors on account of subcontracts made in accordance with the provisions of the Contract Documents and the Work performed thereunder, less all offsets and countercharges collected from subcontractors.

(16)   Reasonable transportation, traveling and out-of-town hotel expenses of Contractor or employees whose salaries are reimbursable pursuant to paragraph IV-B(1)(ii) above incurred in the discharge of duties connected with the Work. Out of town travel shall be subject to the prior written approval of the Owner.

(17)   Permit fees, royalties, damages for infringement of patents, and costs of defending suits therefor to the extent the Owner approved such fees and expenses in writing; provided that such expenses shall not be reimbursable if Contractor had knowledge of such infringement and other methods or equipment were available to accomplish the Work without incurring such fees, royalties or damages. To the extent Contractor has knowledge of a royalty or patent, such costs shall be subject to prior approval by the Owner.

(18)   Losses and expenses not compensated by insurance or otherwise, sustained by the Contractor in connection with the Work, provided they have resulted from causes other than the fault or negligence or misconduct of the Contractor or any subcontractor, or their agents or employees. Such losses shall include settlements made with the written consent and approval of the Owner. No such losses and expenses shall be included in the Cost of the Work for the purpose of determining the Fixed Fee.

(19)   Cost of removal of all debris.

(20)   Costs incurred due to an emergency (not caused by the Contractor's negligence or misconduct) affecting the safety of persons and property.

(21)   Quality assurance testing, as required by this Contract.

(22)   Temporary roads.

(23)   Site security (including site fencing).

(24)    Surveys.

(25)    Drawing and specification reproduction cost.

(26)    Such other expenses incurred in the performance of the Work as may be approved in writing by the Owner.

Such costs shall be at rates not higher than the standard paid in the locality of the Property without the prior written consent of Owner. Those portions of the "Cost of the Work" that are included in the following subsections of this Section IV(B) are sometimes herein referred to collectively as the "Project General Conditions Costs:" (B)(1)(ii) [but no other clauses of (B)(1)]; B(5) [but only to the extent utilized by the persons covered in clause (B)(1)(ii); B(6); B(8); B(10); B(11); B(12); B(13); B(14); B(16); B(17); B(18); B(19); B(21); B(22); B(23); B(24); and B(25)].

The term Cost of Work shall in no event include any of the items set forth in paragraph IV-D below or any costs due to the negligence or willful misconduct of Contractor, any Subcontractor, anyone directly or indirectly employed by any of them, or for whose acts any of them may be liable, including but not limited to, costs of disposal of materials and equipment wrongly supplied, or making good any damage to property, or excess costs of material or labor or otherwise, which shall be borne by Contractor, and the Owner may withhold money otherwise due Contractor to cover any such cost already paid as part of the Cost of the Work.

C.    Credits to the Owner

The Cost of the Work shall be credited with the following items (collectively, the "Credits"):

(1)    Proceeds of the sale of all tools, surplus materials, construction equipment and temporary structures which have been charged to the Work other than by way of rental, and which remain after completion, whether such sale is made to the Owner, the Contractor, or to some other party; and any such sale, if made to others than the Owner, shall be at fair market prices. Upon completion of the Work, or when no longer required, all tools, construction equipment, and materials purchased for the Work shall be sold by Contractor. The Contractor agrees to use its best efforts to obtain the highest prices in respect of such sales.

(2)    Discounts earned by the Contractor through advance or prompt payments. The Contractor shall obtain all possible trade and time discounts on bills for materials furnished by the Contractor, and shall pay said bills within the highest discount periods provided Owner has paid Contractor therefor. The Contractor shall purchase in such quantities as will provide the most advantageous prices to the Owner without delaying the progress or completion of the Work provided Owner pays for such quantities in time to allow Contractor to obtain such discounts.

(3)    The fair market value (as approved by the Owner at the time of removal) of all materials, tools, and equipment purchased for use on the Work and retained by the Contractor upon completion of the Work.

(4)    The refunded amount of all deposits made by the Contractor to obtain permits or made in connection with the Work to the extent such deposits were costs paid pursuant to paragraph IV-A above.

(5)    The amount for all materials and products donated to the Owner on behalf of suppliers, to the extent that the cost of such items has previously been included in the amount of any Application for Payment.

(6)    Rebates, discounts, or commissions allowed to or collected by the Contractor from suppliers of materials or from subcontractors, together with all other refunds, returns, or credits received in connection with the return of materials, insurance, taxes, or otherwise.

**D.    Fixed Fee**

As part of the costs to be reimbursed pursuant to paragraph IV-A above, the Owner shall pay the Contractor a fixed fee of Two Million Four Hundred Eighty One Thousand and No/100 Dollars ($2,481,000.00) (the "Fixed Fee") to cover the Contractor's profit, general overhead and any and all expenses in connection with maintaining and operating the main and any branch offices of the Contractor, including but not limited to the following (except as otherwise provided herein):

(1)    Salaries of officers of the Contractor, except for an officer of the Contractor whose salary is included as a reimbursable cost pursuant to paragraph IV-B(1).

(2)    Salaries of persons employed in the main or branch offices of the Contractor whose time is devoted to the general conduct of the Contractor's business, such as office managers, receptionists, stenographers, plan clerks, file clerks and draftsmen.

(3)    Overhead or general expenses of any kind except any expressly included in paragraph IV-B.

(4)    Services and expenses of the estimating, purchasing, and accounting personnel, and other departments in the Contractor's office, except as subject to reimbursement pursuant to paragraph IV-B.

(5)    Interest on the Contractor's capital or on money borrowed by the Contractor, including the capital employed by the Contractor in the performance of the Work.

(6)    Amounts required to be paid by the Contractor for Federal, state and local income and franchise taxes, or other taxes in substitution thereof.

The Fixed Fee shall be subject to adjustment only as set forth in Articles VI and VIII.

### E.    Guaranteed Cost

(1)    The Contractor guarantees that the cost of performing the Work hereunder, including the Cost of the Work pursuant to paragraph IV-B and Credits under paragraph IV-C, and the Fixed Fee, will not exceed Seventy-Six Million and No/100 Dollars ($76,000,000.00) (the "Guaranteed Cost"). No increase shall be made to the Guaranteed Cost for any cause whatsoever, whether foreseen or unforeseen, except pursuant to a Change Order as provided in Article VI below. Attached hereto as Exhibit B is an itemized computation of the Guaranteed Cost.

(2)    Upon the date of Final Completion of the Work, Contractor shall deliver to Owner an accounting of the Cost of the Work. In the event that the actual Cost of the Work (less the Credits under Paragraph IV-C above) plus the Fixed Fee shall exceed the Guaranteed Cost, the Contractor shall pay such excess. In the event the actual Cost of the Work hereunder (less the Credits under Paragraph IV-C above) plus the Fixed Fee shall be less than the Guaranteed Cost, the Owner shall be entitled to Fifty percent (50%) of the difference between the Guaranteed Cost and the actual Cost of the Work (less the Credits under Paragraph IV-C above) plus the Fixed Fee. The remaining Fifty percent (50%) of the difference shall accrue to Contractor.

(3)    The Guaranteed Cost shall include, without limitation, the cost of all direct and supervisory work to correct any defects in materials or workmanship or incomplete Work after Substantial Completion of the Work.

## ARTICLE V. PAYMENT

### A.    Applications for Payment

(1)    Following the commencement of the Work and as the Work progresses and on or before the first (1st) day of each month, the Contractor shall submit to the Owner, the Construction Manager and the Architect an Application for Payment, in a form that is satisfactory to Owner and that satisfies Lender's (as defined in paragraph IX-F below), if any, commercially reasonable requirements, containing a detailed itemization of the actual Cost of the Work incurred hereunder through the last day of the previous month; provided that no cost shall be included in such Application for Payment which has been included in any prior Application for Payment and which has been previously paid. Such Application for Payment shall conform to AIA Document G 702 and AIA Document G 703, subject to additional requirements of Owner and Lender (provided that Lender's requirements are commercially reasonable).

(2)    An Application for Payment may include costs for materials stored at the Property and away from the Property, provided that the Owner (and its ~~Lender~~) has agreed to advance loan or equity proceeds for such materials prior to their incorporation into the Improvements. Payments for materials or equipment stored on or away from the Property shall be conditioned upon submission by the Contractor of bills of sale or such other evidence satisfactory to the Owner and its Lender to establish the Owner's title to such materials or equipment, or to otherwise protect the Owner's interest (which evidence shall include, but is not limited to, proof of applicable insurance coverage with the Owner and its Lender listed as additional insureds, proof of

DAL:369636.11
17656.92939                                              -17-

appropriate final arrangements for the transportation to the Property of those materials and equipment stored away from the Property, approval of the location of the storage site, separation and identification of the materials applicable to the Improvements, and approval of satisfactory arrangements for the adequate protection of the stored materials). No materials or equipment may be stored off the Property without the prior written consent of Owner.

(3)    An Application for Payment shall be for a sum equal to (i) the lesser of (a) the Cost of Work incurred during the preceding month or (b) a prorata portion of the Guaranteed Cost based on the percentage of completion of the Work as of the end of the month for which Application for Payment is submitted, less any payments previously received by Contractor, plus (ii) the pro rata portion of the Fixed Fee, the amount of which shall be determined by multiplying the Fixed Fee by a fraction, the numerator of which shall be the actual cost of the Work (excluding the Fixed Fee) to be paid in such application plus any retainage thereon, and the denominator of which shall be the Guaranteed Cost minus the Fixed Fee.

(4)    An Application for Payment shall be notarized, if required, shall be supported by information substantiating the Contractor's right to payment as the Owner, the Architect and/or the Lender (provided that Lender's requirements are commercially reasonable) may require, and shall reflect the appropriate retainages required for the Work pursuant to paragraphs V-C and D below. A separate itemization of the Work performed and the amounts then due and payable to the Contractor's subcontractors and materialmen must be provided with each Application for Payment. Each Application for Payment shall be based upon the amount of Work completed, not to exceed the Schedule of Values for the Work, attached hereto as Exhibit C, and shall be in a form and content satisfactory to the Owner and the Lender (provided that Lender's requirements are commercially reasonable).

