**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RICHARD GOETTLE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 06-1433 EGS** |
| **v.** | ) | |
| | ) | |
| **JEFFERSON AT PENN QUARTER, L.P.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S REPLY TO OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendant Jefferson at Penn Quarter, L.P. ("JPQ"), by and through counsel, files this Reply to the Opposition to Motion to Dismiss or in the Alternative for Summary Judgment filed by Plaintiff Richard Goettle, Inc. ("Goettle"). In support hereof, JPQ states as follows:

### INTRODUCTION

This action is a claim by a subcontractor (Goettle) against an owner (JPQ) related to the construction of the Jefferson at Penn Quarter Project located in Washington, D.C. (the "Project"). JPQ entered into a written contract (the "Prime Contract") with J.A. Jones/Tompkins Builders ("Tompkins"), pursuant to which Tompkins was to serve as general contractor on the Project. Tompkins, in turn, entered into a subcontract with Goettle (the "Subcontract") pursuant to which Goettle agreed to provide certain earth retention work to the Project. Goettle alleges that it has not been fully paid by Tompkins for the labor and materials it provided to the Project. Apparently unable to recover from

1

Tompkins, which has filed a petition in bankruptcy, Goettle has brought suit against JPQ, alleging three causes of action: breach of contract, negligence, and unjust enrichment.

JPQ has moved to dismiss Goettle's Complaint, or in the alternative, for summary judgment in its favor. In its Motion to Dismiss or in the Alternative for Summary Judgment ("JPQ Mot."), JPQ alleged that venue is improper in the District of Columbia and that Goettle failed to file within the applicable three-year limitations period for each of its claims. JPQ also alleged that certain of Goettle's three counts failed on a number of individual bases.

On September 14, 2006, Goettle filed an Opposition to JPQ's Motion ("Goettle Opp."). This Reply addresses issues raised in the Opposition and accompanying affidavits and exhibits.

## ARGUMENT

### I. Jurisdiction

#### A. Jurisdiction is Proper in the Federal Court

As an initial matter, Goettle argues that the citizenship information provided in JPQ's Notice of Removal is inadequate and fails to establish the Court's jurisdiction over this matter. Goettle incorrectly implies that in order for the Court to obtain removal jurisdiction over this matter, JPQ was required to affirmatively plead the citizenship of each of its general and limited partners, of every tier. As indicated by the information set forth in Exhibit 2 to this Memorandum, detailed consideration of each tier reveals that diversity exists. As in the case of Contreras v. Thor Norfolk Hotel, L.L.C., 292 F. Supp. 2d 794 (E.D. Va. 2003) (internal citations omitted), Defendant JPQ did provide basic

jurisdictional allegations for diversity jurisdiction in its Notice of Removal and,

subsequently, in correspondence with counsel for Goettle.

By letter dated September 14, 2006, JPQ affirmatively represented to Goettle that

"all of the general and limited partners of these entities are citizens of Delaware,

rendering removal appropriate in this case." See Exhibit 1. At the time this letter was

transmitted, as is the case at this time, Goettle had not filed a Motion to Remand. The

information supplied to counsel left no room for doubt: neither JPQ nor any of its general

or limited partners are Ohio residents. Under the Thor standard, Goettle had received all

the information it was entitled to receive regarding the citizenship of JPQ's partners.

Goettle has no reason to believe that JPQ's citizenship allegations in its Notice of

Removal and September 14 letter are untrue. However, to the extent that the Court in

inclined to treat Goettle's Memorandum as a formal Motion to Remand, JPQ requests

that the Court accept the supplementary citizenship information provided in the

accompanying chart as a supplement to its previous allegations regarding diversity

jurisdiction. See Exhibit 2. This information conclusively demonstrates that neither JPQ,

its general partner, nor any of its limited partners are citizens of Ohio.

Allowing JPQ to supplement its citizenship information in this manner is in

keeping with the liberal standard for the amendment of pleadings, under which

amendment is to be "freely given when justice so requires." Fed. R. Civ. P. 15(a).