(5)    In no event shall payment be due to the Contractor under any Application for Payment unless and until Contractor shall have delivered to the Owner and the Lender (as required) duly notarized releases of liens, in a form satisfactory to Owner and such Lender, from the Contractor, all subcontractors, all sub-subcontractors, and all materialmen, attesting that all such parties have been paid in full (less only retainages specified in this Agreement or approved by the Owner and the Lender (as applicable)) for all Work done through the period covered by the preceding Application for Payment

(6)    The Contractor warrants that title to all Work, materials and equipment covered by an Application for Payment will pass to the Owner either by incorporation in the construction or upon the receipt of payment by the Contractor, whichever occurs first, free and clear of all liens, claims, security interests or encumbrances (collectively referred to as "liens"); and that no Work, materials or equipment covered by an Application for Payment will have been acquired by the Contractor, or by any other person performing Work at the Property or furnishing materials and equipment for the Improvements, subject to an agreement under which an interest therein or an encumbrance thereon is retained by the seller or otherwise imposed by the Contractor or any other person.

(7)     An Application for Payment shall include all certificates or other documents reasonably required by Lender.

(8)     Notwithstanding any provisions to the contrary contained in the Contract Documents, Owner shall never be obligated to pay to Contractor an amount which would result in the amount yet to be paid by Owner (including all retainage) being more than the total cost to be paid by Owner for completion for the Work.  The "amount yet to be paid by Owner (including all retainage)" shall be computed by subtracting from the Guaranteed Cost all amounts paid on all prior statements plus the amount claimed on the current Application for Payment, and the total cost to Owner for completing construction shall, at the sole discretion of either Owner or Lender, be calculated on the basis of the Agreement to the extent such costs are covered by the Agreement, and to the extent that such costs are not covered by the Agreement, then on the basis of Owner's estimates of such costs; subject, however, to commercially reasonable approval by Lender. Additionally, notwithstanding anything contained to the contrary in the Contract Documents, the total amount that Contractor is entitled to receive on any Application for Payment shall be limited to the amount which when added to all previous payments to Contractor and retainage equals the percentage of completion of the Work (computed on a cost basis) times the Guaranteed Cost.

(9)     Notwithstanding anything contained in this Agreement to the contrary, Contractor shall not be entitled to any payment otherwise payable under this Agreement until Contractor's Application for Payment, accompanying backup, waivers and releases, and all other documentation are approved by the Architect and/or Owner (and Lender, if applicable) as meeting the requirements of this Agreement.

**B.     Architect's Certificates for Payment**

(1)     The Architect will, within five (5) business days after the receipt of the Contractor's Application for Payment, either execute the certificate on the Contractor's Application for Payment (the "Certificate for Payment") and deliver the Certificate for Payment to Owner or notify the Owner in writing of his reasons for withholding a Certificate as provided in paragraph V-B(3) below.

(2)     The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on his observations at the Property and the date comprising the Application for Payment, that (i) the Work has progressed to the point indicated; (ii) to the best of his knowledge, information and belief, the quality of the Work is in accordance with the Plans and Specifications and this Contract, subject to any specific qualifications stated in the Certificate for Payment; and (iii) that the Contractor is entitled to payment in the amount certified.  However, by issuing a Certificate for Payment, the Architect shall not thereby be deemed to represent that he has made exhaustive or continuous inspections of the Improvements to check the quality and quantity of the Work, or that he has reviewed the construction means, methods, techniques, sequences or procedures, or that he has made any examination to ascertain how or for what purpose the Contractor has used the funds paid pursuant to any previous applications for payment.

(3)    The Architect may decline to certify payment and may withhold his Certificate for Payment in whole or in part, to the extent necessary to protect the Owner, if in his opinion he is unable to make the representations required in paragraph V-B(2) above. If the Architect is unable to make such representations, he will notify the Owner and promptly issue a Certificate for Payment for the amount for which he is able to make such representations to the Owner. The Architect may also decline to certify payment or, because of subsequently discovered evidence or subsequent observations, he may nullify the whole or any part of any Certificate for Payment previously issued, to such extent as may be necessary in his opinion to protect the Owner from loss because of (i) defective Work not remedied, (ii) third party claims filed or reasonable evidence indicating probable filing of such claims, (iii) failure of the Contractor to make payments properly to subcontractors or for labor, materials or equipment, (iv) reasonable evidence that the Work cannot be completed for the unpaid balance of the Guaranteed Cost, (v) damages incurred by the Owner or another contractor if caused by acts or omissions of the Contractor, (vi) reasonable evidence that the Work will not be completed by the required completion date, or (vii) persistent failure to carry out the Work in accordance with the Contract. Any Certificate for Payment issued by the Architect, until approved in writing by the Owner, shall only constitute the Architect's recommendation regarding payment.

C.    **Progress Payments and Retainage**

(1)    The Owner (and the Lender, if required) shall, within ten (10) business days after receipt of the Architect's Certificate for Payment, deliver to the Contractor a Certificate approving the Certificate for Payment or so much thereof as the Owner and the Lender, if required, may find to be correct. The Owner shall pay the Contractor the amount so certified on or before fifteen (15) calendar days after the date of the Owner and Lender Certificate; provided, however, that the Owner shall withhold, as retainage, an amount equal to ten percent (10%) of the amount certified by the Owner and the Lender to be payable with respect to the Work; provided, however, that (a) with respect to the Fixed Fee and the Project General Conditions Costs, once Owner and Lender agree that at least fifty percent (50%) of the Work has been completed to Owner's satisfaction, then if approved by Owner and Lender in their sole discretion, the amount to be withheld as retainage with respect to subsequent payments of the Fixed Fee and the Project General Conditions Costs shall be reduced to five percent (5%) thereafter, and (b) with respect to the amounts payable to any Subcontractor, once Owner and Lender agree that at least fifty percent (50%) of the Work to be performed by such Subcontractor under its subcontract has been completed to Owner's satisfaction, then if approved by Owner and Lender in their sole discretion, the amount to be withheld as retainage with respect to subsequent payments for the remaining Work under such Subcontractor's subcontract shall be reduced to five percent (5%) thereafter. Any such reduction in the retainage shall not constitute a waiver of or otherwise prejudice Owner's right to subsequently reinstitute the full retainage on sums due to either Contractor or and Subcontractor under future Applications for Payment should circumstances justify such action in Owner's reasonable judgment. The Owner and the Lender may withhold payment for any of the reasons enumerated in paragraph V-B(3) above, whether or not the Architect has done so, provided that the Contractor shall be given written notice of the reasons for withholding such payment. Subject to the Owner's and the Lender's, if applicable, approval, upon removal of the conditions for withholding payment pursuant to paragraph V-B(3) above or this paragraph V-C(1), and provided the Contractor is not then in default of any of its obligations under this Contract, the amount withheld hereunder (less applicable retainages) shall be

included in and funded from the next monthly requisition. In the event that a Subcontractor's portion of the Work is fully completed to Owner's satisfaction, then if approved by Owner and Lender in their sole discretion, Owner may release a portion of the retainage attributable to the Work completed by such Subcontractor provided the conditions of paragraph V-D(1) below are satisfied as to such Subcontractor's Work. Any such reduction in the retainage shall not constitute a waiver of or otherwise prejudice Owner's right to subsequently reinstitute the full retainage on sums due to either Contractor or Subcontractors under future Applications for Payment should circumstances justify such action in Owner's reasonable judgment.

       (2)    If the Contractor is not then in default of any of its obligations under this Contract, amounts approved for payment by the Owner and Lender, as applicable, pursuant to paragraph V-C(1) above, but remaining unpaid more than fifteen (15) calendar days after the date of the Certificate of the Owner and the Lender, if applicable, approving such payment, shall bear interest from such date until paid at the prime rate of interest as established from time to time by First Union National Bank. Provided the Contractor has timely submitted its Applications for Payment, the Owner shall submit to the Lender all information reasonably required to enable the Lender to make loan disbursements to the Owner in a manner that will enable the Owner to use such proceeds to make payments to the Contractor hereunder by the thirtieth (30th) day of each month.

       (3)    Before Owner makes the payment for Substantial Completion to Contractor, all requirements of the Contract Documents must have been fulfilled, including the following:

           (a)    Receipt by Owner of a complete list of Subcontractors and principal vendors and materialmen, including addresses, telephone numbers and names of individuals to contact who are familiar with the Project (including Contractor);

           (b)    Receipt by Owner of all operating and maintenance manuals, approved by Architect or Construction Manager;

           (c)    Receipt by Owner of all written guarantees from all Subcontractors, materialmen, and suppliers for the Project in a form and content satisfactory to Owner, which Contractor hereby agrees to obtain for, and deliver to, Owner prior to completion of the Project;

           (d)    Receipt by Owner of all "As-Built" records, approved by Architect and Construction Manager; and

           (e)    Copies of any other warranties or guarantees received from manufacturers, suppliers or Subcontractors by Contractor or any Subcontractor.

       (4)    Owner covenants and warrants to Contractor that all funds paid by the Lender to Owner pursuant to an Application for Payment from Contractor, which are applicable to Contractor, shall be paid to and held by Owner in trust for Contractor and shall be used by Owner for the payment of Contractor pursuant to the terms of this Contract.

D.     **Final Retainage**

(1)     Following Substantial Completion of the Work, but subject to the Contractor's compliance with the other terms hereof, the amounts retained with respect to the Work pursuant to paragraph V-C(1) above (including the amounts retained for the Fixed Fee), shall be reduced to an amount agreed upon by the Contractor, the Owner, the Construction Manager, and the Lender which amount shall be two hundred percent (200%) of the sum of (x) the cost to complete the Work to be performed plus (y) a reserve for "punch-list" items equal to the cost of completing such "punch-list" items.  Within thirty (30) days after the date of Substantial Completion, Contractor shall provide Owner with a detailed accounting and estimate of the remaining costs and expenses necessary to complete the Work, including a reasonable reserve.  The Contractor shall request such reduction by means of an Application for Payment.  Further, if the accounting from Contractor shows that the costs and expenses remaining together with Cost of the Work already incurred is less than the Guaranteed Cost, then Contractor shall execute a Change Order to reduce the Guaranteed Cost accordingly.  Notwithstanding the foregoing, a subcontractor who has fully completed its portion of the Work prior to Substantial Completion of the Work shall be entitled to be paid its retainage upon the expiration of sixty (60) days following such completion, provided that in each case (i) such completion shall be in accordance with the Plans and Specifications and the other Contract Documents, (ii) such completion shall have been approved by the Owner, the Architect, the Construction Manager, and the Lender, if applicable, and such reduction is approved by the Owner and the Lender, (iii) all "punch-list" items associated therewith shall have been completed and/or corrected to the satisfaction of the Owner, the Architect and the Lender and (iv) the Owner and the Lender shall have been provided with a final release of liens in connection with such Work.  Subcontractors covered by the preceding sentence include, but are not limited to, the excavation (excluding backfill), sheeting and shoring, concrete structure, masonry, precast concrete and glass and glazing subcontractors.  Lender's approval under this paragraph shall be based upon commercially reasonable standards.