Faced with potentially incomplete citizenship information in a diversity action, many

federal courts request supplementation of the record rather than prematurely remanding

the case to state court. For example, in Minard v. Pareto Partners, 2005 U.S. Dist. LEXIS

15032 (S.D.N.Y. 2005), the court directed that the defendant "file and serve an affidavit,

giving the details necessary . . . to demonstrate the state or states of its citizenship at the time plaintiff commenced this action." Id. at *5. Such orders as the one issued in Minard recognize that remand can be a harsh result, in many times permanently denying a party access to the federal forum.

The United States District Court for the Eastern District of Virginia recently considered a case very similar factually to the instant matter. In Muhlenbeck v. Ki, LLC, 304 F. Supp. 2d 797, 802 (E.D. Va. 2004). In that case, the removing defendant Limited Liability Company failed to include the citizenship of its members in its Notice of Removal. The Court, presented with facts demonstrating that diversity jurisdiction was indeed proper, allowed the defendant to supplement its pleadings on this "technical" matter:

> . . . it is within the court's discretion whether to permit defendant to amend its removal petition. In making this determination, the court is guided by the Fourth Circuit's statement in Nutter that "jurisdiction ought to depend more upon the truth of defendant's allegation of diversity than upon the ... choice of verbiage." Defendant's petition for removal is deficient because the citizenship of a limited liability company depends not on the state in which it is organized or the state in which it does most of its business, but rather on the citizenship of the entities that own the LLC. However, correction of this defect requires only a technical amendment, because the undisputed citizenship of the two entities which comprise Ki, LLC, Aleut and NANA Regional, is Alaska.

Muhlenbeck, 304 F. Supp. 2d at 802 (internal citations omitted).

JPQ believes that it properly pled diversity jurisdiction as an initial matter, but to the extent its Notice of Removal is incomplete, the "truth of" JPQ's allegation of diversity is that diversity exists in this matter. Accordingly, the Court should accept the

additional citizenship information provided as exhibits to this Reply and should not deny JPQ's Motion on this basis.

B.    Goettle Misstates the Court's Prior Venue Ruling

Having brought suit in the District of Columbia in violation of the Subcontract and Prime Contract, Goettle now apparently agrees that venue is improper in the District of Columbia. (Goettle Opp. 7-8.) Goettle offers to dismiss its suit and re-file in Virginia state court, stating that "[t]his was the course of action employed by Judge Kessler of this very Court in a similar case involving the same project." Goettle is incorrect. Judge Kessler did, indeed, hold that venue in a case involving the same contract[1] was improper in the District of Columbia, but she did not order the case dismissed and re-filed in Virginia state court. Rather, she ordered the case transferred to the United States District Court for the Eastern District of Virginia—the same relief requested in JPQ's Motion to Dismiss or in the Alternative for Summary Judgment. (See JPQ Mot., Ex. 7.)

C.    Dismissal is Appropriate Under Both D.C. and Virginia Law

Goettle, which initially disregarded the Subcontract's venue clause by bringing suit in the District of Columbia, now trumpets the very same paragraph in arguing that Virginia law, not the law of the District of Columbia, should apply to this case. (Goettle Opp. at 8.) Although JPQ could contest Goettle's interpretation[2], JPQ is willing to concede the application of Virginia law in order to speed a hearing on the merits of its

---

[1] See Manganaro Corp. v. Jefferson at Penn Quarter, L.P., case number L:04CV02133 GK

[2] Contrary to Goettle's implication, the Subcontract provision in question provides very different standards for venue and for choice of law. The venue provision broadly applies to "any action arising out of a breach of this Agreement or *relating to the project*…" Prime Contract § P (emphasis added). In contrast, the choice of law provision applies only to "the validity, construction, enforcement, and interpretation of this Agreement." (Id.) Although Goettle's claims are obviously related to the Project, Goettle does not seek an interpretation of the Prime Contract or Subcontract, but rather seeks to recover on a nebulous oral contract claim, a negligence claim, and a claim for unjust enrichment. Therefore, it is not at all clear that the Prime Contract's narrow choice of law provision applies to these claims.

Motion. Indeed, as will be seen *infra*, Virginia provides the same three-year limitations period as D.C., bars Goettle's claim under the Statute of Frauds, as does D.C., and even provides JPQ with yet another basis for dismissal—lack of privity.