(2)     The amounts retained pursuant to paragraph V-C above and not previously released shall be paid within thirty (30) days after the Final Completion (as defined in paragraph V-E(2) below) of the Work (including, in each case, all exterior finish detail, and all interior detail, such as rest rooms, common areas, primary distribution ducts, conduits for all utilities, and the like); provided, however, in each case (i) such completion shall be in accordance with the Plans and Specifications and the other Contract Documents, (ii) such completion shall have been approved by the Architect, the Construction Manager, the Owner, and the Lender, (iii) all "punchlist" items associated therewith shall have been completed and/or corrected to the satisfaction of the Owner, the Architect, the Construction Manager, and the commercially reasonable satisfaction of the Lender, and (iv) the Owner shall have been provided with a final release of liens in connection with such Work.

E.     **Final Completion**

(1)     Upon Final Completion of the Work, the Contractor may submit an Application for Payment of the remainder of the Cost of Work and the Fixed Fee (an "Application for Final Payment").  Upon receipt of an Application for Final Payment, the Architect and the

Construction Manager will promptly make such inspection, and if and when they find the Work acceptable and fully performed pursuant to the terms of the Contract, the Architect will promptly issue the Owner and Lender a Certificate approving such Application for Final Payment (a "Certificate for Final Payment"), stating that to the best of his knowledge, information and belief, and on the basis of his observations and inspections, the Work has been completed in accordance with the terms and conditions of the Contract, and that the entire balance found to be due the Contractor, and noted in said Application for Final Payment, is due and payable. Final payment shall not be made until all certificates required hereunder have been issued, including all certificates of occupancy for the Improvements. Final payment shall be made within thirty (30) days after the later of the issuance of all such required certificates and the issuance for the Certificate of Final Payment.

(2)     The term "Final Completion" shall mean that all of the following have occurred: (i) all of the Work has been completed in accordance with the Plans and Specifications and all Change Orders; (ii) all of the Work has been approved by the Lender, as applicable (based upon commercially reasonable requirements); (iii) all "punchlist" items have been completed and/or corrected to the satisfaction of the Owner and the Lender, as applicable (provided that Lender's satisfaction is based upon commercially reasonable requirements); (iv) all of the Work requiring inspection by municipal or other governmental authorities having jurisdiction has been duly inspected and approved by such authority; (v) the applicable board of insurance underwriters, if any, has inspected and approved the Work; (vi) all certificates of occupancy required by local governmental authorities have been duly issued; (vii) all of the Work has been approved by all governmental agencies and utilities which are necessary for the Owner to obtain a refund of any deposits made by the Owner to third parties (including utilities and governmental agencies) in connection with the Work; (viii) the Contractor has submitted to the Owner an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner of the Property might in any way be responsible, have been paid or otherwise satisfied; (ix) consent of the surety, if any, to final payment has been obtained in writing by Contractor and delivered to Owner; (x) the Contractor has delivered to the Owner all maintenance and operation manuals, reports, as-built drawings, spare parts, equipment, fuses, lights and similar supplies, all as set forth in the Plans and Specifications and all Warranties for materials and workmanship; (xi) the Contractor has tagged all valves at the Improvements and delivered to the Owner a chart locating all such valves; and (xii) the Contractor has established to the satisfaction of the Owner and the Lender that all subcontractors and materialmen have released the Owner from liability and waived all rights to place a lien upon the Property. If any subcontractor or materialman refuses to furnish a release or waiver as required herein, the Contractor may furnish a bond satisfactory to the Owner to indemnify Owner against such lien. If any such lien remains unsatisfied after all payments are made, the Contractor shall refund to the Owner all moneys that the latter may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees. With respect to items (iv), (v), (vi), and (vii) of this paragraph V-E(2), the Contractor will be paid for the Work timely completed in accordance with the Plans and Specifications and will not be held liable for any delay caused by the failure of the appropriate authority to perform the service required of it thereunder, if the Contractor has timely completed the Work required therefor in accordance with the Plans and Specifications and the cause of such delay is not attributable to any negligence or lack of diligence on the part of the Contractor.

(3)     The acceptance of the Final Payment shall constitute a waiver of all claims by the Contractor except those previously made in writing and identified by the Contractor as unsettled at the time of the Application for Final Payment.

F.     **Payment of Subcontractors and Materialmen**

All funds paid by the Owner to the Contractor which are applicable to Subcontractors, Sub-subcontractors, or materialmen shall be paid to and held by the Contractor in trust for such parties and shall not be used by or constitute funds of the Contractor. Contractor shall, within seven (7) days following receipt of payment from Owner, pay all bills for labor and material performed and furnished by others in connection with the construction, furnishing and equipping of the Project and the performance of the Work. Contractor's failure to make payments within such time shall constitute a material breach of this Agreement. Contractor shall include a similar provision in each of its subcontracts imposing the same payment obligations on its subcontractors. Within fifteen (15) days after each payment to the Contractor, the Contractor shall submit to the Owner, the Architect and the Construction Manager and if requested, the Lender, paid receipts, vouchers, or other evidence satisfactory to the Owner and the Lender showing that the Contractor has paid all items of cost included in previous Applications for Payment for which the Contractor has been paid. Except when the Contractor has not made payment for good cause and has so notified the Owner, if the Contractor fails to pay any sum to any of the Contractor's subcontractors, sub-subcontractors or materialmen which was included in an Application for Payment that Owner paid or fails to present to the Owner as provided herein the required evidence that the Contractor has made payments in amounts at least equal to the payments received by the Contractor for each item included in all Applications for Payment, the Owner may pay such amounts directly to such subcontractors or materialmen, and deduct such payment or deficiency from the next payment of any future payments thereafter becoming due hereunder. If such failure shall continue for fifteen (15) days after written notice thereof to the Contractor, or occur two (2) or more times during the course of the Contract, the Owner shall have the right to require that during the entire remainder of the term of the Contract, all amounts payable with respect to any Work performed by subcontractors, or sub-subcontractors, or supplies furnished by materialmen shall be paid directly to such subcontractor, or sub-subcontractors, or materialmen by the Owner. In the event that the Owner makes any payments directly to any subcontractor, or sub-subcontractors, or materialman pursuant to the provisions of this paragraph V-F, the Owner shall have the option of reducing either (i) the Fixed Fee, or (ii) the Project General Conditions Costs shown as a separate line item on Exhibit B, by the cost to the Owner of administering such direct payments, pursuant to a Change Order as provided in paragraph VI-C(2) below.

G.     **Payments Not to Exceed Guaranteed Cost**

(1)     Nothing contained in this Article V shall require the Owner to pay the Contractor an aggregate amount exceeding the Guaranteed Cost.

(2)     Prior to the submission by the Contractor of its first Application for Payment pursuant to paragraph V-A, the Contractor shall submit to the Owner and the Construction Manager a detailed and itemized schedule (the "Schedule of Values") of the cost (or estimated cost) of the

various portions of each Phase of the Work hereunder (including the Fixed Fee and estimated savings) aggregating the Guaranteed Cost, and specifying the amount allocable to each subcontractor and materialman, all in the form set forth in Exhibit C hereof. Simultaneously with each subsequent Application for Payment, the Contractor shall furnish the Owner with a revised Schedule of Values containing all revisions (if any) in costs incurred (or cost estimated) from that contained in the previously submitted Schedule of Values. No revised Schedule of Values shall contain a reduced cost estimate for any portion of the Work that has not been completed, or for any subcontractor or materialman who has not completed performance, unless approved by the Owner and the Lender (provided that the Lender's approval shall be based upon commercially reasonable requirements). In the event that at any time the aggregate amount shown on any revised Schedule of Values exceeds the Guaranteed Cost, the amount payable by the Owner to the Contractor with respect to such Application for Payment shall be reduced by such amount as is necessary to insure that the cost of performing the uncompleted portion of the Work in accordance with the revised Schedule of Values (including the Fixed Fee) does not exceed the unpaid balance of the Guaranteed Cost less retainage on work previously completed.

### H.    Payments if Contractor is in Default

The Owner shall have no obligation to make any payments to the Contractor pursuant to this Agreement at any time or times that:

(1)    A lien has been placed upon the Property and/or the Improvements by any subcontractor, sub-subcontractor, supplier or materialman, until such time as the Contractor provides a surety bond acceptable to Owner and Lender in the full amount of such lien, or otherwise removes such lien; or

(2)    The Contractor has been given written notice that it is in default under the Contract, until such time as the Contractor cures such default to the satisfaction of the Owner, provided, however, that if Owner's right to withhold payments arises under paragraph V-H(1), then (a) Owner shall only be entitled to withhold twice the amount of the lien(s) that has been placed on the Property and/or the Improvements and shall be obligated to advance the remaining payment under the Architect's Certificate for Payment, and (b) if Contractor thereafter fails to cause the lien(s) to be released in accordance with subparagraph 5.3.2 of the General Conditions, then Owner shall have the right to withhold all subsequent payments until satisfactory evidence of such release is delivered to Owner.

### I.    Lender's Approval

The procedures for Application for Payment as described in this Article V are subject to the Lender's approval and if necessary will be revised to conform with the Lender's commercially reasonable requirements (a copy of which will be provided to Contractor). Any Application for Payment shall be subject to the Owner's and the Lender's approval and the Contractor shall be responsible for furnishing any and all information reasonably required by the Owner and/or reasonably required by the Lender as a condition of any such approval.