## II.    Statute of Limitations

Goettle admits that its claims are barred unless they accrued on or after July 6, 2003. (Goettle Opp. at 9.) In an attempt to demonstrate that its claims were timely filed, Goettle argues that subsequent repair work on an off-site building owned by the International Order of Odd Fellows ("IOOF") performed by a third-party contractor, who was paid by Goettle's insurance carrier—at no cost to JPQ or Tompkins, and at Goettle's own volition—tolled the running of the limitations period related to excavation and foundation work that Goettle alleges it completed before July 31, 2002 on property developed by JPQ. (Goettle Opp. at 9-10.) Goettle's argument is baseless, relying on gross misinterpretations of the Subcontract and applicable law.

### A.    Repair of Damages Suffered by Third-Party Property Owners Do Not Toll the Statute of Limitations

In arguing that it performed repairs to the IOOF buildings pursuant to the Paragraph 13 of the Subcontract, Goettle stretches a standard indemnity clause beyond all recognition. Goettle argues that a paragraph specifically written to shield JPQ from liability to Goettle instead had the opposite effect, dramatically expanding the scope of Goettle's Subcontract work to include repairs undertaken by others as a result of on off-site structures owned by third parties as a result of Goettle's indemnity and insurance obligations. This interpretation flies in the face of the plain language of the indemnity provision, which provides, in relevant part:

6

> Subcontractor [Goettle] agrees to defend, indemnify, and
> hold harmless Contractor [Tompkins] and Owner [JPQ]
> and their agents and employees from and against any claim,
> cost, expense, or liability (including attorneys' fees)
> attributable to bodily injury, sickness, disease or death, or
> damage, loss or destruction of property (including loss of
> use thereof), caused by, arising out of, resulting from or
> occurring in connection with the performance of the Work
> by the Subcontractor, its subcontractors, or their agents or
> employees, whether or not caused in part by the active or
> passive negligence or fault of a party indemnified
> hereunder . . .

Subcontract ¶ 13.

This standard indemnity clause does not define the scope of Goettle's

performance obligations concerning the excavation and foundations work on the Project.

This clause solely addresses the narrow issue of liability, providing that JPQ and

Tompkins will not be liable to Goettle for any damages Goettle causes to third parties---

such as adjoining property owners like IOOF.  It does not purport and cannot reasonably

be construed to broadly expand the scope of Goettle's Subcontract work to include

damages that Goettle might cause to third-party entities, or the efforts associated with

damage Goettle might cause to off-site property owned by third parties.  The repairs

Goettle alleges to have performed to the IOOF buildings were thus well outside the scope

of the Subcontract.[3]

B.    Goettle Alleges No Injuries Within the Statutory Period

Even if Goettle's repairs to the IOOF buildings by another contractor funded by

Goettle's insurance carrier were required by the Subcontract, Goettle would still not be

entitled to recover under any of the theories stated in the Complaint.  Goettle erroneously

---

[3]    Goettle's absurd logic would also suggest that the Court consider Goettle's scope of construction
work to include repairs paid by Goettle's insurance carrier for damages suffered by an off-site automobile
that was damaged by Goettle's equipment while traveling to the jobsite.

assumes that the statute of limitations on its claims did not begin to run until its indemnity obligations are fulfilled. See, e.g., Goettle Opp. at 11. Goettle is incorrect: in both Virginia and the District of Columbia a claim "accrues," and the limitations period begins to run, on the date that the plaintiff is *injured* or the date that a contract is *first breached*, not on the date that the plaintiff ultimately completes performance of any underlying contractual obligations. See Va. Code 8.01-230 & D.C. Code § 12-301.[4] Goettle's subsequent repairs to an adjacent property notwithstanding, Goettle's Complaint does not allege that it suffered any "injury" within the statutory period. Specifically, the Complaint alleges five injuries, *none* of which are alleged to have occurred on or after July 6, 2003:

(1) That JPQ delayed Goettle's performance of its Subcontract with Tompkins. (Compl. ¶ 11.) These delays are alleged to have occurred "prior" to Goettle's entry into its Subcontract with Tompkins on October 12, 2001. (Compl. ¶¶ 10-11.) By the very language of the Complaint, this injury and/or breach occurred, if at all, on or before October 12, 2001.