DAL:369636.11
17656.92939

## ARTICLE VI.  CHANGES IN THE WORK

### A.    Change Orders

The term "Change Order" shall mean any written order to the Contractor after execution of this Agreement, which is signed by the Owner and the Architect, and which authorizes a change in the Work, or an adjustment to any authorized charges, the Guaranteed Cost, the Project General Conditions Costs, or the Completion Date for the Work.  The Owner may at any time and from time to time, make changes in the Plans and Specifications, issue additional instructions, require additional Work or direct the omission of Work previously ordered without invalidating the Contract or any bonds, guarantees or security, if any, furnished hereunder.  The provisions of the Contract shall apply to all such changes, modifications, and additions with the same effect as if they were embodied in the original Plans and Specifications of the Contract.  The Contractor shall be obligated to perform or delete any Work as described in any Change Order.  Change Orders shall be in such form as approved by Owner and Lender (provided that Lender's approval shall be based upon commercially reasonable requirements).

### B.    Change Orders Affecting the Work

(1)    No additional Work shall be performed or any portion of the Work deleted by the Contractor, and no adjustment shall be made to the Guaranteed Cost or the Completion Date for the Work, except pursuant to a Change Order as provided in this Article VI.

(2)    Prior to issuing a Change Order, the Owner and the Architect may require the Contractor to supply any information reasonably requested in connection with a proposed or contemplated Change Order.  The Contractor shall reply to any such request within five (5) business days.  Where appropriate, the Contractor's reply shall itemize in a manner satisfactory to the Owner and the Lender, if required,  the added or reduced work or supplies involved in such request, and shall indicate in detail (to the satisfaction of the Owner and the reasonable satisfaction of the Lender) the additional cost and the additional time required to complete any added Work, or the reduction in cost and time savings occasioned by any reduced Work, and the portions of any Work to be performed by subcontractors.  The Contractor shall separately identify in such reply any estimated net decrease or net increase in the Project General Conditions Costs, as shown as a separate line item on Exhibit B; provided that the increase in the Project General Conditions Costs shall not exceed four percent (4%) of the agreed estimated direct cost of any additional Work unless such Change Order extends the Completion Date, in which event the Contractor will be entitled to an equitable increase in Project General Conditions Costs which could exceed four percent (4%).  All quotations which support and become part of an executed Change Order shall be binding upon the Contractor.

(3)    (a)    If the Contractor does not advise the Architect or the Owner promptly of the Contractor's agreement or disagreement with a proposed adjustment, or if the Contractor disagrees with the proposed method of adjustment, the method and the adjustment shall be determined by the Architect or  the Owner on the basis of reasonable Contractor expenditures and savings attributable to the change, including, in the case of an increase in the Contract Sum, a reasonable mark-up for Project General Conditions Costs in compliance with paragraph VI-B(2)

above. The Contractor may contest the reasonableness of any adjustment determined by the Architect or the Owner. Pending final determination of costs the Contractor may include in Contractor's Applications for Payment amounts not in dispute for work performed pursuant to properly authorized Change Orders.

(b)    Within five (5) business days of receipt of the Contractor's notice under paragraph VI-B(3)(a) above, the Owner shall notify the Contractor either to proceed with the Work, or not to proceed with the Work. If the Owner notifies the Contractor to proceed with the Work the Owner's notice shall specify whether the Owner agrees with the Contractor's proposed adjustment of the Guaranteed Cost and/or Completion Date, or whether the dispute is to be resolved in accordance with the General Conditions. Until the Owner gives the Contractor the notice required by this paragraph VI-B(3)(b), the Contractor is not authorized to proceed with the Change Order.

(4)    All claims for payment in connection with Change Orders shall be substantiated by complete itemized statements showing quantities and unit prices for material, labor, equipment or other items of cost. Costs of labor and material shall be actual costs to the Contractor, or where appropriate, the agreed upon charges set forth in Exhibit B. In no event, however, shall the Guaranteed Cost be increased for any additional Work resulting from any Change Order by an amount other than as specified by the Contractor and agreed to by the Owner and the Architect pursuant to paragraph VI-B(2) above, or as determined in accordance with paragraph VI-B(3) above. Further, additional costs for Work in connection with Change Orders shall be limited to those items which are allocable as "Cost of the Work" under paragraph IV-B above.

(5)    In the event a Change Order shall increase or decrease the Cost of the Work performed under this Agreement, (a) the Guaranteed Cost (i) shall be increased by an amount equal to the agreed upon increase in cost occasioned by the added Work or (ii) shall be decreased by the agreed upon reduction in cost occasioned by the reduced Work, and (b) the Fixed Fee (i) shall be increased by an amount equal to one and three quarter percent (1.75%) of the agreed upon increase in cost occasioned by the Work or (ii) shall be decreased by one and three quarter percent (1.75%) of the agreed upon reduction in cost occasioned by the reduced Work. Changes in the Work which involve a substitution of materials or Work, or which relate to a single task, shall be processed through a single Change Order to ascertain whether there is any net increase or net decrease in the Cost of the Work.

C.    **Change Orders Resulting from Contractor's Failure to Perform**

(1)    In addition to the Change Orders authorized pursuant to paragraph VI-B above, the Owner may request that the Architect certify a Change Order as provided in this paragraph VI-C. Such Change Orders shall not become final unless and until approved in writing by the Architect, the Owner and the Lender (if applicable).

(2)    In the event that the Owner incurs any cost as a result of the Contractor's failure to fulfill its obligations under the Contract, including but not limited to costs incurred pursuant to paragraphs V-F and/or VII-B(3) hereof, and/or under the General Conditions, then the Owner shall submit the claim for the costs incurred to the Architect and the Architect shall certify

a decrease in the amount to be paid to the Contractor, the Fixed Fee, in an amount equal to the costs so incurred by the Owner.

**D.    Approval of Change Orders Initiated by Contractor**

(1)    Change Orders may be initiated by the Contractor, by submitting a written request to the Owner, the Architect and the Construction Manager only under the circumstances set forth in this paragraph VI-D. Such Change Orders shall not become final unless and until approved in writing by the Architect, and the Owner and the Lender, if required.

(2)    In the event that the Construction Commencement Date does not occur on or before November 1, 2001, the Guaranteed Cost and the Completion Date shall be adjusted by an amount mutually agreed upon by the Owner and the Contractor, which shall be equal to any additional cost (or savings) directly attributable to this Project and time incurred by the Contractor because the Construction Commencement Date occurs after November 1, 2001. This proposed increase must be received by the Owner at its place of business no later than five (5) business days after the Construction Commencement Date. If the Owner does not accept said increase within thirty (30) business days after receipt thereof, neither party shall have any further obligations under this Contract and this Contract shall automatically terminate and be of no further force or effect.

(3)    In the event that the Owner shall fail to timely provide the necessary building permits, as provided in paragraph III-C above, the Completion Date shall be extended by that number of days of delay actually caused by the failure of Owner to obtain the required permits. The extent of the delay shall be mutually agreed upon by the Owner and the Contractor, or if a dispute shall arise between them, shall be determined in accordance with the terms of this Contract.

(4)    In the event that the Owner requires the Contractor to select a subcontractor or materialman whose bid is higher than that of the lowest bidder recommended by the Contractor, as provided in paragraph 5.2 of the General Conditions, and otherwise approved by Owner and Lender (in Lender's reasonable discretion), provided such lowest bidder meets all of the applicable requirements under the Agreement, the General Conditions and the Supplementary Conditions, including but not limited to Article 13 thereof, the Cost of the Work and the Guaranteed Cost shall be increased by the amount by which the bid selected by the Owner exceeds the bid of the lowest bidder recommended by the Contractor, as certified by the Architect.

(5)    Subject to the provisions of paragraph VII-C below, in the event of the occurrence of any Force Majeure Delay, defined in paragraph VII-C below, which causes a delay in the completion of the Work which is not the fault of the Contractor, the Completion Date shall be extended by the delay period resulting from such event. No event covered by paragraph VII-C shall entitle the Contractor to any increase in the Cost of the Work and the Guaranteed Cost.

(6)    In the event that any special testing is conducted pursuant to paragraph 13.5.2 of the General Conditions, and such testing reveals that the relevant portion of the Work conforms to the requirements of the Contract, the Cost of the Work and the Guaranteed Cost shall be increased by the cost of conducting such testing, as certified by the Architect.

(7)    In the event that the Lender requires the Contractor to obtain insurance in addition to that required by the General Conditions, the Cost of the Work and the Guaranteed Cost shall be increased by the amount of the additional premiums therefor, as certified by the Architect.

(8)    In the event that the Contractor is required to uncover any portion of the Work, and if the cost therefor is charged to the Owner under the provisions of paragraph 12.1.2 of the General Conditions, the Cost of the Work and the Guaranteed Cost shall be increased by an amount equal to the cost of uncovering and replacing such portion of the Work, as certified by the Architect.

(9)    In the event the Contractor is entitled to an increase in the Guaranteed Cost as a result of new taxes as provided in paragraph IV-B(12) above, the Guaranteed Cost shall be increased by an amount equal to such new taxes, as certified by the Architect.

(10)    In the event (i) the Owner issues a written directive to the Contractor, or (ii) a modification is made to any of the Contract Documents, and such interpretation, directive, or modification of the Contract Documents requires additional work or materials beyond the scope of the Contract Documents, the Cost of the Work and the Guaranteed Cost shall be increased by the reasonable cost of such additional work or materials, as certified by the Architect or as otherwise determined pursuant to the terms of the Contract.

(11)    In the event the Owner directs the Contractor to stop the Work temporarily, and such directive is not attributable to any default of the Contractor or any other condition for which the Owner is entitled to stop the Work under the Contract, the Completion Date shall be extended by the delay period resulting from such directive, and the Cost of the Work and the Guaranteed Cost shall be increased by the reasonable additional costs incurred by the Contractor on the Work caused by such delay. The extent of the delay and increase in the Guaranteed Cost shall be mutually agreed upon by the Owner and the Contractor, or if a dispute shall arise between them, shall be determined in accordance with the terms of the Contract.

E.    **Incidental Changes in the Work**

The Construction Manager may direct the Contractor to perform incidental changes in the Work which do not involve adjustments in the Contract Sum or Contract Time or other time deadlines under this Agreement. Incidental changes shall be consistent with the scope and intent of the Contract Documents. The Construction Manager shall initiate an incidental change in the Work by issuing a written Change Order to the Contractor. Such written orders shall be carried out promptly and shall be binding on the parties.