---

[4]      In both jurisdictions, these accrual rules apply to all three of Goettle's causes of action: breach of contract, negligence, and unjust enrichment. In Virginia, "a breach of contract claim accrues when the contract is breached." Malik v. Phillip Morris, USA Inc., 2006 U.S. Dist. LEXIS 41046 (E.D. Va. 2006). Similarly, a cause of action "based upon negligence. . . accrues when the act complained of occurs and results in injury to the plaintiff." Levick v. Merrill Lynch, 9 Va. Cir. 543 (Henrico County, 1983). And "a cause of action for unjust enrichment accrues when the unjust enrichment of the defendant actually occurs; that is, at the moment the expected compensation is not paid." Primrose Dev. Corp. v. Benchmark Acquisition Fund I L.P., 47 Va. Cir. 296, 298 (Loudoun County, 1998).

In the District of Columbia, an action for breach of contract or negligence "accrues on the date the plaintiff suffers the injury." Razmgar v. George Washington Univ., 1986 U.S. App. LEXIS 29407, *2-3 (D.C. Cir. 1986). Likewise, a claim for unjust enrichment accrues "when defendant was unjustly enriched." Union Labor Life Ins. Co. v. Sheet Metal Workers Nat'l Health Plan, 1991 U.S. Dist. LEXIS 13613 (D.D.C. 1991).

(2) That JPQ failed to make the jobsite fully available "in October, 2001." (Compl. ¶ 16.) By the very language of the Complaint, this injury and/or breach occurred, if at all, in October 2001.

(3) That JPQ's design changes delayed Goettle's shop drawing review process. (Compl. ¶ 17.) This injury and/or breach occurred, if at all, on or before July 2002. On July 31, 2002, Goettle twice represented that it had fully completed all of its Subcontract work as of that month. See JPQ Mot., Exs. 3 & 4. By July 2002, Goettle had not only completed its shop drawings, but completed the Project work based upon those drawings.

(4) That JPQ altered the sequence in which it demolished "several existing buildings on the JPI Property." (Compl. ¶¶s 18-19.) Again, any injury and/or breach caused to Goettle by such re-sequencing occurred on or before July 2002, when Goettle completed its Project work and removed its employees and material from the property.

(5) That JPQ failed to pay Goettle some $948,271.00 plus a $200,000.00 retainage. (Compl. ¶ 33.) This claim accrued, at the latest, in April 2002, when Goettle's request for payment in this amount was denied by JPQ. See JPQ Mot. Ex. 5 & Fahey Aff. ¶ 4; see also Clifton D. Mayhew, Inc. v. Blake Constr. Co., 482 F.2d 1260, 1262 (4th Cir. 1973) ("[i]n Virginia, the statute of limitations on a contract begins to run from the time payment is due.")

None of the injuries Goettle alleges to have suffered concern the repair work it claims to have performed on the neighboring IOOF buildings through July 2004. In fact, as Goettle readily admits, the Subcontract's hold harmless provision prevented Goettle from recovering from JPQ for any liability to IOOF. (Goettle Opp. at 9; Subcontract ¶ 13.) The very purpose and essence of a hold harmless provision is to absolve a party of

"any responsibility for damage or other liability arising from the transaction." BLACK'S LAW DICTIONARY, 8th Ed at 749. In other words, by the plain and express language of the Subcontract, Goettle was entitled to *no compensation whatsoever* from JPQ for any remedial measures it undertook to neighboring buildings, under any theory of recovery. The contract itself dictates that JPQ cannot have "injured" Goettle by failing to pay Goettle for the repairs to the IOOF buildings, and indeed, Goettle has not alleged that it is entitled to payment from JPQ for the value of these repairs. Goettle's demand for payment from JPQ has not increased one penny (save interest) since its first demand in April 2002, long before it allegedly completed these repairs. See JPQ Mot. Ex. 5; Fahey Aff. ¶ 4. Goettle manifestly has not been "injured" by JPQ as a result of any repairs it performed on the IOOF buildings.