F.    **Bonus for Early Completion**

In the event that Contractor completes the Work required for Phase I as set forth in Schedule I attached hereto prior to the deadline for Substantial Completion set forth in Schedule I, then for each full calendar month that such Phase I is completed prior to the deadline for Substantial Completion for Phase I Work and Construction Manager, Architect and Owner have approved the

Work and agree that all requirements for Substantial Completion under paragraph III-D hereof have been met, Contractor shall be entitled to a payment of One Hundred Eighty Thousand and No/100 Dollars ($180,000.00) per calendar month. Contractor will not be entitled to a payment for such early completion of the Work for Phase I for any partial calendar month in which the Work is completed early. If Contractor is entitled to such payment, Contractor shall submit to Construction Manager a Change Order pursuant to the provisions of this Article VI, to increase the Fixed Fee to include such bonus payment(s). In the event that the Contractor achieves early completion of the Work required for Phase I after Owner accelerates the Work under paragraph III-D(4) hereof, any such payment under this paragraph VI-F shall be reduced by the additional costs incurred by Owner for the Work pursuant to paragraph III-D(4).

## ARTICLE VII. DEFAULT

### A.    Default by Owner

(1)    The Contract may be terminated by the Contractor only as provided in this Article VII.

(2)    It shall be an event of default on the part of the Owner if the Owner (or its agents or employees) violates any of its specific obligations under the Contract (including the obligation of the Owner to make payments to the Contractor as set forth in Article V of this Agreement), and such violation continues for a period of (a) fifteen (15) days in the event of a failure to make a payment and (b) thirty (30) days for all other non-monetary failures, after the Contractor gives the Owner, the Construction Manager and the Lender written notice of such violation (or, if such non-monetary violation cannot be cured within such thirty (30) day period, such longer period as may be necessary to cure such violation, provided that the Owner diligently commences to pursue such cure within the thirty (30) day period).

(3)    The Contractor hereby agrees that the Lender shall have the right, at its election, to cure any defaults of the Owner under this Contract. If the Lender at any time in the future exercises any right to complete construction of the Improvements, the Lender shall give the Contractor written notice of the exercise of such right within fifteen (15) days following the date on which the Lender notifies the Owner of its exercise of such right, and shall thereupon be entitled to succeed to all the Owner's rights and obligations under this Contract.

(4)    Upon the occurrence of an event of default hereunder by the Owner, Contractor shall have the right to stop the Work, or any portion thereof, by giving written notice to Owner and Construction Manager, it being acknowledged that if Contractor should stop the Work for a default by Owner and an "event of default" on the part of the Owner has not occurred, such stoppage of Work shall be considered a breach by Contractor of its obligations under this Contract.

**B.    Default by the Contractor**

(1)    The Owner may terminate the Contract with or without cause at any time prior to the Construction Commencement Date, in which event neither party shall have any further liability to the other hereunder, except as specifically set forth herein.

(2)    Any of the following shall be an event of default on the part of the Contractor:

(a)    the adjudication of the Contractor as bankrupt or insolvent, or the making of a general assignment by the Contractor for the benefit of its creditors, or the appointment of a receiver on account of the Contractor's insolvency;

(b)    the failure to supply enough properly skilled workmen or proper materials to complete the Work in a timely manner, if such failure continues for a period of three (3) business days after the Owner gives the Contractor written notice of such failure, or such longer period as may be necessary to correct such failure, provided the Contractor diligently commences to correct such failure within such three (3) business day period and the Lender approves such extension;

(c)    the failure to make payments to subcontractors or for materials or labor when and as due;

(d)    the violation by the Contractor, any subcontractor, any agent or employee of the Contractor or any subcontractor, or any other person performing any of the Work, of any laws, ordinances, rules, regulations or orders of any public authority having jurisdiction over the Property if such violation continues for a period of three business (3) days after the Owner or public authority gives the Contractor written notice of such violation;

(e)    the violation by the Contractor, any subcontractor, any agent or employee of the Contractor or of any subcontractor, or any other person performing any of the Work, of any of the Contractor's other obligations under the Contract, including but not limited to the failure to carry out the work in accordance with the Contract Documents, if such violation continues for a period of ten (10) days after the Owner gives the Contractor written notice of such violation (or, if such violation cannot be cured within such ten (10) day period, such longer period as may be necessary to cure such violation, provided that the Contractor diligently commences to pursue such cure within the ten (10) day period and the Lender approves such extension);

(f)    an improper stoppage of Work under paragraph VII-A(4).

(3)    Upon the occurrence of an event of default hereunder, the Owner shall have the following rights and remedies:

(a)    To stop the Work, or any portion thereof, by giving written notice to Contractor, such order to be effective upon delivery. If the Work is stopped hereunder, the Contractor shall not have the right to resume the Work without the Owner's consent and until the

cause for such order has been eliminated. This right of the Owner to stop the Work shall not give rise to any duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity.

(b)    To carry out the Work directly, correct any deficiency in the Work, and take any actions necessary to cure the Contractor's default. In such case an appropriate Change Order shall be issued reducing the amount to be paid to the Contractor and the Guaranteed Cost by the cost to the Owner of carrying out such Work, correcting such deficiencies, or otherwise curing such default including compensation for any additional services (of the Architect, the Construction Manager or others) made necessary by such default, neglect or failure. In the event that the Contractor fails to correct any defective work as provided in the General Conditions, in addition to the actual cost of effecting such corrections, the Guaranteed Cost shall be decreased by twice the Fixed Fee that would otherwise have been payable on account of such costs. The Contractor shall not be relieved of any liability by the Owner's actions hereunder. If the payments then or thereafter due the Contractor are not sufficient to cover the amount to be paid to the Contractor and the Guaranteed Cost as reduced hereunder, the Contractor shall pay the difference to the Owner.

(c)    To terminate the employment of the Contractor, and take possession of the Property, the Improvements, and of all materials, equipment, tools, construction equipment and machinery owned by the Contractor and located on the Property, and to finish the Work by whatever method the Owner may deem expedient. In such case the Contractor shall not be entitled to receive any further payment. At such time as the Work is finished and final payment is made therefor, if the cost of finishing the Work (including the cost to correct any defective Work), including but not limited to compensation for additional services of the Architect, the Construction Manager, any engineers, attorneys, or other professionals made necessary thereby, and any damages incurred by the Owner as a result of such default, exceed the unpaid balance of the Guaranteed Cost at the time of termination, the Contractor shall pay such difference to the Owner. The amount to be paid to the Owner shall be certified by the Architect and this obligation for payment shall survive the termination of the Contract.

(d)    To bring a civil action to enforce the provisions of the Contract, including a suit for specific performance and/or a suit for damages, or to otherwise exercise any right or remedy available at law or in equity. The costs and expenses of bringing or defending a claim as a result of a breach of the Contract by Contractor or Owner are compensable to the prevailing party.

(4)    The foregoing remedies shall be both non-exclusive and cumulative. The exercise of any one remedy shall not preclude the Owner from exercising any other available remedies either simultaneously or separately.

(5)    In each of the foregoing remedies, the Contractor agrees, at the request of the Owner, to assign any and/or all of the subcontracts and purchase order agreements for the Project to the Owner or to a contractor designated by the Owner. The Contractor shall include provisions providing for rights of assignment to the Owner, to the Lender, or to a contractor designated by the Owner in all subcontracts and agreements executed for the Project. In no way shall this be construed as an obligation of Owner to assume Contractor's subcontracts or purchase order agreements.

### C.  Force Majeure

The Contractor shall not be held in default of its obligations with respect to the completion of the Work, or progress in respect thereto, by reason of delay in the performance of such obligations caused by acts of God, acts of government authorities, fires, floods, epidemics, quarantine restrictions, riots or civil commotions, or freight embargoes, but in each such case, without any fault of the Contractor ("Force Majeure Delay"), provided, however, that in no event shall any delay due to weather conditions that are considered "normal" in the area in which the Property is located constitute a Force Majeure Delay. In the event of the occurrence of any Force Majeure Delay, Contractor must notify Owner and Construction Manager of the occurrence of a Force Majeure Delay in writing within three (3) business days thereof, and Owner shall approve or disapprove of such Force Majeure Delay in writing within ten (10) days following receipt of Contractor's notice. If Owner approves of the Force Majeure Delay described in the Contractor's notice, the time or times for performance of the Contractor's obligations may be extended by Change Order pursuant to paragraph VI-D(5) above.

### D.  No Waiver of Rights

No action or failure to act by the Owner, Construction Manager, Architect or Contractor shall constitute a waiver of any right or duty afforded any of them under the Contact, nor shall any such action of failure to act constitute an approval of or acquiescence in any breach thereunder, except as may be specifically agreed in writing.

## ARTICLE VIII. TERMINATION FOR CONVENIENCE OF THE OWNER

### A.  Right to Terminate

Notwithstanding any other provision of the Contract, the Owner shall have the right at any time, and from time to time, to terminate the Contractor's right to perform the Work (and any portion thereof), without cause and for the convenience of the Owner.

### B.  Contractor's Rights upon Termination for Convenience

In the event the Owner avails itself of the right to terminate for convenience as provided in paragraph VIII-A above, the Contractor shall immediately comply with all directives of the Owner in connection with such termination. The Contractor shall thereafter be paid for all Work performed through the effective date of the termination, together with the allocable portion of the Contractor's Fixed Fee earned with respect to the Work actually performed. In addition, the Contractor shall be entitled to (a) payment of a termination fee in the amount of $250,000.00, and (b) reimbursement of the Cost of the Work paid and incurred in removing its forces from the Property. The Contractor's Fixed Fee stipulated in paragraph IV-D above shall be reduced by the pro-rata portion of the Fixed Fee allocable to the terminated portion of the Work. In no event shall the Contractor be deemed entitled to payment of the Fixed Fee allocable to the terminated portion of the Work or to the Contractor's activities in demobilizing and leaving the Property.

C.    **Conversion of Default to Convenience Termination**

In the event that any action of the Owner terminating the Contractor's employment for default pursuant to paragraph VII-B is found to have been invalid, the rights and obligations of the parties shall be determined as though the Contract had been terminated for the Owner's convenience, as provided for in this Article VIII.

## ARTICLE IX. MISCELLANEOUS

A.    **Books and Records**

(1)    The Contractor will establish and keep complete, accurate, and current books of account and records of all Work and costs at the principal office of the Contractor in the metropolitan Washington, D.C. area. Such books and records shall show the costs incurred hereunder, shall at all reasonable times be open to inspection by the Owner, any Lender, or its authorized representatives, and shall be retained and available for reference for a period of at least three (3) years after the Work has been completed and final payment received therefor.