Under both District of Columbia and Virginia law, the applicable limitations periods begin to run on the date Goettle was allegedly injured, not on the date of Goettle's final completion of repair measures to neighboring buildings occasioned by Goettle's own conduct. Goettle's lengthy discussion of these alleged remedial measures is nothing but a red herring. Nowhere do Goettle's Complaint or Opposition offer any allegations whatsoever that Goettle was *injured* by JPQ any later than July 2002. Even if such repairs were required by the Subcontract—which they were not—this is not a Miller Act case, in which the date a plaintiff last provides labor or material to a project is relevant to the running of the statute of limitations.[5] For the claims asserted by Goettle, injury, not Subcontract completion, is the touchstone for commencement of the three-

---

[5] Even if this were a Miller Act case, repair measures such as those alleged by Goettle would not toll the running of the statute of limitations. See, e.g., United States use of Magna Masonry, Inc. v. R.T. Woodfield, Inc., 709 F.2d 249 (4th Cir. 1983) (Miller Act statute of limitations not tolled by repairs or correcting of defects).

year limitation period, and Goettle has not filed within three years of its alleged injuries.

Accordingly, the Complaint should be dismissed on this basis, or in the alternative,

summary judgment should be granted JPQ.

### III.     Goettle is Contractually Prohibited from Recovering Damages for Delay

JPQ's Motion argued that Count I (breach of contract) and Count II (negligence)

of the Complaint are barred by the express limitations of the Subcontract, which severely

limits Goettle's recovery of damages for delay.   Goettle argues that summary judgment

on this matter is inappropriate because "a factual issue exists as to the damages that

Tompkins was owed by JPQ." (Goettle Opp. at 11.)

Goettle's argument rests on a misreading of the Subcontract.  The Subcontract

expressly provides that Goettle may only recover delay damages to "to the extent of any

amounts that Contractor, on behalf of Subcontractor, **recovers** from Owner for such

delays or interference." (Subcontract ¶ 7) (emphasis added).  Whether JPQ owed

Tompkins delay damages is irrelevant: the Subcontract expressly limits Goettle's

recovery to amounts *actually recovered* by Tompkins, and in any case, requires Goettle

to recover those amounts from Tompkins, not JPQ.  In addition, Goettle has not alleged

or demonstrated the existence of a written assignment of its Subcontract, which was

expressly required in order for Goettle to subrogate to any of Tompkins' rights against

JPQ. (Prime Contract § G(3); Subcontract ¶ 11).  In the absence of such a written

assignment, Goettle cannot enforce any right Tompkins may have had against JPQ for the

recovery of delay damages.

**IV.    Goettle's Claim is Barred by the Statute of Frauds**

Like the District of Columbia, Virginia bars Goettle's claim for lack of a writing evidencing JPQ's supposed obligation to pay Goettle for its Subcontract work.  In Virginia, the Statute of Frauds requires a writing "[t]o charge any person upon a promise to answer for the debt, default, or misdoings of another."  Va. Code Ann. § 11-2.  In this case, Goettle is attempting to impose liability upon JPQ for Tompkins' alleged debts to Goettle.  In order to impose such liability upon JPQ, Goettle is required to present a writing in which JPQ promises to answer for Tompkins' debts to Goettle.  Goettle has alleged no such writing, and no such writing exists.[6]  Goettle's claims should be dismissed for failure to comply with the Statute of Frauds.

**V.    Goettle Fails to Allege Privity of Contract**

Under Virginia law, Goettle's negligence and unjust enrichment claims are barred because Goettle fails to allege privity of contract between JPQ and Goettle.  The longstanding Virginia rule is that "in the absence of privity, a person cannot be held liable for economic loss damages caused by his negligent performance of a contract."  Gerald M. Moore & Son, Inc. v. Drewry, 251 Va. 277, 280 (Va. 1996); see also Crawford v. Deutsche Bank AG, 244 F. Supp. 2d 615, 616 (E.D. Va. 2003) ("Virginia law is clear that, absent privity of contract, the economic loss rule prevents a plaintiff from maintaining a negligence action against an individual to recover purely economic losses.")  The economic loss rule also serves to bar unjust enrichment claims in the absence of express or implied privity.  See John C. Holland Enters., Inc. v. J.P. Mascaro

---

[6] Goettle admits the lack of any such writing when it states that Virginia's three-year statute of limitations for oral contracts is applicable in this action, not the five-year statute of limitations for written contracts. (Goettle Opp. at 9.)