(2)    Contractor shall check all materials, equipment, and labor relating to or used in the Work and shall keep such full and detailed accounts as may be necessary for proper financial management under this Agreement. The method of keeping such accounts shall be satisfactory with GAAP.

(3)    Contractor's records relating to this Agreement subject to audit shall include, but not be limited to, accounting records, written policies and procedures; subcontract files (including proposals of successful and unsuccessful bidders, bid recaps, etc.); original estimates; estimating work sheets; correspondence; Change Order files (including documentation covering negotiated settlements); backcharge logs and supporting documentation; entries detailing cash trade discounts earned; documents, subscriptions, recordings, computerized information, agreements, purchase orders, leases, contracts, commitments, arrangements, notes, daily diaries, superintendent reports, drawings, receipts, vouchers and memoranda, and any and all other agreements, sources of information that may in Owner's reasonable judgment have any bearing on or pertain to any matters, rights, duties or obligations under or covered by any Contract Document; and any other contractor records which may have a bearing on matters of interest to the Owner in connection with the contractor's work for the Owner relating to this Agreement (all foregoing hereinafter referred to as "records") shall be open to inspection and subject to audit and/or reproduction by Owner's agent or its authorized representative. Such records subject to audit shall also include those records necessary to evaluate and verify direct and indirect costs, (including overhead allocations) as they may apply to costs associated with this Agreement. In those situations where contractor's records have been generated from computerized data (whether mainframe, mini-computer, or PC based computer systems), Contractor agrees to provide Owner's representatives with extracts of data files in computer readable format on data disks or suitable alternative computer data exchange formats.

(4)    The Owner or such party qualified to perform an audit as Owner designates shall be entitled to audit all of the Contractor's records relating to this Agreement, and shall be

allowed to interview any of the Contractor's employees, pursuant to the provisions of this article throughout the term of this Agreement and for a period of ninety (90) days after final payment or one hundred eighty (180) days following final completion, whichever is greater, or longer if necessary to respond to third party audits or other obligations to third parties. Such audits may require inspection and photo copying of selected documents from time to time at reasonable times and places. If an audit or inspection or examination in accordance with this Agreement discloses overcharges of any nature by Contractor to Owner in excess of Twenty-Five Thousand and No/100 Dollars ($25,000.00), the actual cost of Owner's audit shall be reimbursed to Owner by Contractor. Any adjustments and/or payments which must be made as a result of any such audit or inspection of Contractor's invoice and/or records shall be made within a reasonable amount of time (not to exceed 90 days) from presentation of Owner's findings to Contractor.

(5)    Contractor shall require all payees permitted to be contracted on the basis of a cost of the work plus a fee (examples of payees include subcontractors, material suppliers, etc.) to comply with the provisions of this article by insertion of the requirements hereof in a written contract agreement between Contractor and payee. Such requirements to include flow-down right of audit provisions in contracts with such payees will also apply to subcontractors, material suppliers, etc. Contractor will cooperate fully and will cause all such payees to cooperate fully in furnishing or in making available to Owner from time to time whenever requested in an expeditious manner any and all such information, materials and data.

(6)    Owner agrees not to disclose or use in any way, commercial or otherwise, any confidential information gained in the audit process concerning the confidential practices, processes, methods or other confidential information of Contractor; provided, however, that Owner may disclose information obtained in an audit to the third parties whose obligations or claims necessitated the audit.

B.    **Rights of Third Parties**

Except as otherwise expressly provided herein, no provision contained in the Agreement shall create or give to third parties any claim or right of action against the Owner or the Contractor beyond such as may legally exist in the absence of any such provision. Neither the Owner nor the Contractor are acting for or on behalf of any disclosed or undisclosed principals in connection with the performance of this Agreement. It is expressly understood and agreed that the Contractor has made no promises or agreements to, or for the benefit of, any lessee or tenant of the Improvements, but the foregoing shall not relieve the Contractor from any liability to the Owner in respect of any commitment made by the Owner to any lessee or tenant based on the Contractor's obligations to the Owner hereunder.

C.    **Interpretation of Agreement**

The Agreement consists of, and is hereby defined as the aggregation of this Agreement, Exhibit A (the Schedule of the Plans and Specifications), Exhibit A-1 (Stipulations and Qualifications), Exhibit B (the Guaranteed Cost), Exhibit C (Schedule of Values for Work), Exhibit D (General Conditions of the Contract for Construction, and Modifications to the General

Conditions of the Contract for Construction, as modified by the Supplementary Conditions attached thereto, collectively referred to as the "General Conditions"), Exhibit E (standard Subcontractor Contract Form), and Exhibit F (Subcontractor's Letter) and Schedule I (Phase Delivery Schedule). The Exhibits referenced herein are made a part of this Agreement, and the text and contents thereof are incorporated herein by reference. The term Contract as used throughout this Agreement shall have the meaning set forth in paragraph 1.1.2 of the General Conditions, unless otherwise defined herein. To the extent there is a conflict between the terms of the documents listed herein and this Agreement, the terms of this Agreement shall control pursuant to paragraph 1.2.3.2 of the Supplementary Conditions.

### D.    Owner's Representative

The Owner reserves the right to employ one or more contract administrators for this Project. No such contract administration personnel shall have the authority to make changes in the work and/or obligate the Owner to additional cost or time adjustments without the express written consent of the Owner. In addition, the Contractor shall make no claims against, and shall indemnify and hold harmless, any and all such contract administration personnel, in respect of any and all claims, demands, and liabilities whatsoever arising out of the Project.

### E.    Compliance with the Development Documents

(1)    Contractor acknowledges that Owner is a party to that certain Sales and Development Agreement, dated as of August 9, 2000, by and between Owner and the United States of America, acting by and through the Administrator of General Services and authorized representatives ("GSA"), as amended from time to time (collectively, the "Development Agreement"), and certain other agreements affecting the Improvements on the Property, as referenced in the Development Agreement (collectively, the "Development Documents"). Contractor shall comply with the requirements of the provisions of the Development Documents listed in Exhibit G attached hereto (to the extent that such requirements relate to the construction of the Improvements and the Property), and shall take, and cause all of its agents, employees, and subcontractors to take, no action or inaction which would cause Owner to be in violation of any of the terms or provisions of the Development Documents set forth in Exhibit G. Further, Contractor agrees to promptly respond to requests from Owner regarding the status of the Work.

(2)    Contractor acknowledges that Owner is a party to that certain (a) Service Tunnel and Loading Facility Agreement dated as of May 14, 2001, by and between the GSA, Carley Arts Associates Limited Partnership ("Carley"), and Owner, (b) that certain Estoppel, Assumption, Indemnity, and Termination of Easement Agreement dated as of April 19, 2001, by and between the GSA, the Grand Lodge of the Independent Order of Odd Fellows of the District of Columbia, Trustee ("IOOF"), and Owner,    (c) Tie-Back and Crane Swing Agreement dated as of _____, 2001, by and between LHL Realty Co. and Owner, and (d) Underpinning, Tie-Back and Crane Overswing Agreement dated as of _____, 2001, by and between Sixth and E Associates Joint Venture ("S&E") and Owner (as amended from time to time, collectively, the (collectively, the "Additional Development Documents"). GSA, Carley, IOOF, LHL Realty Co. and S&E are herein collectively referred to as the "Adjacent Property Owners." Contractor

acknowledges that it has received copies of the Additional Development Documents, that the construction contemplated under the Additional Development Documents is included in the Plans and Specifications and is part of the Work to be performed by Contractor, and that Contractor shall be responsible for all matters set forth in the Additional Development Documents related to the Work, including but not limited to (i) complying with the terms and requirements contained therein to the extent that those terms relate to (a) installation of underpinnings and tie backs, (b) placement, operation and removal of the cranes, (c) damage to the property and buildings of the Adjacent Property Owners, and (d) maintaining continuous access to the property and buildings of the Adjacent Property Owners; (ii) installing and monitoring the underpinning and tie backs in such a manner as to protect the property and buildings of the Adjacent Property Owners from damage as a result of the Work; (iii) releasing the load on all tie backs following completion of the Work; and (iv) naming the Adjacent Property Owners as additional insureds under the Contractor's insurance policies as required therein.

### F.    Additional Documentation

Contractor agrees to perform such additional acts as may be necessary or appropriate to effectuate and perform all of the terms, provisions and conditions of this Agreement and all transactions contemplated herein, and to execute such other documentation as Owner or any Lender may reasonably require with respect to the agreements contemplated herein, including a document assigning the rights of Owner under the Contract Documents and this Agreement to an entity related to Owner, any owner of the Property or any portion thereof, and/or to the Lender in connection with a loan made by Lender in connection with the Property or the Improvements to be constructed thereon, provided, however, that any such additional act or documentation does not impose upon Contractor any material obligations that are beyond the scope, terms and conditions of this Contract. For purposes of this Agreement, the term "Lender" shall mean collectively one or more financial institutions or other entities that loans Owner funds for the development and construction of the Improvements.

### G.    Independent Contractor

In performing its obligations hereunder, Contractor shall be deemed an independent contractor and not an agent or employee of Owner.

### H.    Lender's Inspection of the Work

Contractor understands and acknowledges that any Lender may require periodic inspection and certification by an independent architect or engineer designated and engaged by said Lender. Consequently, Contractor agrees to make the site of the Work available at all reasonable times for inspection by the Lender or its independent architect, engineer or other designee.