& Sons, Inc., 653 F. Supp. 1242, 1246 (E.D. Va. 1987) (dismissing unjust enrichment claim when there was "no privity and no contractual relationship between the parties.")

A recent case in the United States District Court for the Western District of Virginia is instructive.  In Town of Christiansburg v. American Buildings. Co., 1998 U.S. Dist. LEXIS 21936 (W.D. Va. 1998), the plaintiff Town purchased a building from a third party, Lowe's Companies, Inc.  Prior to the purchase, American Buildings Co. ("American") had evaluated the building's roof, but did not recommend that certain steel reinforcements be constructed.  After the purchase was complete, the roof collapsed, and the Town sued American, alleging that it was injured by American's negligent inspection. The court granted summary judgment to American, holding that the Town alleged only economic damages and was not in privity with American.  The economic loss rule barred the Town's claim.

Here, as in Town of Christiansburg, Virginia's economic loss rule applies. Goettle's only allegations of negligence stem from JPQ's performance of the Prime Contract.  Goettle must recover in contract, or not at all.  Accordingly, Goettle's negligence and unjust enrichment claims should be dismissed

**VI.     Goettle's Unjust Enrichment Claim is Without Basis**

In its Complaint, Goettle claims that it has been "unjustly enriched in the sum of at least $1,148,271.00." (Compl. ¶ 34.)  The Opposition, however, makes it clear that Goettle's true unjust enrichment claim is for a much smaller retainage amount of $196,950.00. (Goettle Opp. at 14.)  The Opposition does not even attempt to demonstrate that the remaining amounts claimed represented an "unjust" enrichment of JPQ.  As a threshold matter, therefore, partial summary judgment is appropriate on Goettle's unjust

enrichment claim in the remaining amount of $948,271.00. The remainder of the unjust enrichment claim should be dismissed for failure to comply with the statute of limitations and/or for lack of privity, as discussed *supra*.

## CONCLUSION

For the foregoing reasons, Defendant Jefferson at Penn Quarter, L.P. respectfully renews its request that this court dismiss Goettle's Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a cause of action upon which relief may be granted or 12(b)(3) for improper venue, or, in the alternative, award summary judgment to JPQ pursuant to Fed. R. Civ. P. 56(c). In the alternative, JPQ asks that the Court enter an order transferring the case to the Eastern District of Virginia.

**DATED:**      September 25, 2006

Respectfully submitted,


/s/ Jeffrey G. Gilmore

Jeffrey G. Gilmore, D.C. Bar No.  388362
AKERMAN SENTERFITT
WICKWIRE GAVIN
8100 Boone Blvd, Suite 700
Vienna, Virginia 22182
Phone 703-790-8750
Fax 703-448-1801
jeff.gilmore@akerman.com



/s/ Joseph M. Sullivan

Joseph M. Sullivan, D.C. Bar No. 442865
THE LAW OFFICES OF JOSEPH M.
SULLIVAN, P.C.
4010 UNIVERSITY DRIVE, SUITE 102
FAIRFAX, VA 22030
703.277.3390 - TEL.
703.277.3392 - FAX
jmspc@aol.com

*Counsel for Jefferson at Penn Quarter, L.P.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**
**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2006, I electronically filed Defendant Jefferson at Penn Quarter L.P.'s Reply to Opposition to Motion to Dismiss or in the Alternative for Summary Judgment and any attachments, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to:

Steven A. Horvath, Esq.
TRICHILO, BANCROFT, McGAVIN,
HORVATH & JUDKINS, P.C.
3920 University Drive
Fairfax, Virginia 22030-0022

*Counsel for Plaintiff Richard Goettle, Inc.*

/s/ Jeffrey G. Gilmore

_____

Jeffrey G. Gilmore

G:\Clients_Akerman\J\JPI\Goettle\Pleadings\JPQ - Goettle - Reply to Opp rev4.doc