### I.    Notices

Any notice or communication shall be in writing and shall be sent by either:   (a) personal delivery service with charges therefor billed to shipper; (b) overnight or expedited delivery

service with charges therefor billed to shipper; (c) facsimile transmission, provided a confirmation copy is mailed pursuant to subparagraph (d) below; or (e) United States mail, postage prepaid, registered or certified mail, return receipt requested. Any notice or communication sent as above provided shall be deemed given or delivered: (a) upon receipt if personally delivered (provided that such delivery is confirmed by the courier delivery service); (b) if sent by United States Mail, on the date appearing on the return receipt, or if there is no date on such return receipt, the receipt date shall be presumed to be the postmark appearing on such return receipt; or (c) on the date of actual delivery by any overnight or expedited delivery service or actual receipt if sent by facsimile transmission (provided receipt is confirmed as provided above). Any notice or communication required or permitted hereunder shall be addressed as follows:

> To Owner:          Jefferson at Penn Quarter, L.P.
>                    c/o JPI Investment Company
>                    8230 Boone Boulevard
>                    Suite 340
>                    Vienna, VA 22182
>                    Attention: Mr. Jim Butz
>                    Facsimile: (703) 847-4681
>
> With a copy to:    JPI Development Partners, Inc.
>                    600 East Las Colinas Boulevard
>                    Suite 1800
>                    Irving, TX 75039
>                    Attention: Mr. Jay Graham
>                    Facsimile: (972) 556-3844
>
> To Contractor:     JA Jones/ Tompkins Builders Inc.
>                    1333 H Street, N.W.
>                    Suite 200
>                    Washington, DC 20005-4779
>                    Attention: Bud Tripaldi
>                    Facsimile: (202) 898-2531

Either party may change its mailing address at any time by giving written notice of such change to the other party in the manner provided herein, provided that such party shall have at least seven (7) days after receipt of such notice to reflect such change of address in its records.

## J.    Compliance with Applicable Laws

Contractor shall, and shall require all of its Subcontractors, Sub-sub contractors and materialmen to observe and abide by and perform all of its obligations hereunder in accordance with all applicable laws, rules and regulations of all governmental authorities having jurisdiction, including the Federal Occupational, Safety and Health Act. Contractor warrants and represents that it shall use appropriately licensed Subcontractors and Sub-subcontractors to perform any and all

portions of the Work for which applicable law requires performance thereof by licensed persons or entities.

### K.    Contractor's Personnel

All personnel used by Contractor in the performance of the Work shall be qualified by training and experience to perform their assigned tasks. At the request of Owner, Contractor shall discontinue to use in the performance of the Work, any personnel reasonably deemed by Owner to be incompetent, careless, unqualified to perform the Work assigned to him or otherwise unsatisfactory to Owner. Only those persons designated by Contractor from time to time in writing to Owner, and approved in writing by Owner, shall be the persons in charge of the Work hereunder, and such persons shall not be changed except with the written consent of Owner. Such designated persons shall include at least one senior officer of Contractor. Contractor agrees that such individuals will participate in and will at all times be completely familiar with the performance by Contractor of its services hereunder and will serve as the prime points of contact between Owner and Contractor. It is the responsibility of Contractor to have an authorized representative present for all meetings when called by Owner during reasonable business hours and upon reasonable notice.

### L.    Contractor's Representations and Warranties

(1)    Contractor hereby represents and warrants to Owner that Contractor is experienced and skilled in the construction of projects of the type described in the Contract Documents and has by careful examination satisfied itself as to:

(a)    the nature, location, and character of the Property, including, the surface condition of the land and all structures and obstructions thereon, both natural and man-made, and all surface water conditions of the Property and the surrounding area;

(b)    the nature, location, and character of the general area in which the Property is located, including, without limitation, its climatic conditions, available labor supply and labor costs, material supplies and material costs, and available equipment supply and equipment costs;

(c)    the quality and quantity of all materials, supplies, tools, equipment, labor, and professional services necessary to complete the Work in the manner required by the Contract Documents;

(d)    the requirements of the Work required by the existing Contract Documents, including without limitation, construction means and methods specified therein.

(2)    Contractor further represents and warrants to Owner that Contractor is a corporation, duly organized, validly existing under the laws of the District of Columbia, and possesses all requisite authorities, powers, licenses, and permits necessary or appropriate to perform its obligations under this Agreement and under the other Contract Documents; all approvals or consents required for the execution, delivery, and performance of its obligations under this

DAL:369636.11
17656.92939

Agreement and the other Contract Documents have been obtained by Contractor; and this Agreement and the other Contract Documents evidence the valid and binding obligations of Contractor, enforceable against it in accordance with the terms hereof and thereof.

(3)     Contractor accepts the relationship of trust and confidence established between Contractor and Owner by this Agreement, and Contractor covenants with Owner to furnish Contractor's best skill and judgment in respect of the Work and the performance of Contractor's obligations under the Contract Documents and to cooperate with Architect and the Construction Manager in furthering the interests of Owner. Contractor agrees to furnish efficient business administration and superintendence and to furnish at all times an adequate supply of workmen and materials and to perform the Work in the best and most sound way and in the most expeditious and economical manner consistent with the interests of Owner. Contractor has reviewed the Plans and Specifications for the Improvements and agrees to furnish estimates and technical advice as to construction methods and equipment to Owner, Construction Manager and Architect from time to time in order to ensure that the Improvements remain within the Guaranteed Cost set forth in paragraph IV-E hereof. Contractor agrees to review the architectural, civil, mechanical, electrical, structural, landscaping, tenant finish, furniture, fixtures and equipment Plans and Specifications, and any other Plans and Specifications that may hereafter be developed with respect to the Improvements, as they are being developed and to advise and make recommendations to Owner, Construction Manager and Architect with respect to such factors as construction feasibility, possible economies, availability of materials and labor, time requirements for procurement and construction, and projected costs. Contractor shall assist in the coordination of all sections of the drawings and specifications without, however, assuming any of the Architect's customary responsibilities for design. Notwithstanding the above, the relationship between the parties is contractual and not fiduciary.

(4)     Contractor agrees to cooperate with all consultants and independent contractors retained by Owner and Lender, and to coordinate the Work with the work of such parties to the end that the Improvements shall be completed in the most efficient and expeditious manner. It is understood that Contractor is not responsible for coordinating and scheduling the work of other consultants or for any act or omission of any consultant other than those engaged or employed by Contractor. Contractor will, however, be mindful of the schedule of consultants and offer guidance when called upon to assist in coordination. The Contractor's obligations specified in paragraph IX-L(4) shall extend to the work of consultants to the extent that such consultants' work is integrated in the final Plans and Specifications prepared by or at the direction of Architect, including, without limitation, architectural, civil, mechanical, electrical, structural, landscaping, tenant finish, furniture, fixtures, and equipment Plans and Specifications and any other Plans and Specifications with respect to the Improvements. Owner may delegate to Contractor such authority as Owner deems necessary or desirable for advising the Owner with respect to directing the activities of independent contractors, but Owner shall not delegate to Contractor, and Contractor is not obligated to accept, any authority for directing the activities of consultants not hired by Contractor.

(5)     Owner in consultation with Architect and Owner's consultant, Schnabel Engineering Associates ("Associates") has supplied Contractor, for reference, with the results of sub-surface soil investigations and the interpretation of the results of such investigations. The

materials provided to Contractor with respect to sub-surface conditions consist of the bound reports entitled "Geotechnical Engineering Report, The Jefferson at Pennsylvania Quarter, 7th Street & D Street, Washington, D.C." prepared by Associates dated August 25, 2000, and the Phase I and II Site Assessment Report dated November 10, 2000, prepared for the Donahue Company and JPI Apartment Development, L.P. by IT Corporation (collectively, the "Geotechnical Report"). Contractor represents and warrants that Contractor has carefully examined and familiarized itself with the contents of such reports, and that Contractor understands the reports and their recommendations.

(6)   Contractor recognizes and understands that Owner has awarded or intends to award other contracts for certain work in the vicinity of the Improvements (which work will include, but will not be limited to, the construction of utility vaults, a parking garage, apartment units, a performing arts theater, a loading dock and service tunnel and other related facilities) contemporaneously with the prosecution of the Work by Contractor. Contractor agrees to cooperate with the other contractors and to coordinate the Work of Contractor with the work of the other contractors to the end that the Improvements shall be completed in the most efficient and expeditious manner. It is understood that Contractor is not responsible for coordinating and scheduling the work of the other contractors or for any act or omission of the other contractors. Contractor will, however, be mindful of, and give due regard to, the schedules of the other contractors and offer guidance when called upon to assist in coordination. It is further the responsibility of the Contractor to use best efforts to facilitate labor harmony on the Property. Contractor is aware that Owner has certain rights and obligations to advise and consult with the Lender (one or all) in connection with the Development Documents. In order to assist Owner in connection with its compliance with the Development Documents, Contractor agrees to furnish to Owner estimates and technical advice as to construction methods and equipment and to review the architectural, civil, mechanical, electrical, structural, landscaping, tenant finish, furniture, fixtures, and equipment Plans and Specifications, and any other Plans and Specifications developed with respect to the Development Documents, as they are being developed, and to advise and make recommendations with respect to such factors as construction feasibility, possible economies, availability of materials and labor, time requirements for procurement and construction, and projected costs, and to assist in the coordination of all sections of the drawings and specifications without, however, assuming any of the Architect's customary responsibilities for design except for those items which are the responsibility of Contractor pursuant to Exhibits A and A-1 attached hereto. All of such services shall be performed by Contractors hereunder without any addition to the Fixed Fee.

(7)   Contractor represents and warrants to Owner that Contractor's financial condition is sound, that Contractor is financially solvent and that Contractor is capable of performing the Work. Upon request by Owner, Contractor shall make available for Owner's inspection at Contractor's office at 1333 H Street, N.W., Suite 200, Washington, DC 20005-4779 such audited and unaudited financial statements of Contractor as Owner may request. Further, Contractor shall advise Owner of any occurrence, event, fact, or other matter that has had, will have, or might reasonably be predicted to have a material adverse effect upon the financial condition of Contractor, immediately upon Contractor's becoming aware of such occurrence, event, fact, or other matter.

(8)    In addition to any specific guarantees required by the Contract Documents, Contractor hereby guarantees to perform the Work in a first-class, workmanlike manner and guarantees all Work against defects in material or workmanship for a period of one (1) year from the date of Substantial Completion. All guarantees and warranties to be provided for the Improvements shall, unless otherwise provided herein, commence on the date of Substantial Completion. With respect to defects in material or workmanship which are latent or concealed and which Owner and Architect could not reasonably be expected to discover upon inspection prior to Substantial Completion, the guarantee contained in this paragraph shall extend for a period of one (1) year from the date such defects should reasonably be expected to have been discovered by Owner. All guarantees or warranties of equipment or materials furnished to Contractor or Subcontractors by any manufacturer or supplier shall name Owner as a beneficiary thereof or be assigned to Owner with the knowledge and consent of the manufacturer or supplier. Contractor shall obtain from all manufacturers and suppliers guarantees and warranties upon the best terms and longest periods obtainable. This guarantee shall specifically provide that all defects in materials and workmanship appearing during the guarantee period, as determined by Owner, shall be remedied to the satisfaction of Owner at no additional cost to Owner.

(9)    Promptly, and not more than five (5) days after receipt of written notice thereof ("Notice of Defects"), Contractor shall commence to correct any defects in material or workmanship which are covered by the guarantees provided in paragraph IX-L(8) hereof and any damage to other work or property caused by such defects or the repairing of such defects, and shall do so with a minimum of inconvenience to Owner and occupants of the Improvements, the Property or adjacent properties and at such times least disruptive to the operation of the Improvements. Within five (5) days after the date of actual receipt of the Notice of Defects, Contractor shall advise Owner of Contractor's estimate of the time required to correct the defects, and Owner and Contractor will confer regarding such estimate, and, if possible, mutually establish a deadline ("Remedial Work Deadline") for completion of the remedial Work provided by the guarantees set forth in paragraph IX-L(8) ("Remedial Work"). If Owner and Contractor are unable to establish the Remedial Work Deadline by mutual agreement within ten (10) days after the date of actual receipt of the Notice of Defects, Owner shall, in its sole discretion, establish the Remedial Work Deadline. If Contractor fails to diligently pursue the Remedial Work and complete same by the Remedial Work Deadline, Owner may undertake to perform or to have others perform some or all of the Remedial Work at Contractor's expense. The guarantees contained herein shall not be construed to modify or limit, in any way, any rights or actions that Owner may otherwise have against Contractor or others by law or statute or in equity. Thirty (30) days prior to the expiration of the Completion Date, or as may otherwise be required by the specifications, Contractor shall deliver to Owner three (3) copies of all guarantees, warranties, training manuals, operating manuals, and maintenance agreements on equipment and materials furnished by all manufacturers and suppliers to Contractor and all Subcontractors, with original duly executed instruments properly assigning the guarantees and warranties to Owner. Contractor shall bind copies of guarantees, warranties training manuals, operating manuals, and maintenance agreements together in volumes, grouped by trade and properly indexed.

**M.    Payment and Performance Bonds**

As a material consideration for the execution of this Agreement by Owner, if requested by Owner Contractor will furnish to Owner a Payment Bond (herein called the "Bond") in such form as approved by Owner and Lender, with corporate sureties approved by Owner and Lender. The Bond shall be in a sum equal to the Guaranteed Cost (and shall be increased by endorsement or otherwise each time the Guaranteed Cost is increased pursuant to this Agreement) and shall meet, to the extent necessary, the applicable requirements of all applicable laws. The Bond shall name the Owner and Lender and Owner's title insurance underwriter as obligees therein. Owner agrees to provide Contractor with such evidence of Owner's financing and financial responsibility as may be reasonably required to enable Contractor to comply with the provisions of this paragraph IX-M. The premium costs of the Payment Bond and/or Performance Bond shall be paid directly by Owner. If a Performance Bond and/or Payment Bond is required, its cost shall be added to the Guaranteed Cost by Change Order.

**N.    Lender Approvals**

Whenever herein an approval, acceptance, direction, requirement, permission, designation, prescription, or other action by Owner, Construction Manager and/or Architect is required or permitted under the Contract Documents, such action may, at the option of Owner and any Lender, be deemed to include and be conditioned upon the authorization of or joinder in such action by Lender or an appropriate representative of Lender. Contractor shall cooperate with Owner so that Owner is able to comply with the requirements of the loan documents and shall prepare and submit all such reports, certificates, and statements as may be commercially reasonably required of Contractor by Lender thereunder, and shall perform such other actions as may be commercially reasonably required of Contractor by any Lender.

**O.    Notice of Default**

Contractor agrees promptly to provide to Lender copies of any and all Notices from Contractor to Owner declaring Owner to be in default (in payment or otherwise) under this Agreement and copies of any and all communications between Contractor and any "Major Subcontractor" declaring Contractor or such Major Subcontractor to be in default under the applicable Subcontract. As used in this Agreement, a "Major Subcontractor" means a Subcontractor whose Subcontract is equal to or greater than $500,000.

**P.    Applicable Law and Venue**

This Agreement is being executed and delivered in the State of Virginia, and the substantive laws of such jurisdiction shall govern the validity, construction, enforcement, and interpretation of this Agreement unless the laws of another jurisdiction require the application of the laws of such jurisdiction. The parties hereto agree that venue for any action arising out of a breach of this Agreement or relating to the Project shall be in Fairfax County, Virginia.

**Q.    Unenforceable Provisions**

If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable; the Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of the Agreement; and the remaining provisions of the Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from the Agreement. Furthermore, in lieu of such illegal, invalid, or unenforceable provision, there shall be added as a part of this Agreement, a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

**R.    Counterparts**

This Agreement has been executed in a number of identical counterparts, each of which is to be deemed an original for all purposes, and all of which constitute, collectively, one Agreement, but in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

**S.    Successors and Assigns**

This Agreement shall be binding upon and inure to the benefit of Owner and Contractor and their respective successors and assigns to the extent assignment hereof is otherwise permissible hereunder.

**T.    Ownership of Plans and Specifications**

All Plans and Specifications and models prepared with respect to the Project are and shall be the property of Owner and may not be used by any person other than Owner on any other project unless expressly authorized by Owner in writing.

**U.    Assignment**

Neither this Agreement nor any of Contractor's rights and privileges under this Agreement may be assigned by Contractor without Owner's prior written consent; provided, however, that Contractor may, with the approval of Owner, which approval may not unreasonably be withheld by Owner, assign such rights under this Agreement to the company issuing the Bond, as Contractor may be required to assign in order to obtain the Bond. This Agreement may be assigned by Owner without the consent of Contractor; provided, however, that Owner and Assignee (except for an assignee that is any Lender) shall remain responsible to Contractor for all payments to Contractor that accrued prior to the effective date of any such assignment by Owner, and the Assignee shall be bound by all the terms and conditions of the Agreement between Owner and Contractor. Without limiting the generality of the foregoing and provided the foregoing conditions are complied with, Contractor and Owner expressly agree that: (a) this Agreement may be assigned, mortgaged, and/or pledged without the consent of Contractor to any Lender provided Owner

provides a guaranty from JPI Lifestyle Apartment Communities, L.P., for the payment of amounts past due to Contractor under this Contract from the date of the last payment to Contractor to the date of the assumption of this Contract by Owner's Lender in the event that Owner's Lender assumes this Contract; (b) upon demand by any Lender, and subject to the performance by Lender of Owner's obligations to Contractor under the Contract Documents, Contractor will perform this Agreement on behalf of and at the direction of such Lender; and (c) upon demand by Owner, Contractor shall execute and deliver such other and further assignments, agreements, documents, instruments, and waivers as Owner or any Lender may request in order to effectuate the foregoing provisions provided that any such additional documents are reasonable and do not impose upon Contractor any obligations that are beyond the scope, terms and conditions of this Contract. The termination provisions set forth in this Agreement will survive any assignment of this Agreement.

### V.    Remedies Cumulative

Except as otherwise provided in this Agreement, all rights and remedies available to Owner and Contractor, respectively, under the Contract Documents are cumulative of and in addition to all other rights and remedies available to Owner and Contractor at law or in equity, or otherwise, and may be exercised from time to time, and as often as Owner or Contractor may deem expedient, and no waiver by Owner or Contractor of any default under the Contract Documents shall be deemed to be a waiver of any other then existing or subsequent default, nor shall any such waiver be deemed to be a continuing waiver. No delay or omission by Owner or Contractor in exercising any right or remedy under the Contract Documents shall impair such right or remedy or be construed as a waiver thereof or any acquiescence therein, nor shall any single or partial exercise of any such right or remedy preclude other or future exercise thereof, or the exercise of any other right or remedy under the Contract Documents or otherwise.

### W.    Subordination

Contractor agrees to execute and deliver to Owner's first lien Lender (and any other Lender to the extent Contractor has no unsatisfied recorded mechanics' or material men's liens at the time the subordination is requested) a subordination agreement, in form and content reasonably satisfactory to Lender, subordinating any and all lien rights of Contractor, including, without limitation, statutory and constitutional mechanics' and materialmen's liens, upon the Work, the Project, the Property, the Improvements, or any part thereof, to the lien or liens and rights of such Lender. Without limiting the generality of the foregoing with respect to the rights of Owner to assign its interest in this Agreement, it is specifically agreed that Owner will have the right to collaterally assign its interest in this Agreement to any Lender, and, in such event, Contractor agrees that it shall execute customary and reasonable subordinations and other instruments in connection with any such collateral assignment. The termination provisions of this Agreement will survive any assignment of this Agreement. In furtherance of the foregoing and not in limitation, Contractor shall and hereby does subordinate any and all liens, rights, and interest (whether choate or inchoate and including, without limitation, all mechanics' and materialmen's liens under the applicable laws and statutes of the District of Columbia) owned, claimed, or held, or to be owned, claimed, or held by Contractor in and to any part of the Project or the Property on which Work is performed, to the first lien (and all subsequent liens to the extent Contractor has no unsatisfied recorded mechanics' or material men's

liens at the time the subordination to such junior liens is requested) securing payments of sums now or hereafter borrowed by Owner in connection with the construction of the Project. Contractor shall execute such further and additional evidence of the subordination of any and all liens, rights, and interest as Owner's interim or permanent Lenders may reasonably require. The subordination of liens is made in consideration of and as an inducement to the execution and delivery of this Agreement and shall be applicable despite any dispute between the parties hereto or any others, or any default by Owner under the Contract Documents or otherwise.

### X.     Waiver of Consequential Damages

Except for liquidated damages for Contractor's late completion as set forth in paragraph III(F) above, the Contractor and Owner waive all consequential damages claims against each other for damages arising out of or relating to this Agreement. However, this Mutual Waiver does not diminish the rights of either party to seek actual damages or take any other action, including termination and actual damages for same, pursuant to the terms of this Agreement.

## [SIGNATURES APPEAR ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

ATTEST:

_____
Assistant Secretary

[Corporate Seal]


ATTEST:

_____
Assistant Secretary

[Corporate Seal]

CONTRACTOR:

J.A. JONES/TOMPKINS BUILDERS, INC.

By: _____
Print Name: Edward Small
Title: President


OWNER: Jefferson at Penn Quarter, L.P.

BY: Apartment Community Realty LLC

By: _____
Print Name: James A Butz
Title: Senior Vice Pres.